UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Lieske,

Plaintiff,

vs.

Morrie's Brooklyn Park Daewoo, d/b/a Morrie's Brooklyn Park Used Car & Truck Center, and Todd Perry, individually

Defendants.

Civil No. 00-2658 JMR/FLN

**REPORT AND RECOMMENDATION**

Thomas J. Lyons, Esq., and Thomas J. Lyons, Jr., Esq., for Plaintiff.
Karen Melling van Vliet, Esq., for Defendants.

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on February 1, 2002, on the Defendant's Motion for Partial Summary Judgment [#11]. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons which follow, this Court will recommend that Defendants' Motion be granted in part, denied in part.

## I. FACTUAL BACKGROUND

The facts giving rise to this action are as follows[1]:

In August 2000, Plaintiff Brian Lieske ("Lieske") entered into a finance agreement with

[1] The facts herein represent Plaintiff Lieske's version of events and "for purposes of this summary judgment motion, . . . Defendants accept Lieske's version of events as true." Def.'s Rep. Mem. for Summ. J. at fn. 1.

FILED APR 17 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Morrie's Brooklyn Park Daewoo ("Morrie's") to purchase an automobile. (See Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 2 ("Pl.'s Opp'n Mem.").) Lieske agreed to pay $1,500.00 as a down payment on the car. (Id.) Lieske paid $1,000.00 in cash and the remaining $500.00 was covered with two checks in the amount of $250.00 each. (Id. at 3.) These checks, however, were written out by Lieske's girlfriend, Courtney Gobel ("Gobel"), and were to be held for two and four weeks, respectively, in order for either Lieske or Gobel to exchange the checks for cash. (Id.) It is undisputed that the remaining $500 balance was owed by Lieske alone. (See van Vliet Aff., Ex. A, October 15, 2001, Deposition of Brian Lieske at 81-82 ("Lieske Depo.").)

On the date the first check was to be exchanged for cash, neither Lieske nor Gobel forwarded alternative payments to Morrie's. (Pl.'s Opp'n Mem. at 3.) The same occurred on the date the second check was to be exchanged for cash. (Id.) Furthermore, Lieske did not contact Morrie's to make other arrangements. (Id.) Morrie's contacted the bank against whom the checks were drawn on two occasions and was informed that the account possessed insufficient funds to cover the checks. (See Aff. of Doug Graham, ¶¶ 4, 5 & 7, October 2, 2001.)

After September 27, 2001, the date the second check was to be exchanged for cash, Morrie's employees, specifically Todd Perri ("Perri") and Doug Graham, made several unsuccessful attempts to collect the $500.00 debt. (See Pl.s' Opp'n Mem. at 4.) These efforts included an arrangement made with Lieske wherein he would deliver the amount owed to Morrie's on October 5, 2001, but, once again, Lieske did not appear with the money or call to make other arrangements. (See Lieske Depo. at 88-90.) At this point, Perri began making phone calls to Lieske's home phone number but his messages went unreturned. (See Lyons Aff., Ex. 2, November 20, 2001, Deposition of Todd Perri at 43 ("Perri Depo."); Lieske Depo. at 92.)

With the debt outstanding and receiving no response to messages left at Lieske's home, Perri called Lieske at his place of employment on October 11, 2000. (Pl.'s Opp'n Mem. at 4.) According to Tracy Edick ("Edick"), the receptionist who took the message, Perri indicated that he was calling from Morrie's about two bounced checks. (See van Vliet Aff., Ex. B, October 15, 2001, Deposition of Tracy Edick at 12-14 ("Edick Depo").) Edick wrote down the gist of the message Perri left for Lieske. (Edick Depo. at 33.) In essence, Perri indicated that there was a problem with two bounced checks, that checks had been stolen and that he (Perri) was going to have the police go to Lieske's workplace the following day. (Id. at 12-14.) Edick informed two co-workers, both of whom worked in human resources, about the content of the message Perri left for Lieske. (Edick Depo. at 16-17.)

Perri's message was also forwarded to Lieske who responded by calling Morrie's that same day. (See Lieske Depo. at 102.) Lieske spoke with general manager Tod Knudson and promised to pay the outstanding $500.00. (See Lyons Aff., Ex. 2, November 20, 2001, Deposition of Tod Knudson at 18 ("Knudson Depo."); Lieske Depo. at 102-108.) Lieske, however, did not make the payment. (Knudson Depo. at 51-53; Lieske Depo. at 108.) Perri also made additional calls to Lieske's work place "several times to no avail." (Perri Depo. at 51.)

Subsequently, Perri went to Lieske's work place in late October 2000. (Lieske Depo. at 120.) Lieske met Perri in the reception area and then the two men went outside the front door to converse. (Id. at 122.) Lieske continued to stand in the doorway, holding the door partly open. (Id. at 123.) Perri asked for the money and Lieske explained that he didn't have it and that Perri should speak to Lieske's attorney. (Id. at 122-123.) Perri became angry, slammed the door closed and stepped in between Lieske and the door. (Id. at 123.) Perri continued to demand the money, using profanity and indicated that his job was in jeopardy. (Id. at 126.) Perri also said he wanted to "bust

somebody's head," which Lieske took as a threat. (Lieske Depo. at 127-128.) The encounter lasted approximately five minutes and ultimately, the two men parted with a handshake. (Id. at 123-124, 129.)

## II. STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. U.S., 817 F.2d 1328, 1331 (8th Cir. 2000). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S 242, 251-52 (1986) (holding that the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. See Anderson, 477 U.S. at 255. If, however, the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. If the opposing party fails to carry that burden,

summary judgment should be granted. See Celotex, 477 U.S. at 322; Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

## III. CONCLUSIONS OF LAW

### A. Defendant's Motion for Summary Judgment as to Count I (Invasion of Privacy - Intrusion upon Seclusion)

Morrie's contends that summary judgment is appropriate because mere communication to a debtor's employer about the existence of a debt is not unreasonable. (See Def.'s Mem. at 10.) Furthermore, to maintain an actionable intrusion upon seclusion claim, the intrusion must be substantial and in the instant case, Lieske's privacy was not substantially invaded by one phone call and a single visit to his place of employment. (See Def.'s Rep. Mem. at 2.)

Lieske responds that debt collectors are not immunized from privacy claims and that such a claim is actionable if the debtor's actions are highly offensive to a reasonable person. (See Pl.'s Mem. at 13.) Lieske maintains that Morrie's actions were such that a reasonable person would be highly offended. (Id. at 14.) Moreover, Lieske maintains there is a factual dispute as to the content of Perri's message and his actions during the in-person visit to Lieske's place of employment which preclude summary judgment. (Id.)

"The specific tort of intrusion upon seclusion occurs when one 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'" Bauer v. Ford Motor Credit Co., 149 F.Supp.2d 1106, 1109 (D. Minn. 2001) (quoting Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement (Second) of Torts § 652B (1977). In determining whether an intrusion upon seclusion claim can survive summary judgment, the court

should consider a number of factors including "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Id.

In the instant case, Defendant Perri initiated telephonic and in-person contacts with Lieske at Lieske's place of employment. This Court is unwilling to create a bright line rule in which any contacts with a debtor at that debtor's workplace can sustain an action for intrusion upon seclusion. Consequently, we are called upon to assess the quantity and quality of the contacts.

Clearly, the quantity of contacts, a single call and a single visit, are not, in and of themselves, sufficient to give rise to an intrusion upon seclusion claim. We turn, then, to the quality of the contacts. Here, there is the phone call in which Perri communicated Lieske's debt to a receptionist. Perri, among other things, threatened to have the police dispatched to Lieske's workplace in order to collect the debt. Moreover, during Perri's in-person visit to Lieske at work, Perri used profanity and made threats of physical violence which could be highly offensive to a reasonable person. In fact, these actions harken to the days of loan sharking, a practice this Court cannot condone.

Accordingly, in viewing the evidence in the light most favorable to the non-moving party, this Court will recommend that Morrie's Motion for Summary Judgment as to Count I, Intrusion upon Seclusion, be denied

**B. Defendant's Motion for Summary Judgment as to Count I (Invasion of Privacy - Publication of Private Facts)**

With respect to the publication of private facts claim, Morrie's argues that summary judgment is appropriate because, based on the facts, there was no substantial certainty that the private information at issue would become public knowledge. (Def.'s Mem. at 6.) Lieske opposes the

motion on the grounds that publication to a small number of people does not preclude actionable publication of private facts, particularly when that publication occurred in the workplace setting. (Pl.'s Rep. Mem. at 20-21.)

Publication of private facts rises to the level of an invasion of privacy "when one 'gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" Lake v. Wal-Mart Stores, Inc. 582 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement (Second) of Torts § 652D (1977)). The Restatement (Second) of Torts construes the term "publicity" narrowly:

> 'Publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of the public knowledge. It is one of a communication that reaches, or is sure to reach, the public. Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second) of Torts § 652D, cmt. a; see also C.L.D. v. Wall-Mart Stores, Inc., 79 F.Supp.2d 1080 (D. Minn. 1999).

In C.L.D., the plaintiff sued her employer for allegedly disclosing the fact that she requested a medical leave to have an abortion to three co-workers. See C.L.D. at 1082. Using the definition of 'publicity' found in the Restatement (Second) of Torts, the Minnesota Supreme Court found that the plaintiff had "failed to state a cause of action for publication of private facts. Plaintiff does not allege that defendant disclosed her abortion in the media or in any other form accessible to the population at large." C.L.D. at 1084. The court continued that "[n]o reasonable fact-finder could infer from these allegations that defendant disclosed her abortion to a sufficiently large number of

people that the public at large either knew or was substantially certain to become aware of it." Id.

In the instant case, information related to Lieske's indebtedness was communicated to only three employees, two of whom were human resources personnel. Clearly, the information was not disclosed to a sufficiently large number of people or anyone associated with the media so that the public either knew or was likely to become aware of it. Indeed, as in C.L.D., the information about Lieske's debt was communicated to a total of three co-workers.

Thus, in viewing the evidence in the light most favorable to the non-moving party, this Court is of the opinion that the publication of private facts has not occurred and accordingly, this Court will recommend that Morrie's Motion for Summary Judgment as to Count I, Invasion of Privacy, Publication of Private Facts, be granted.

**C. Defendant's Motion for Summary Judgment as to Count II (Defamation)**

Morrie's contends that summary judgment is appropriate as to the defamation count because the statements made about Lieske were either true, substantially true or mere opinion. (Def.'s Mem. at 10-11.) Furthermore, even if the statements are found to be false, Morrie's has rebutted the presumption of harm to Lieske because the number of people with knowledge of the alleged slander was small and those co-workers have testified that their opinion of Lieske was unaffected by the statements. (Id. at 12.) Finally, Morrie's argues that this is not a case of defamation per se. (Def.'s Rep. Mem. at 13.)

At the other extreme, Lieske's contends that Morrie's falsely accused Lieske of a crime and by so doing, this is a case of defamation per se. (Pl.'s Mem. at 23-24.) In addition, the statements made were arguably false, were communicated to third persons and therefore, presumptively harmed plaintiff's reputation. (Id. at 24-25.) Finally, Lieske's contends that there is a genuine issue

of material fact with respect to whether Morrie's made any false statements about Lieske and therefore, summary judgment is inappropriate.

Under Minnesota law, the elements of a claim for defamation "require the plaintiff to prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation." Richie v. Paramount Pictures Corp. 544 N.W.2d 21, 25 (Minn. 1996). Alternatively, defamation per se is actionable without a showing of harm to reputation as such harm is presumed. Id. "Among those types of actions which are defamatory per se are false accusations of committing a crime." Id. at 26 n.3.

Here, the record establishes that Perri falsely accused Lieske of stealing checks and writing bad checks when speaking with the receptionist at Lieske's place of employment. Consequently, the accusations here are sufficient to support a defamation per se claim. In viewing the evidence in the light most favorable to the non-moving party, this Court will recommend that Morrie's Motion for Summary Judgment as to Count II, Defamation, be denied.

**D. Defendant's Motion for Summary Judgment as to Count IV (Assault)**

Morrie's contends that it is entitled to summary judgment with respect to Count IV because the allegations giving rise to the claim are insufficient to support the elements of assault. (Def.'s Mem. at 17.) Specifically, Morrie's contends that the allegations do not rise to the level of a threat of imminent bodily harm and any apprehension Lieske may have had was unreasonable. (Id.) On the other hand, Lieske argues that under the totality of circumstances, Perri's actions were threatening, especially since he possessed the ability to harm Lieske and Lieske reasonably feared such harm would occur. (Pl.'s Mem. at 32.)

Minnesota courts define assault as "an unlawful threat to do bodily harm to another with

present ability to carry the threat into effect. Mere words or threats alone do not constitute assault." Dahlin v. Fraser, 288 N.W. 851, 852 (Minn. 1939). Additionally, the intent to do bodily harm "may be inferred from all the facts and circumstances, such as exhibitions of anger, threats, gestures and other conduct." Id. at 853.

In the instant case, Defendant Perri, who stands over six feet and regularly engages in body building activites, slammed the door in which Lieske was standing, became angry and used threatening language. In viewing the facts in the light most favorable to the moving party, we believe that Lieske could have reasonably felt that bodily harm was likely to occur. At the very least, the Plaintiff has raised genuine issues of material fact which preclude summary judgment. Therefore, this Court will recommend that Morrie's Motion for Summary Judgment as to Count IV, Assault, be denied.

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Morrie's Motion for Partial Summary Judgment [#11] be **GRANTED in part** and **DENIED in part** as follows:

1. Insofar as the Motion seeks summary judgment as to Count I - Intrusion upon Seclusion, Count II - Defamation and Count IV - Assault, it should be **DENIED**;

2. Insofar as the Motion seeks summary judgment as to as to Count I - Publication of Private Facts, it should be **GRANTED**.

DATED: April 17, 2002

FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within 10 days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.