**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: CO-2658 JNE/JGL**

**ORIGINAL**

Brian Lieske,

Plaintiff,

v.

Morrie's Brooklyn Park Daewoo,
d/b/a Morrie's Brooklyn Park Used Car
& Truck Center, and Todd Perry,
individually,

Defendants.

**EXHIBIT "1" TO DEFENDANT MORRIE'S MOTION TO AMEND THE COURT'S PRETRIAL SCHEDULING ORDER PURSUANT TO FED.R.CIV.P. 16 AND LOCAL RULE 16.3**

Respectfully submitted,

**JOHNSON • PROVO-PETERSEN, LLP**

Dated: 5/26/04

Gregory J. Johnson (#202678)
332 Minnesota Street
Suite West 975
St. Paul, MN 55101
(651) 227-2534
Attorneys for Defendants

SCANNED
JUN 01 2004
U.S. DISTRICT COURT ST. PAUL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Court File No.: C0-2658 JNE/FLN

Brian Lieske,

Plaintiff,

v.

**NOTICE OF MOTION AND MOTION**

Morrie's Brooklyn Park Daewoo,
d/b/a Morrie's Brooklyn Park Used Car
& Truck Center, and Todd Perry,
individually,

Defendants.

**ORAL ARGUMENT REQUESTED**

---

TO: Plaintiff above-named and his attorney of record, Thomas J. Lyons, Jr., CONSUMER JUSTICE CENTER, P.A., 342 East County Road D, Little Canada, MN 55117:

**PLEASE TAKE NOTICE** that Defendant Morrie's Brooklyn Park Daewoo, d/b/a Morrie's Brooklyn Park Used Car & Truck Center, by and through its undersigned counsel, will bring on for hearing a Motion for Summary Judgment on the federal claims alleged in Count III of the Second Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure, before the Honorable Joan N. Erickson, United States District Court Judge, in the United States District Court, United States Courthouse, 300 South Fourth Street, City of Minneapolis, State of Minnesota, on ____________, 2004.

Said motion will be based upon the attached memoranda of law, affidavits and exhibits and such other documents on file with the Court.

EXHIBIT 1

Dated:_____________

**JOHNSON PROVO-PETERSEN, LLP**

______________________________

Gregory J. Johnson (#202678)
Attorneys for Defendants
332 Minnesota Street, Suite West 975
St. Paul, MN 55101
(651) 227-2534

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Brian Lieske,

Plaintiff,

vs.

Morrie's Brooklyn Park Daewoo, d/b/a Morrie's Brooklyn Park Used Car & Truck Center, and Todd Perry, individually,

Defendants.

Court File No.: C0-2658 JNE/JFL

**DEFENDANT MORRIE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS**

---

## I. INTRODUCTION

This Memorandum is submitted on behalf of Defendant Morrie's Brooklyn Park Daewoo, d/b/a Morrie's Brooklyn Park Used Car & Truck Center (hereinafter "Morries") in Support of its Motion for Summary Judgment. Morries contends that the federal claims Plaintiff has alleged under the federal Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.*, lack merit and must be dismissed.

This case arises out of Plaintiff's purchase of a 1997 Ford Taurus from Morries on August 26, 2000. Morries arranged financing through Fairlane Credit, a sub-prime sales finance company, pursuant to a retail installment contract ("RIC"). Although the RIC contained a segregated Truth in Lending disclosure box which contained all of the credit terms required to be disclosed by the TILA

(i.e., the annual percentage rate, amount financed, finance charge, total of payments and total sales price) and Plaintiff reviewed, signed and received a copy of the RIC, Plaintiff alleges two TILA claims against Morries.

First, Plaintiff alleges that Morries violated the "timing" requirements of 15 U.S.C. §1638(b)(1) and §226.17 of Revised Regulation Z "by failing to deliver any disclosures to Plaintiff in a form he could keep prior to . . . consummation of the transaction . . .." (See Amended Complaint at ¶ 54.)

As noted below, the identical "timing" claim has been raised and rejected by numerous federal courts. The claim has also been rejected by the United States District Court for the District of Minnesota on two occasions. See, e.g., *Peter v. Village Imports Co.*, 2001 WL 1640130 (D. Minn. Oct. 9, 2001) (Doty, J.) (dealership complies with the timing provisions of the TILA when it presents the customer with an unsigned installment contract containing the TIL disclosures before the customer has become contractually obligated to any credit terms); *Vang v. Morrie's Minnetonka Ford*, 2001 WL 1589614 (D. Minn. Dec. 11, 2001) (Frank, J.) (granting summary judgment to dealership which provided customer with unsigned copy of installment contract containing TIL disclosures for customer's review).[1]

Second, Plaintiff alleges that Morries violated 12 C.F.R. §226.17(c)(2) of Regulation Z, claiming that the TIL disclosures which appeared on the RIC he executed "should have been marked as estimates" because the transaction was contingent upon a third-party lender's approval. (See Amended Complaint at ¶ 55.)

---

[1]Copies of all unpublished decisions cited herein are attached as Exhibit C to the Affidavit of Gregory J. Johnson filed herewith.

As noted below, the identical "estimate" claim has been rejected by several federal courts. It has also been rejected by the United States District Court for the District of Minnesota. See, e.g., *Vang v. Morrie's Minnetonka Ford*, 2001 WL 1589614 (D. Minn. Dec. 11, 2001) (Frank, J.) (fact that transaction is contingent upon financing approval by a third-party lender does not require dealership to label TIL disclosures as "estimates" because customer is obligated to disclosed terms if financing condition is satisfied).

Moreover, Plaintiff has no actual damages to support a claim and numerous federal courts have held that a violation of the TILA provisions at issue do not give rise to statutory damages. The United States District Court for the District of Minnesota has also reached that conclusion on two occasions. *See, e.g.*, *Stevens v. Brookdale Dodge, Inc.*, 2002 WL 31941158 (D. Minn. Dec. 27, 2002) (Erickson, J.) (even assuming a violation of TILA's "timing" requirement occurred, dealership was still entitled to summary judgment because the plaintiff failed to establish any actual damages relating to the alleged violation); *Malchow v. GMI Acquisition, Inc.*, 2002 WL 31185865 at *4 (D. Minn. Oct. 1, 2002) (Kyle, J.) (holding that statutory damages are not available for an alleged violation of 15 U.S.C. §1638(b) or claim that dealership failed to label TIL disclosures as estimates).

Morries is entitled to summary judgment dismissing Plaintiff's federal claims.

## II. DOCUMENTS FORMING A PART OF THE RECORD

The following documents form a part of the record for Morries' Motion for Summary Judgment:

1. Affidavit of Alex Greiner dated August 1, 2001 and attached exhibits;

2. Affidavit of Defendant's Counsel Gregory J. Johnson dated May 25, 2004 and

attached exhibits, including:

- Exhibit A: Portions of Deposition Transcript of Plaintiff cited herein;
- Exhibit B: Plaintiff's Response to Morries' Request for Admissions; and
- Exhibit C: Copies of unpublished case decisions cited herein.

## III. STATEMENT OF RELEVANT FACTS

Morries is an automobile dealership located at 8100 Lakeland Avenue in Brooklyn Park Minnesota. (*See* Aff. of A. Greiner at ¶ 2.) The dealership has business relationships with various lending institutions which extend financing to its customers to purchase motor vehicles. (*Id.*) If the customer desires, Morries will attempt to arrange financing with a lending institution to enable its customers to purchase motor vehicles. (*Id.*) Although Morries completes the retail installment contract forms provided by the lending institutions, it ultimately assigns the contract to the lender. (*Id.*)

In July and August of 2000, Plaintiff began searching for a car and visited several automobile dealerships. (*See* Dep. Lieske at pp. 43-44, attached as Exh. A to the Aff. of G. Johnson.) It was his intention to finance the purchase of a vehicle because he did not have cash available to purchase one. (*Id.* at p. 47.) He was, however, aware that his credit history would be "a problem and an obstacle" in obtaining automobile financing. (*Id.* at p. 51.) He specifically recalls that one dealership advised him that he would need to clear up his credit card debts before he could obtain financing to purchase a vehicle. (*Id.* at pp. 47-48.)

On August 23, 2000, Plaintiff visited Defendant Morries. Plaintiff test drove a 1997 Ford Taurus and expressed an interest in purchasing it for $9,995. (*See* Dep. Lieske at p. 59.) Plaintiff filled out a credit application and asked Morries to attempt to arrange financing so that he could

purchase the vehicle. (Id. at p. 60.) Morries advised Plaintiff that it would submit his credit application to Fairlane Credit. (Id. at p. 61.) Fairlane Credit is a subprime lender which extends credit to consumers with poor credit histories. (See Aff. of A. Greiner at ¶ 5.) Morries was unable to obtain financing approval that day. (See Dep. Lieske at p. 58.) Plaintiff gave the dealership a $500 deposit and the dealership allowed Plaintiff take the car home pursuant to a rental contract. (Id. at pp. 57-58.)

Within a few days, Morries contacted Plaintiff and advised him that it had been able to arrange financing with Fairlane Credit. (Id. at p. 62.) Plaintiff returned to the dealership on August 26, 2000 and met with Alex Greiner, Morries' Finance & Insurance ("F&I") Manager. (Id. at p. 64.) Plaintiff executed a vehicle purchase contract setting forth the terms of the purchase. (See Exh. A attached to the Aff. of A. Greiner.) Plaintiff agreed to purchase the 1997 Ford Taurus for $9,995 and make a $1,500 downpayment. (See Dep. Lieske at pp. 65-66.) The vehicle purchase contract stated: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." (See Exh. A attached to the Aff. of A. Greiner.)

After Plaintiff executed the vehicle purchase contract, the F&I Manager completed a Fairlane Credit retail installment contract. (See Aff. of A. Greiner at ¶ 5.) The RIC contained a segregated truth-in-lending disclosure box entitled, **"TRUTH IN LENDING DISCLOSURES"** which also identified in bold, the **"ANNUAL PERCENTAGE RATE"** (19.75%), **"FINANCE CHARGE"** ($4,575.88), **"AMOUNT FINANCED"** ($9,842.36), **"TOTAL OF PAYMENTS"** ($14,418.24), and the **"TOTAL SALE PRICE"** ($15,918.24). (See Exh. B attached to the Aff. of A. Greiner.)

The F&I Manager placed the RIC in front of Plaintiff and went over all of the truth-in-

lending information with Plaintiff. (*See* Dep. Lieske at pp. 71-72, 150.) Plaintiff understood that if the terms of the RIC were not acceptable, he could refuse to sign the RIC and look elsewhere for financing. (*Id.* at p. 74-75.) However, Plaintiff reviewed the RIC, found the terms to be acceptable, and elected to sign it. (*Id.* at pp. 73-74; Aff. of A. Greiner at ¶ 6.) Thereafter, the F&I Manager tore off the goldenrod colored copy of the RIC and gave it to Plaintiff. (Aff. of A. Greiner at ¶ 6; Dep. Lieske at p. 76.)[2]

If Plaintiff did not like the credit terms of the Fairlane Credit RIC, he obviously could have elected not to sign it. (*See* Aff. of A. Greiner at ¶ 7.) If he thought he could get a better interest rate and wanted to shop around, he could have chosen not to sign it, requested that the dealership hold the vehicle, and taken an unsigned copy of the RIC with him. (*Id.*) Plaintiff, however, suspected that no other lenders would extend financing to him to purchase a vehicle and had no intention of looking elsewhere for credit. (*See* Dep. Lieske at pp. 73, 75.) He did not request a separate copy of the RIC before he signed it because he "had no intention of looking for financing any place else". (*Id.* at 150.)[3]

In Response to Morries' requests for admissions, Plaintiff responded as follows:

> 1. Admit that Plaintiff executed the Minnesota Simple Interest Vehicle Retail Installment Contract, which was attached as an Exhibit to the Complaint (hereinafter referred to as the "installment contract").

---

[2]Plaintiff's state law claims of defamation and assault relate to the collection of the downpayment Plaintiff agreed to pay Morries.

[3]A consumer may also search for better credit terms after signing a RIC. (*See* Aff. of A. Greiner at ¶ 7.) A RIC can be pre-paid at any time without penalty. (*Id.*) Plaintiff's RIC, for example, contained a "Prepayment" provision which stated: "If you pay off this contract early, you will not have to pay a penalty." (*See* Exh. B attached to the Aff. of A. Greiner.) Plaintiff did not, however, look elsewhere for better credit terms after signing the RIC on August 26, 2000. (*See* Dep. Lieske at pp. 152-153.)

**ANSWER:** Admit

4. Admit that Plaintiff executed the installment contract on August 26, 2000.

**ANSWER:** Admit

11. Admit that prior to executing the installment contract, Plaintiff reviewed the information contained in the segregated TILA disclosure box.

**ANSWER:** Admit

13. Admit that prior to executing the installment contract, Plaintiff reviewed the Payment Schedule information.

**ANSWER:** Admit

15. Admit that Plaintiff read the installment contract before he executed it.

**ANSWER:** Admit

16. Admit that prior to executing the installment contract, Plaintiff did not request that the dealership provide them with a copy of the installment contract.

**ANSWER:** Admit

17. Admit that Plaintiff received a copy of the installment contract he signed.

**ANSWER:** Admit

21. Admit that Plaintiff has made monthly payments to Fairlane Credit, LLC as required by the installment contract he executed on August 26, 2000.

**ANSWER:** Admit

22. Admit that since August 26, 2000, Plaintiff has not attempted to obtain financing for the motor vehicle described in the installment contract through a different lending institution.

**ANSWER:** Admit

(See Exh. B to Aff. of G. Johnson.)

## IV. LEGAL ANALYSIS

### A. Standard for Summary Judgment

A motion for summary judgment may be brought pursuant to Fed.R.Civ.P. 56(b) "at any time" after the complaint is served. The purpose of summary judgment is to isolate, and then terminate, claims and defenses that have no factual support. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is not to be viewed as a disfavored technical shortcut, but an integral component of the Federal Rules of Civil Procedure. *Id.* at 327. In order to defeat a motion for summary judgment, a plaintiff must present specific facts demonstrating that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The non-moving party may not rest on the allegations of the pleadings, but must present specific evidence indicating that there is a genuine issue of fact to be tried so that the parties can avoid the time and expense of protracted litigation. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### B. Morries is Entitled to Summary Judgment on Plaintiff's Federal Claims.

#### 1. Morries Did Not Violate Regulation Z's "Estimate" Requirement.

The TILA requires that a "creditor" (which includes a dealership which is arranging the extension of credit through a third-party lending institution) make written disclosure of certain credit terms. *See* 15 U.S.C. §1638(a)(1)-(5). The retail installment contract Plaintiff executed on August 26, 2000 contained a segregated truth-in-lending disclosure box entitled, **"TRUTH IN LENDING DISCLOSURES"** which identified the **"ANNUAL PERCENTAGE RATE"** (19.75%), **"FINANCE CHARGE"** ($4,575.88), **"AMOUNT FINANCED"** ($9,842.36), **"TOTAL OF PAYMENTS"** ($14,418.24), and the **"TOTAL SALE PRICE"** ($15,918.24). (*See* Exh. B attached

to the Aff. of A. Greiner.)

Plaintiff alleges that Morries violated the "estimates" provision of Regulation Z, 12 C.F.R. §226.17(c)(2)(i). Plaintiff contends that the RIC remained subject to financing approval by Fairlane Credit at the time he executed it and that Regulation Z required the credit terms contained in the TILA box to be labeled as estimates in that event. 12 C.F.R. §226.17(c)(2)(i) provides, in pertinent part:

> If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.

Morries is entitled to summary judgment on this claim. First, there is no evidence that Fairlane Credit, the lender that extended financing to Plaintiff so that he could purchase the 1997 Ford Taurus from Morries, had not approved the financing terms at the time Plaintiff executed the retail installment contract. Thus, the factual predicate for Plaintiff's claim – i.e., that the retail installment contract remained contingent upon Fairlane Credit's approval of the credit terms – is simply lacking.

Second, and more importantly, Plaintiff's claim would fail even if the retail installment contract had remained contingent upon Fairlane Credit's approval at the time Plaintiff executed the contract. Numerous courts, including the Seventh Circuit Court of Appeals and this Court, have rejected the identical "estimate" claim even in cases where the lending institution declined to extend financing to the customer.[4] Where a customer takes delivery of a vehicle subject to financing

---

[4]The Official Staff Commentary to Regulation Z makes clear that 12 C.F.R. §226.17(c)(2)(i), is only intended to apply to situations where a creditor does not have exact information regarding an amount that is required to be disclosed by the TILA, or exact information regarding an amount that is used to calculate an amount that is required to be disclosed by TILA, such as taxes, third-party

approval by a lending institution, the numeric amounts that are disclosed on the retail installment contract are not "***estimated***" amounts – they are the ***actual*** amounts that the customer has agreed to pay, and will be required to pay, in the event that the lending institution agrees to extend financing. Not labeling the disclosed terms as ***"estimates"*** does not, therefore, violate the TILA. See, e.g., Janikowski v. Lynch Ford, Inc., 210 F.3d 765, 767 (7th Cir. 2000), *reh'g and reh'g en banc denied,* (May 23, 2000) (dismissing claim that dealership violated TILA by not labeling disclosures as estimates because "[i]f the financing condition had been satisfied, Janikowski would be able and obligated to purchase the car at 5.9%"); Tripp v. Charlie Falk Auto, 2001 WL 1105132 at *5 (E.D. Va. 2001) (the condition of financing approval by a third-party lending institution does not necessitate labeling the disclosed terms estimates because "[i]f the financing condition had been satisfied, then Plaintiffs and Defendants would have been obligated under the terms of the contract"); Burns v. Elmhurst Auto Mall, Inc., 2001 WL 521840 (N.D. Ill. May 16, 2001) ("Since the disclosure was accurate when the contract was completed, the lack of available financing at the rate disclosed does not render the disclosures actionable"); Leguillou v. Lynch Ford, Inc., 2000 WL 198796 (N.D. Ill. Feb. 14, 2000) ("Since the disclosure was accurate when the contract was completed, the lack of available financing at 11.9% does not render the disclosures actionable"); Jasper v. New Rogers Pontiac, Inc., 1999 WL 1024522 at *2-3 (N.D. Ill. Nov. 5, 1999) (dismissing claim and specifically

---

fees, insurance costs, lien pay-off amounts, etc. The Regulation is not intended to apply to situations where the parties have agreed that the transaction may be cancelled in the event that financing approval cannot be obtained on the disclosed terms. See 12 C.F.R. §226, Supp. I, ¶¶17(c)(2). The Official Staff Commentary notes that a creditor "normally may rely on the representations of other parties in obtaining information" that is used in calculating the amounts required to be disclosed. Id. "For example, the creditor might look to the consumer for the time of consummation, to insurance companies for the cost of insurance, or to realtors for taxes and escrow fees." Id.

noting that a dealership's inability to arrange financing on terms specified in installment contract "does not make the disclosures inaccurate so as to necessitate their being labeled as estimates").[5]

The identical "estimate" claim was also rejected by this Court in *Vang v. Morrie's Minnetonka Ford*, 2001 WL 1589614 (D. Minn. Dec. 11, 2001) (Frank, J.) There, as here, the customer alleged that the TIL disclosures on the retail installment contract the customer executed should have been labeled as "estimates" under Regulation Z because the transaction was contingent upon financing approval by a third-party lender. In rejecting Vang's "estimate" claim, Judge Frank noted:

> The Court finds Plaintiff's argument on this issue to be without merit. At the time the terms were disclosed, Defendant knew them to be accurate, and Plaintiff agreed to be bound by those terms, if third-party lender approval was obtained. *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir.2000) (finding no TILA "estimates" violation because borrower would have been obligated to purchase pursuant to disclosed terms had financing condition been satisfied). * * * Contrary to Plaintiff's position, the fact that the borrower is not bound to the contract unless the agreed upon terms can be obtained from a third-party lender appears to serve the interests of the consumer. The fact that a borrower may be disappointed that credit terms cannot be obtained is unfortunate but does not constitute evidence of a TILA violation.

2001 WL 1589614 at *4.

Morries did not violate Regulation Z, 12 C.F.R. §226.17(c)(2)(i) by not labeling the TIL

---

[5]In *Leguillou*, the vehicle purchase order contained a provision allowing either party to void the installment contract in the event that financing could not be obtained. The court noted that a condition subsequent of financing approval "does not undermine the validity of the original TILA disclosures. Accurate disclosures do not become violations because they are rendered inaccurate by subsequent events". 2000 WL 198796 at *3. Indeed, 15 U.S.C. §1634 specifically provides that: "[i]f information required to be disclosed in accordance with [TILA] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." *See also Jasper v. New Rogers Pontiac, Inc.*, 1999 WL 1024522 at *2-3 (N.D. Ill. Nov. 5, 1999) ("the voidability of the [installment contract] alone does not make the disclosures inaccurate so as to necessitate their being labeled as estimates").

disclosures as "estimates". Moreover, Plaintiff has no actual damages and a violation of the "estimate" regulation does not authorize an award of statutory penalties. (See the discussion at Section IV. B. 3, *infra.*)

Based on the foregoing, Morries is entitled to summary judgment on Plaintiff's "estimate" claim.

**2. Morries Did Not Violate TILA's "Timing" Requirement.**

Plaintiff's "timing" claim must be dismissed because Morries did not violate the TILA.

The overall purpose of the TILA is to promote the informed use of credit and to protect the consumer against billing errors. 15 U.S.C. §1601(a). "Prior to the enactment of the TILA, . . . the consumer was unable to make simple and direct cost comparisons among the many alternative sources of credit." *Super Chief Credit Union v. Gilchrist*, 232 Kan. 40, 653 P.2d 117, 120 (1982). The "prime statutory goal [of the TILA] was to eliminate the confusion generated by numbers which, because based on different computations, could not be easily juxtaposed to judge their relative desirability". *Bissette v. Colonial Mortgage Corp. of D.C.*, 477 F.2d 1245, 1247 n.2 (D.C. Cir. 1973).[6]

In *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980), the United States Supreme Court held that "meaningful disclosure", within the context of the TILA, "does not mean more disclosure. Rather, it describes a balance between 'competing considerations of complete disclosure

[6]As noted in the 1967 Senate Report, consumers were "faced with a number of credit disclosure practices, none of which [were] directly comparable to another". See S. Rep. No. 392, 90th Cong., 1st Sess. 2 (1967). Some creditors used an "add on" rate, which had the effect of understating a simple annual percentage rate by 50 percent, while others employed monthly rates or would add a number of additional fees to the basic finance charge or would make no interest rate disclosure at all. (*Id.*) The end result of these inconsistent and non-comparable practices was confusion. (*Id.* at 3.)

. . . and the need to avoid . . . [informational overload]". In reversing one TILA decision, the United States Supreme Court directed lower courts to not lose sight of the goals of the TILA, pointing out, "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers". *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 222 n.20 (1981).

Plaintiff does not object to the content of the TIL disclosures that appeared on the RIC he signed or the placement of those TIL disclosures on the RIC. It is undisputed that the RIC contained all of the credit terms required to be disclosed and those terms were properly segregated from all other information on the RIC. It is further undisputed that on August 26, 2000, Morries provided Plaintiff with an unsigned copy of the RIC and that Plaintiff reviewed and signed it before he was contractually obligated to any credit terms. Plaintiff could have elected not to sign the RIC and gone elsewhere in search of better terms. Plaintiff, however, found the terms to be acceptable, elected to sign the RIC and received a carbon copy. He did not request a separate copy of the RIC before he signed it because he "had no intention of looking for financing any place else". (*See* Dep. Lieske at p. 150.)

Plaintiff, however, contends that Morries did not do enough. Specifically, Plaintiff contends that the "timing" requirement of 15 U.S.C. §1638(b) and Regulation 12 C.F.R. §226.17 obligated Morries to furnish him a separate, earlier TIL form. For several reasons, Plaintiff's timing claim must be rejected.

First, Congress and the FRB have always authorized the TIL disclosures to be made on the

contract to be signed by the customer, as was done in the immediate case.[7] Presenting standardized credit information (i.e., the TIL disclosures) to a customer in an installment contract promotes the informed use of credit by affording the customer sufficient information to determine whether to accept or reject those terms. See, e.g., Postow v. OBA Federal Savings and Loan Ass'n, 627 F.2d 1370, 1378 (D.C. Cir. 1980) ("In providing for disclosure in the note itself as the general rule, Congress and the Board seem to have indicated that a separate, earlier notice is not required as long as the borrower receives the required disclosure before becoming liable for a significant amount if he or she does not utilize the credit. In most consumer loans, the creditor [sic, debtor] does not become liable in any way until the note is signed, and disclosure in the note would thus be sufficient. If the note is not signed until after the borrower becomes liable, however, disclosure in the note would be untimely").

In Stavrides v. Mellon Nat'l Bank & Trust Co., 353 F.Supp. 1072, 1078-79 (W.D. Pa.), *aff'd on other grounds*, 487 F.2d 953 (3d Cir. 1973), the court also recognized that TIL disclosures can be made on the contract or note to be signed by the consumer at the closing of the transaction and that no separate, earlier TIL statement is required. Although Stavrides dealt with a real estate transaction, the court also addressed the "garden-variety" automobile financing transaction in its

---

[7]Indeed, when the TILA was originally passed in the late 1960's, Congress specifically noted that compliance would be achieved by "providing the required information on the installment contract or other evidence of indebtedness which the consumer would sign in order to complete the transaction". S. Rep. No. 392, 90th Cong., 1st Sess. 7 (1967). Congress further noted that "[d]isclosure must be made before the credit is extended; this may be done on the contract or other document to be signed by the customer, thereby obviating the need for disclosure on a separate piece of paper". H. R. No. 1040, 90th Cong., 1st Sess. 25 (1967). The Official Staff Commentary to Regulation Z states: "[T]he disclosures may appear on a separate sheet of paper or may be set off from other information on the contract . . .." 12 C.F.R. Pt. 226, Supp. I, §226.17(a)(1), cmt. 2 (2000).

opinion, noting:

> The legislative history reveals very clearly the intent of Congress to enact legislative [provisions] which reflected commercial realities. * * * Section 1638 deals with the ordinary credit sale which commonly occurs when one buys a car or appliance on a garden-variety deferred payment or installment plan. In this situation Congress apparently provided the terms of the loan could be revealed before the credit was extended (just before the buyer signed the papers in the dealer's office) and could be disclosed in the loan papers themselves. This disclosure requirement was obviously designed to conform to the realities of the commercial world where people buy their cars and appliances on the spot. We think the exact same disclosure language of §1638 when used in §1639 must be given the exact same interpretation. It is apparent, therefore, that Congress intended that mortgage terms could be revealed in the mortgage papers just before credit was extended and the loan consummated.

Id. at 1078.

Second, and more importantly, numerous federal and state courts have rejected the identical "timing" claim that is advanced by Plaintiff in the immediate case. A dealership which arranges financing with a third-party lender satisfies TILA's timing requirement by providing a customer with a RIC (containing the TIL disclosures) before the customer is contractually obligated to any credit terms. See, e.g., Spearman v. Tom Wood Pontiac-GMC, Inc., 312 F.3d 848, 851 (7th Cir. 2002) ("the creditor may fulfill the timing requirements of TILA and Regulation Z by providing the consumer with a copy of the contract containing the appropriate disclosures moments before the consumer signs the contract"); Haun v. Don Mealy Imports, Inc., 285 F.Supp.2d 1297 (M.D. Fla. 2003) (the TILA does not require a dealership to provide a personal copy of TIL disclosures separate from those provided on the RIC signed by the customer); Harper v. Lindsay Chevrolet Oldsmobile, LLC, 212 F.Supp.2d 582 (E.D. Va. 2002) (noting that the TILA does not require a dealership to provide disclosures in writing on a document separate from the RIC); Gavin v. Koons Buick Pontiac GMC, Inc., 28 Fed. Appx. 220, 2002 WL 46759 (4th Cir. 2002) (allowing the customer to review the written

credit agreement prior to signing satisfies the TILA); Queen v. Lynch Jewelers, LLC, 30 Kan.App.2d 1026, 55 P.3d 914 (Kan. Ct. App. 2002) (the TILA does not require that a creditor separate the consumer's copy of the credit contract from the other copies of the contract and give the copy to the consumer before the consumer signs the contract); Tripp v. Charlie Falk Auto, 2001 WL 1105132 (E.D. Va. 2001) (noting that the "opportunity to read the [installment] contract before signing . . . is sufficient to satisfy the pre-consummation requirement of TILA"); Nigh v. Koons Buick Pontiac GMC, Inc., 143 F.Supp.2d 535 (E.D. Va. 2001) ("[P]rovision of a RISC with all of the sales terms prior to signature grants a buyer the opportunity to review the terms prior to signing, and to defer signing if the terms are not agreeable"); Diaz v. Joe Rizza Ford, Inc., 2001 WL 1360315 (N.D. Ill. 2001) (dealership satisfies TILA by providing RIC containing TIL disclosures to customer for review before customer is obligated to any credit terms).[8]

In Spearman v. Tom Wood Pontiac-GMC, Inc., the Seventh Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of the dealership. In dismissing the timing claim, the court stated:

> As we noted above, the disclosures may be made in the same document as the credit agreement so long as they are properly segregated. Moreover, the disclosure need not be given any particular time before consummation. Thus, the creditor may fulfill the timing requirements of TILA and Regulation Z by providing the consumer with a copy of the contract containing the appropriate disclosures moments before the consumer signs the contract. [The dealership] fulfilled the timing requirement by giving Spearman four copies of the disclosures in the form of the four-part Contract moments before she signed. * * * Under Spearman's view of the evidence, the salesman would have been required to hand over the disclosures and then say, for

---

[8]See also R. Clontz, Truth in Lending Manual §5.01[5] (6th ed. 1991) ("Note that while the format of the disclosures must be made in a form the consumer may keep, the related disclosures are actually given when the snap-set form containing the disclosures (on its face) is handed to the consumer to be read and then signed; i.e., before the consumer is in any manner obligated on the transaction").

> example, "This is yours to keep." TILA imposes no such obligation. * * * Spearman herself provides the most likely explanation of why she did not take a copy of the Contract without signing. She had no intention of shopping around for better rates. [The dealership] did all it was required to do when it gave Spearman a copy of the disclosures in a form she could keep before she signed the credit deal.

Spearman, 312 F.3d at 851-52.

In *Nigh v. Koons Buick Pontiac GMC Inc.*, 143 F.Supp.2d 535 (E.D. Va. 2001), the court also addressed the identical TILA "timing" claim that is before this Court. In *Nigh*, the plaintiff purchased a vehicle at the defendant dealership. The dealership prepared a retail installment sales contract ("RISC") which contained all of the credit disclosures required by the TILA and presented the same to the plaintiff for his review and signature. The plaintiff signed the RIC and received a copy of it. Among other claims, the plaintiff alleged a TILA claim and cited *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir. 2000), for the proposition that "disclosure of the credit terms contemporaneous with his obligation to sign the [RIC] failed to provide him with an opportunity to 'shop' for a better interest rate". *Id.* at 548. The *Nigh* court dismissed the TILA claim, stating in relevant part:

> [G]iving a buyer the credit terms on the form that he is to sign complies with the timing requirements of the Act. The [RIC] contains all of the credit and financing terms of the transaction. Nigh was given the opportunity to read the [RIC] before he signed it. * * * Nigh did not become obligated on the credit transaction until he signed the [RIC]. [citations omitted]. If Nigh did not like the terms, he could have chosen not to sign at that time and chosen to take the agreement with him to 'shop" for better rates. * * * The Court finds that provision of a [RIC] with all of the sales terms prior to signature grants a buyer the opportunity to review the terms prior to signing, and to defer signing if the terms are not agreeable. * * *

*Nigh*, 143 F.Supp.2d at 548-49.

The United States District Court for the District of Minnesota has likewise recognized that the standard practice followed by Morries in the immediate case complies with the "timing"

provisions of the TILA. In Peter v. Village Imports Co., 2001 WL 1640130 (D. Minn. Oct. 9, 2001), Judge Doty granted the dealership's motion for summary judgment on the plaintiff's TILA "timing" claim, noting:

> [T]he court believes that giving a buyer the credit terms on a form that he is to sign complies with the timing requirements of TILA. The retail installment contract given to Peter contained all of the credit and financing terms of the transaction. Peter was given the opportunity to read the contract before he signed it. Peter did not become obligated on the credit transaction until he signed the contact. If Peter did not like the terms, he could have chosen not to sign at the time and taken the agreement with him to "shop" for a better rate. Peter made the choice to sign immediately and did not shop around.

Peter, 2001 WL 1640130 at *3.

The same conclusion was reached by Judge Frank in the case of Vang v. Morrie's Minnetonka Ford, 2001 WL 1589614 (D. Minn. Dec. 11, 2001) (Frank, J.) In granting the dealership's motion for summary judgment on the plaintiff's "timing" claim in Vang, the court stated:

> By its current practice, Defendant presents to the borrower a copy of the contract with the requisite TIL disclosures. The borrower then has the opportunity to review the contract, including the disclosures, and then makes the decision whether or not to execute the contract. There is nothing before the Court that would support the conclusion that the borrower is somehow precluded from reviewing the unsigned contract for five minutes, five hours, or even five weeks. Either way, the borrower is provided with a written copy of the disclosures that he may take with him. * * *

Vang, 2001 WL 1589614 at *3.[9]

Plaintiff's timing claim, like the claims of the customers in Spearman, Harper, Gavin,

---

[9]In Vang, the customer contended that Peter was distinguishable because in Peter, "the interest rate in the retail installment contract was 0.00% . . .." While Judge Doty found Peter's argument "peculiar" in light of the interest-free loan, the interest rate has no bearing on the legal issue of whether the dealership violated the timing provisions of the TILA. The Court granted Village Imports' motion for summary judgment because "giving a buyer the credit terms on a form that he is to sign complies with the timing requirements of TILA". Peter, 2001 WL 1640130 at *3.

*Queen*, *Tripp*, *Nigh*, *Diaz*, *Peter* and *Vang*, fails. Here, as in those cases, it is undisputed that the TIL disclosures were made on the RIC and that Plaintiff was presented with an unsigned copy of the RIC before he was contractually obligated to any credit terms. Like any contract, Plaintiff had the option of rejecting or accepting those credit terms. Here, as in the above-referenced cases, there is nothing to suggest that had he refused to sign the RIC, he could have not taken away a copy, or notes of the terms if he so desired. Plaintiff, believing that no other lender would extend financing to him, reviewed the RIC and exercised his option of accepting those credit terms. He signed the RIC and received a copy. The TILA did not require Morries to provide Plaintiff with a separate, earlier TIL form.

Morries did not violate the "timing" requirement of 15 U.S.C. §1638(b)(1) and 12 C.F.R. §226.17. Here, as was the case in *Spearman*, Morries "did all it was required to do when it gave [Plaintiff] a copy of the disclosures in a form [he] could keep before she signed the credit deal". *Spearman*, 312 F.3d at 852. Moreover, even if it did, Plaintiff has no actual damages and a violation of the "timing" requirement does not authorize an award of statutory damages. (*See* the discussion at Section IV. B. 3, *infra.*)

Based on the foregoing, Morries is entitled to summary judgment on Plaintiff's "timing" claim.

**3. Plaintiff Cannot Establish Entitlement to Statutory Damages.**

Even assuming Plaintiff could establish a violation of TILA's timing requirement, Morries is entitled to summary judgment. Since 1982 – the effective date of the Truth in Lending Simplification Reform Act ("TILSRA") – statutory damages under 15 U.S.C. §1640(a)(2) have been confined to certain enumerated material violations of TILA and a violation of §1638(b)(1) is not one

of them.

Numerous courts, including the Sixth and Seventh Circuits and the United States District Court for the District of Minnesota have held that a violation of 15 U.S.C. §1638(b)(1) does not authorize an award of statutory damages. See, e.g., Brown v. Payday Check Advance, Inc., 202 F.3d 987 (7th Cir. 2000), *cert. denied*, 531 U.S. 820 (2000) (holding that a violation of §1638(b)(1) does not give rise to statutory damages because it is not specifically enumerated in §1640(a)(2)); [10] Baker v. Sunny Chevrolet, Inc., 349 F.3d 862 (6th Cir. 2003), *pet. for cert filed,* 72 USLW 3634 (Mar. 29, 2004) (failure to comply with TILA's timing requirements does not give rise to award of statutory damages); Stevens v. Brookdale Dodge, Inc., 2002 WL 31941158 (D. Minn. Dec. 27, 2002) (Erickson, J.) (even if violation of "timing" requirement occurred, dealership was entitled to summary judgment because Plaintiff failed to establish actual damages – "a creditor who violates section 1638(b)(1) is not liable for statutory damages"); *Wojcik v. Courtesy Auto Sales, Inc.*, 2002 WL 31663298 at *5 (D. Neb. Nov. 25, 2002); *Malchow v. GMI Acquisition, Inc.*, 2002 WL 31185865 at *3-5 (D. Minn. Oct. 1, 2002) (Kyle, J.) ("Had Congress intended to allow the recovery of statutory damages for violations of the timing requirements of subsection 1638(b)(1), it would have included that subsection in the sentence enumerating the provisions for which statutory damages are available"); *Kilbourn v. Candy Ford-Mercury, Inc.*, 209 F.R.D. 121, 125-28 (W.D. Mich. 2002); *Collins v. Ray Skillman Olds-GMC Truck, Inc.*, 2001 WL 1711466 at *3-4 (S.D. Ind.

---

[10]In *Spearman v. Tom Wood Pontiac-GMC, Inc.*, 312 F.3d 848, 852 (7th Cir. 2002), the plaintiff requested reconsideration of the Seventh Circuit's opinion in *Brown v. Payday, supra*. The court declined the request, stating: "[W]e need not address Spearman's other argument that she is entitled to statutory damages even though she admittedly suffered no actual damages because she had no intention of shopping for a better deal. We accordingly decline to reconsider our ruling in Brown . . .".

Dec. 3, 2001); Peter v. Village Imports Co., 2001 WL 1640130 at *3 (D. Minn. Oct. 9, 2001) (Doty, J.); Crowe v. Joliet Dodge & Union Acceptance Corp., 2001 WL 811655 at *4 (N.D. Ill. July 18, 2001); Nigh v. Koons Buick Pontiac GMC, Inc., 143 F.Supp.2d 535, 549 (E.D. Va. 2001); and Molenbeek v. West Mich. Auto & Truck Outlet, Inc., 2001 WL 1602654 at *5-6 (W.D. Mich. Mar. 15, 2001).[11]

Plaintiff may argue that the alleged violation of the timing requirement of 15 U.S.C. §1638(b)(1) results in a violation of 15 U.S.C. §1638(a)(3)-(6), contending that a creditor does not "disclose" a credit term for purposes of section §1638(a)(3)-(6) unless disclosure occurs at the time specified in section 1638(b)(1). In Stevens v. Brookdale Dodge, Inc., 2002 WL 31941158 (D. Minn. Dec. 27, 2002) (Erickson, J.), this Court, citing Brown v. Payday Check Advance, Inc., 202 F.3d 987, 991 (7th Cir. 2000), Malchow v. GMI Acquisition, Inc., 2002 WL 31185865 at *4 (D. Minn. Oct. 1, 2002) (Kyle, J.) and Kilbourn v. Candy Ford-Mercury, Inc., 209 F.R.D. 121, 126-127 (W.D. Mich. 2002), rejected this back-door argument. Stevens, 2002 WL 31941158 at *4-5. The argument should also be rejected here as well.

The foregoing cases, and their reasoning, also support Morries' position that a violation of 12 C.F.R. §226.17(c)(2)(i) of Regulation Z does not give rise to an award of statutory damages. TILA's liability provision, 15 U.S.C. § 1640(a)(2)(B), does not authorize statutory damages to be assessed for a violation of the "estimates" provision of 12 C.F.R. §226.17(c)(2)(i). While Congress could have elected to include a violation that provision within the list authorizing an award of statutory damages, it did not do so. "[O]mission from the list means no statutory damages." Brown

[11]The Eighth Circuit Court of Appeals has also recognized that statutory damages are only available for certain TIL violations. See, e.g., Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 916 (8th Cir. 2000).

v. Payday Check Advance, Inc., 202 F.3d 987, 991 (7th Cir. 2000).

In Malchow v. GMI Acquisition, Inc., 2002 WL 31185865 (D. Minn. Oct. 1, 2002) (Kyle, J.), the plaintiff alleged violations of TILA's timing and estimate requirements. In reaching the determination that statutory damages would not be available for the alleged violations, Judge Kyle cited Judge Easterbrook's decision in Brown v. Payday Check Advance, Inc., 202 F.3d 987 (7th Cir. 2000), stating:

> Judge Easterbrook noted that Congress added the portion of §1640(a) under consideration to the TILA "in 1980 to curtail damages awards for picky and inconsequential formal errors." Brown, 202 F.3d at 991 (citing the Truth in Lending Simplification and Reform Act, Pub.L. 96-221, 94 Stat. 132, 168 (1990)). He observed that "[i]t would hardly be appropriate to undo Congress' decision by reading matters of form into the substantive provisions for which statutory damages are authorized." *Id.* This Court finds Judge Easterbrook's reasoning persuasive. Applying that analysis to the facts of this case, the Court concludes that statutory damages are not available for the TILA violations Malchow has alleged. Having failed to state a cause of action for which relief can be granted, the Court will dismiss the TILA claim with prejudice.

2002 WL 31185865 at *4.

Although the Amended Complaint alleges entitlement to "actual damages under the Truth in Lending Act", (see Amended Complaint, Prayer for Relief, at ¶ (f)), it is clear that Plaintiff has no actual damages relating to his claim that: (a) he was not given a separate, earlier TIL form, or (b) the TIL disclosures in the RIC should have been labeled as estimates. In order to recover actual damages under the TILA, a plaintiff must "show that damages were sustained as a result of the failure to properly disclose, i.e., that he or she would have gotten credit on more favorable terms but for the violation . . .." McCoy v. Salem Mortgage Co., 74 F.R.D. 8, 12 (E.D. Mich. 1976). See also Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915 (8th Cir. 2000) (plaintiff must prove that had proper disclosure been given he would have been able to obtained a lower price); Rockey v. Courtesy

Motors, Inc., 199 F.R.D. 578 (W.D. Mich. 2001) (same); Haun v. Don Mealy Imports, Inc., 285 F.Supp.2d 1297, 1303 (M.D. Fla. 2003) (claim of actual damages is properly dismissed where plaintiff fails to establish what damages were sustained "*as a result of* the failure" to comply") (emphasis in original). Here, Plaintiff had no intention of looking elsewhere for financing. Moreover, Fairlane Credit approved financing on the credit terms that were disclosed on the RIC that Plaintiff executed. Plaintiff did not pay anything in addition to the amounts that were disclosed on the RIC. Finally, although Plaintiff alleged actual damages, he does not know what damages he claims to have sustained as a proximate result of the alleged TILA violations and does not have any reason to believe that he could have obtained better financing terms elsewhere. (See Dep. Lieske at p. 151.)

## V. CONCLUSION

Morries is entitled to summary judgment on Plaintiff's federal claims under the TILA. Morries did not violate the "timing" or "estimates" requirements of the TILA or Regulation Z. Moreover, even assuming a violation occurred, a violation of the statutes and regulations at issue do not give rise to an award of statutory damages under 15 U.S.C. §1640(a)(2)(B) and Plaintiff has no actual damages. Because Plaintiff cannot establish entitlement to statutory damages and has no actual damages, Plaintiff's federal claims under the TILA fail. Summary judgment is appropriate.

Dated: 5/26/04

Respectfully submitted,

**JOHNSON • PROVO-PETERSEN, LLP**

Gregory J. Johnson (#202678)
332 Minnesota Street
First National Bank Building
Suite West 975
St. Paul, MN 55101
(651) 227-2534