United States District Court, N.D. Illinois, Eastern Division.

Charmira BURNS, Plaintiff,
v.
ELMHURST AUTO MALL, INC., d/b/a Elmhurst Kia, Defendant.

No. 00 C 5732.

May 16, 2001.

MEMORANDUM OPINION AND ORDER

ANDERSEN, District J.

***1** After failing to obtain financing for a vehicle purchased by Charmira Burns (Burns), Elmhurst Auto Mall, Inc. ("Elmhurst") repossessed the vehicle. In response, Burns filed a four Count Complaint. In her Complaint, Burns alleges: a violation of the Equal Credit Opportunity Act (Count I), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II), a violation of Section 9-503 of the Uniform Commercial Code (Count III), and a violation of the Truth in Lending Act (Count IV). Pursuant to Federal Rule of Civil Procedure 12(b)(6) defendant Elmhurst Auto Mall, Inc. has brought a Motion to Dismiss Counts I, III, and IV of the Complaint. For the following reasons, the motion to dismiss is granted in part and denied in part.

BACKGROUND

For the purposes of this motion the following facts are taken as true. On March 17, 2000, Burns went to Elmhurst and decided to purchase a red Kia Sephia. At that time, Burns gave a $500 cash down payment and entered into a Retail Installment Contract ("RIC") and a Consent Rider For Inability To Finance ("Rider"). Pursuant to these agreements, Burns agreed that in the event that Elmhurst was unable to assign its rights, title and interest in the RIC to a sales finance agency, Burns was to return the vehicle to Elmhurst's place of business within two days of such notice, and Elmhurst was to return all of Burns' deposits. The Rider did not indicate that the dealership or creditor must notify her of a failure to obtain financing within a specific number of days.

Following the signing of the RIC, Burns claims that Elmhurst, through its employee, represented to her that financing for her purchase had been obtained and that she owned the car. Unbeknownst to Burns, financing had not yet been obtained for her purchase of the vehicle. Elmhurst, allegedly repossessed the vehicle before April 17, 2000, the date the first payment was due, and did not return any of Burns' down payment or personal belongings that were in the vehicle. Elmhurst never notified Burns in writing that her application for financing had been denied. In addition, Elmhurst never notified Burns in writing as to the reasons why her application for financing had been denied.

STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests whether the plaintiff has stated a claim, not whether the plaintiff will prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). In deciding a motion to dismiss, the court must assume all facts in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff. *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 648 (7th Cir.1997). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

DISCUSSION

*I. Count I: The Alleged Violation of the Equal Credit Opportunity Act*

***2** Burns alleges in Count I that Elmhurst violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., by failing to comply with the written notification requirements provided for therein. The ECOA entitles applicants to written notification of denial of credit and a statement of the reasons of such actions. See 15 U.S.C. § 1691(d)(2). Burns alleges that she did not receive a written notice from Elmhurst despite the rejection of her credit application, nor did she receive the reasons for the decision.

"Any person who regularly arranges for the extension, renewal, or continuation of credit" is charged with issuing a statement to applicants explaining why credit was denied. 15 U.S.C. § 1691a(e). Elmhurst Auto Mall regularly refers applicants to creditors and selects creditors to whom

SCANNED
JUN 01 2004
U.S. DISTRICT COURT ST. PAUL

U.S. DISTRICT COURT ST PAUL
JUN 01 2004
SCANNED

EXHIBIT C

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

credit applications can be made. Thus, Elmhurst is included in the definition of creditor found in ECOA. However, no provision of ECOA requires a creditor who does not participate in the credit decision to separately report to the applicant.

The ECOA states that "where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed." 15 U.S.C. § 1691(d)(4). This section foresees that multiple entities may be involved, but only requires one notification to the applicant. Thus, if only one credit agency is used and the credit agency, not the automobile dealer, notifies the applicant in writing and states the reasons for the denial, the ECOA reporting requirement is met.

While Burns received several credit denial letters, it is unclear who sent the letters, when she received them and whether the letters stated the reasons as to why she was denied credit. At this stage of the litigation, it is unclear whether the credit denial letters comply with the requirements of the ECOA. However, plaintiff alleges that she was not properly notified and that the reporting requirements of the ECOA were not met. Therefore, Elmhurst's motion to dismiss Count I is denied.

II. *Count III: The Alleged Violation of Section 9-503 of the Uniform Commercial Code*

Count III alleges a violation of section 9-503 of the Uniform Commercial Code ("UCC"). Pursuant to that provision, a secured party has the right to take possession of the collateral upon default unless otherwise agreed. See 810 ILCS 5/9-503. Burns contends that she was not in default when Elmhurst engaged in self-help repossession. Thus, Burns argues, Elmhurst was not entitled to repossess her vehicle. This claim is dismissed because Elmhurst was the owner of the vehicle and had a contractual right to possess the vehicle because the contract was canceled. Further, Burns admits that she was not in default, so she cannot recover under section 9-503 of the UCC.

*3 According to the contract signed by Burns, Elmhurst could cancel the contract if financing could not be obtained. Once the credit application was rejected, Elmhurst had a contractually derived right to cancel the contract. At this point, Burns no longer had any legal interest in the vehicle. Burns does not argue that the contractual provision was invalid. Thus, Elmhurst's right to the vehicle and its ownership of the vehicle is undisputed. Elmhurst was not exercising a creditor's right to repossess a vehicle that secured a debt; Elmhurst was only repossessing its own vehicle. Therefore, Count III is dismissed.

III. *Count IV: The Alleged Violation of the Truth in Lending Act*

In Count IV, Burns alleges that Elmhurst represented to her that financing had been obtained when in fact it had not, thereby violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602 et seq. Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit practices." 15 U.S.C. § 1601(a); *Brown v. Marquette Sav. & Loan Ass'n.*, 686 f.2d 608, 612 (7th Cir.1982). Creditors must clearly and accurately reveal to consumers the cost of credit, including all finance charges. 15 U.S.C. § 1605, 1638, 1632; 12 C.F.R. § 226.18 (1995). The stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold. *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973). The disclosures made prior to the consummation of a credit transaction must accurately reflect the cost of the transaction. 15 U.S.C. §§ 1601, 1638; 12 C.F.R. § 226.17(b); *Jasper v. New Rogers Pontiac, Inc.*, No. 99 C 5195, 1999 WL 1024522 (N.D.Ill. Nov. 5, 1999).

Burns entered into a binding contract with Elmhurst. A condition subsequent was used to cancel the contract. This set of facts does not undermine the validity of the TILA disclosures. Accurate disclosures do not become violations because they are rendered inaccurate by subsequent events. "If information disclosed in accordance with [TILA] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." 15 U.S.C. § 1634. Since the disclosure was accurate when the contract was completed, the lack of available financing at the rate disclosed does not render the disclosures actionable. Thus, Burns fails to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

state a claim under TILA, and Count IV is dismissed.

CONCLUSION

For the foregoing reasons, Elmhurst's motion to dismiss is GRANTED in part and DENIED in part. Defendant Elmhurst's motion to dismiss Count III and Count IV is GRANTED. Defendant Elmhurst's motion to dismiss Count I is DENIED.

2001 WL 521840 (N.D.Ill.), 45 UCC Rep.Serv.2d 247

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jon P. COLLINS and Anita S. Collins, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
RAY SKILLMAN OLDS-GMC TRUCK, INC., and General Motors Acceptance Corporation, Defendants.

No. IP 00-1281-C-T/K.

Dec. 3, 2001.

Clifford W. Shepard, Indianapolis, IN, for Plaintiff.

Alan S. Brown, Locke Reynolds LLP, William N. Ivers, Stewart & Irwin, John C. Trimble, Lewis & Wagner, Indianapolis, IN, for Defendant.

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [FN1]

FN1. Though this Entry is a matter of public record and is being made available to the public on the court's web site, it is not intended for commercial publication either electronically or in paper form. The reason for this caveat is to avoid adding to the research burden faced by litigants and courts. Under the law of the case doctrine, the ruling or rulings in this Entry will govern the case presently before this court. *See, e.g., Trs. of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Pyramid Elec.*, 223 F.3d 459, 468 n. 4 (7th Cir.2000); *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995). However, a district judge's decision has no precedential authority and, therefore, is not binding on other courts, on other judges in this district, or even on other cases before the same judge. *See, e.g., Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir.1998) ("a district court's decision does not have precedential authority"); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir.1998) ( "district court opinions are of little or no authoritative value"); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 571 (7th Cir.1987) ("A single district court decision ... has little precedential effect. It is not binding on the circuit, or even on other district judges in the same district."). Consequently, though this Entry correctly disposes of the legal issues addressed, this court does not consider the discussion to be sufficiently novel or instructive to justify commercial publication of the Entry or the subsequent citation of it in other proceedings.

JOHN DANIEL TINDER, Judge.

*1 Plaintiffs, Jon P. Collins and Anita S. Collins, sued Defendants, Ray Skillman Olds-GMC Truck, Inc., and General Motors Acceptance Corporation ("GMAC") for damages alleging violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and Regulation B, as well as the Indiana Credit Services Organization Act ("CSOA"), Indiana Code § 24-5-15-1 *et seq.* in connection with Retail Installment Contract for the purchase of a motor vehicle. Defendant Ray Skillman filed a motion for summary judgment, and Plaintiffs filed a cross-motion for summary judgment. Plaintiffs have abandoned their claims under the ECOA, so the pending motions address only the claims under TILA and the CSOA. This entry constitutes the court's decision on these motions.

Factual Background

On or about August 16, 1999, Plaintiffs, Jon P. Collins and Anita S. Collins, purchased a motor vehicle from Defendant, Ray Skillman Olds-GMC Truck, Inc. ("Ray Skillman"). On that date, the Collinses executed a Motor Vehicle Retail Installment Contract ("Contract") for the purchase of the vehicle. Under the Contract's terms, they agreed to finance $26,585.70 for the purchase of the vehicle. They were initially offered an annual interest rate of 6.9 percent. Knowing that they could get a lower interest rate elsewhere, they rejected that offer and subsequently were offered and accepted an annual interest rate of 3.9 percent.

The Contract was presented in quadruplicate form to the Collinses for their review, approval and signature. At the time it was presented, the Contract contained the disclosures of which the substance and form are in the manner required by TILA and Regulation Z. One copy of the Contract was designated buyer's copy.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The Collinses did not ask for the buyer's copy or any other copy of the Contract to keep prior to signing the Contract. They were not offered to retain a copy before they signed it. The buyer's copy of the Contract was not torn off and handed to them before they signed it.

Robert Griffith, one of Ray Skillman's Business Managers, testified that if a customer were to request a copy of the Motor Vehicle Retail Installment Contract to take away with him or her prior to signing or if a customer simply attempted to leave with a copy of the contract before signing it, he or she could do so. He also testified, however, that in his experience this has never happened.

Ray Skillman applied for financing on behalf of the Collinses with GMAC. Because their credit had not yet been approved, Dale Everett, the Ray Skillman Business Manager who dealt with the Collinses, obtained their permission to keep their copy of the Contract until credit approval. Their credit was approved shortly thereafter, and they received their copy of the Contract in the mail. GMAC paid Ray Skillman for the assignment of the Contract.

The Collinses have admitted that they have not suffered any actual damages as a result of the alleged TILA violation.

*2 On September 21, 2001, the court, pursuant to the stipulation of Plaintiffs and GMAC, entered an Order Of Dismissal With Prejudice, dismissing with prejudice the cause against GMAC. Thus, Ray Skillman is the only Defendant to Plaintiffs' claims at this time.

On November 19, 2001, the court heard oral argument on the summary judgment motions. Plaintiffs indicated that they are no longer pursuing their claim under ECOA, and they have admitted that they are no longer pursuing that claim. (Pls.' Resp. Ray Skillman's Requests for Admissions No. 2.)

Discussion

Both Ray Skillman and the Collinses move for summary judgment on all claims. Summary judgment should be granted only where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir.2001). "With cross-motions, [the] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir.2001).

A. Claim Pursuant to TILA And Regulation Z

The Collinses claim that Ray Skillman violated TILA and implementing Regulation Z. The court finds that summary judgment motion should be granted Ray Skillman because the Collinses have no right to recover under TILA as statutory damages are unavailable for the violation alleged and they have admitted to having no actual damages. Even if the Collinses could prove actual damages, Ray Skillman would be entitled to summary judgment because they cannot prove the alleged violation.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a); *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1070 (7th Cir.2001). Because TILA is a remedial statute, it should be construed liberally in favor of the consumer. *See Ellis v. Gen. Motors Accept. Corp.*, 160 F.3d 703, 707 (11th Cir.1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3rd Cir.1998). TILA and Regulation Z, promulgated by the Federal Reserve Board to implement TILA, require creditors to make certain disclosures in connection with consumer credit transactions. 15 U.S.C. § 1638; 12 C.F.R. § 226.18. Both Regulation Z and the Federal Reserve Board's official commentary to Regulation Z are accorded deference. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980) (explaining that the Court "has often repeated the general proposition that considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration.... This traditional acquiescence in administrative expertise is particularly apt under TILA, because the Federal Reserve Board has played a pivotal role in setting [the statutory] machinery in motion ....") (internal quotations omitted); *Clay v. Johnson*, 264 F.3d 744, 748 (7th Cir.2001) (stating that the Federal Reserve Board's official staff commentary to Regulation Z is "dispositive" unless "demonstrably irrational") (citing

*Milhollin,* 444 U.S. at 565); *Szumny,* 246 F.3d at 1069 (stating "Because the Federal Reserve Board is the agency charged with TILA's administration, we accord its regulation deference" and describing the official commentary to Regulation Z as an "authoritative interpretation" of TILA and Regulation Z).

***3** Plaintiffs claim that Ray Skillman failed to comply with the timing and form of disclosure requirements of TILA and Regulation Z. Thus, they allege a violation of 15 U.S.C. § 1638(b)(1) and 12 C.F.R. § 226.17(a) and (b). Ray Skillman contends it did not violate TILA.

1. No Actual Damages and No Entitlement to Statutory Damages

The Collinses have admitted that they suffered no actual damages as a result of the alleged violation, so if they have a claim for damages then it must be based on statutory damages. The Seventh Circuit's decision in *Brown v. Payday Check Advances,* 202 F.3d 987 (7th Cir.), *cert. denied,* 531 U.S. 820 (2000), compels the conclusion that no statutory damages are available for the alleged TILA violation in this case. The *Brown* plaintiffs alleged that the defendants violated § 1632(a), § 1638(a)(8) and § 1638(b)(1) and sought only statutory damages under § 1640(a)(2). *Id.* at 990-91. The Seventh Circuit said that § 1640(a) statutory damages are available in connection with disclosures under § 1638 "*only* for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 1638(a) of this title...." *Id.* at 991 (emphasis in *Brown* ). The court concluded that the word "only" "confines statutory damages to a closed list." *Id.* Because the violations alleged by the plaintiffs did not fall within that list, the Seventh Circuit held the plaintiffs were not entitled to statutory damages. *Id.* at 991-92. The court rejected the plaintiffs' attempts to use the "back door" theory that lack of compliance with §§ 1632(a), 1632(a)(8) and 1638(b)(1) is also a violation of § 1638(a)(3), § 1638(a)(4), and so on, for which statutory damages are available. *Id.* at 991. The court said: "Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a)." *Id.* Thus, *Brown* holds that statutory damages are available "only for violations of" the subsections specifically enumerated in § 1640(a). *Id.* at 991-92.

The Collinses contend that the *Brown* court erred in its statutory construction of TILA's damages provision and that the reasoning in *Lozada v. Dale Baker Oldsmobile, Inc.,* 145 F.Supp.2d 878, 887-89 (W.D.Mich.2001) (holding that statutory damages are available under § 1640(a)(2) for violations of § 1638(b)(1)), is more complete and sound. *Brown* is controlling precedent and this court is not in a position to second guess the Seventh Circuit's decision. Arguments that the *Brown* court erred must be made at the court of appeals rather than before the district court. The Collinses maintain that the alleged violation of TILA is under § 1638(b), which governs the timing and form of disclosures, and is not itself a disclosure. This reasoning was adopted by the *Lozada* court, *see* 145 F.Supp.2d at 888, but nevertheless is at odds with *Brown.* The Collinses also attempt to show an entitlement to statutory damages under a back door theory that the alleged failure to make timely written disclosures was not a disclosure at all, but such an argument was plainly rejected in *Brown.* Neither *Jackson v. Check 'N Go of Ill., Inc.,* 193 F.R .D. 544 (N.D.Ill.2000), nor *Donnelly v. Illini Cash Advance, Inc.,* No. 00 C094, 2000 WL 1161076 (N.D.Ill. Aug. 16, 2000), lend support to Plaintiffs' claim that defendants have been unsuccessful in extending *Brown* to cases like this. In those cases the plaintiffs alleged a violation of a subsection specifically enumerated under § 1640(a)(2), namely § 1638(a)(9). *Jackson,* 193 F.R.D. at 548; *Donnelly,* 2000 WL 1161076, at *4-5.

*4 At least three other district courts have held that actual damages are the only available remedy for a violation of TILA's timing of disclosure requirement. *Tripp v. Charlie Falk Auto,* No. CIV. 3:00CV512, 2001 WL 1105132, at *6 (E.D.Va. Aug. 22, 2001) (granting summary judgment on plaintiff's claim that car dealer violated TILA's time of disclosures requirement); *Crowe v. Joliet Dodge & Union Acceptance Corp.,* No. 00 C 8131, 2001 WL 811655, at *4 (N.D.Ill. July 18, 2001) (dismissing plaintiff's claim for statutory damages for defendant's alleged failure to give disclosures in a form plaintiff could keep prior to consummation of the transaction in violation of § 1638(b)(1)); *Nigh v. Koons Buick Pontiac GMC, Inc.,* 143 F.Supp.2d 535, 549 (E.D.Va.2001) ("Notwithstanding the timeliness of Koons' disclosures to Nigh, Koons is also entitled to summary judgment on the timing issue because Nigh cannot demonstrate actual damages. The only remedy for failing to timely make disclosures is actual damages."). These district court decisions are consonant with the Seventh Circuit's holding in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*Brown*. Plaintiffs argue that *Nigh's* discussion of the availability of statutory damages is dicta as the court found the creditor did not violate TILA's timing of disclosure provisions. But the court's reasoning is an alternative ground for its holding rather than dicta. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) (stating "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum"); *cf. Wilder v. Apfel*, 153 F.3d 799, 803-04 (7th Cir.1998) (referring to "dicta" as "integral elements of the analysis underlying the decision" and the "essentials" of a decision).

The court concludes that statutory damages are available "only for violations of" the subsections specifically enumerated in § 1640(a). Subsection (b)(1) of § 1638 is not specifically enumerated in § 1640(a). Thus, the court holds that statutory damages are unavailable for violations of TILA's timing and form of disclosure requirements under § 1638(b)(1) and Regulation Z, the violations alleged in this case. Because the Collinses are not entitled to statutory damages under § 1640(a) and they have admitted to having no actual damages, they cannot prevail on their TILA claim and Ray Skillman is entitled to summary judgment on that claim.

2. Refusal to Disclose in Retainable Form Prior to Consummation Not Proved

Even if the Collinses could prove actual damages or were entitled to statutory damages under TILA, summary judgment in favor of Ray Skillman would be appropriate because the Collinses cannot show that Ray Skillman violated TILA and Regulation Z. The parties agree and the court finds that the Collinses became contractually obligated when they signed the Contract. Thus, their signing of the Contract constitutes consummation of the transaction. There is no dispute that the Contract contained all required TILA disclosures before the Collinses signed it. The sole issue is whether Ray Skillman complied with the timing and form of disclosure requirements.

***5** Regulation Z which governs the form and timing of the disclosures provides in pertinent part:

> (a) Form of disclosures.
> (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep....
> (b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction.

12 C.F.R. § 226.17(a) and (b). Plaintiffs claim that Ray Skillman failed to comply with these requirements because even though it showed them the TILA disclosures, it did not hand them a written copy of the disclosures separate from the copy of the Contract they were to sign prior to their signing the Contract.

In arguing that a creditor is required to give the consumer a physical copy in writing of the TILA disclosures, the Collinses rely heavily on *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir.2000). In *Polk*, the car dealership explained the credit terms to the buyer but did not disclose the terms in writing in a form he could take with him. After the parties consummated the credit transaction for the sale of a truck, the dealership gave the buyer copies of the retail installment sales contracts which contained the credit terms. *Polk*, 221 F.3d at 691. The buyer alleged the dealership violated TILA and Regulation Z by not disclosing the credit terms prior to consummation of the transaction. *Id.* at 692. The district court read subpart (a) independently of subpart (b) of § 226.17 and held that TILA and Regulation Z were satisfied where the dealership made the required disclosures in some form before consummation and later made the disclosures in writing in a form the buyer could keep. *Id.* The Fourth Circuit found that the district court erred and held that the dealership was required to make the TILA disclosures to the buyer in writing in a form that he could keep before consummation of the credit transaction. *Id.* The grant of summary judgment to the dealership was reversed and the case remanded for judgment in favor of the buyer. *Id.*

Some district courts have interpreted *Polk* as requiring that a creditor give a copy of the TILA disclosures to the consumer in a form he or she can keep prior to consummation of the transaction. *See, e.g., Walters v. First State Bank*, 134 F.Supp.2d 778, 781-82 (W.D.Va.2001) (relying on *Polk* and holding bank violated Regulation Z where consumer was not given copy of credit contract which contained TILA disclosures until after she signed it); *Holley v. Gurnee Volkswagen & Oldsmobile*, No. 00 C 5316, 2001 WL 243191, at *3 (N.D.Ill. Jan. 4, 2001) (citing *Polk* and stating "car dealers must give customers a copy of the RIC they can keep before they sign it"); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 337 (W.D.Mich.2000) (stating that courts "have uniformly held that pre-consummation delivery of a copy of the disclosures is necessary to meet the requirements of the regulations" and citing *Polk* ). Even if this is a correct interpretation of *Polk*, where the credit

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

contract contains the required disclosures, nothing in *Polk,* nor for that matter TILA or Regulation Z, requires a creditor to provide a separate copy of the contract to the consumer before he or she signs it. That is, neither *Polk* nor TILA or Regulation Z requires a creditor to separate the consumer's copy of the credit contract from the other copies of the contract and give the copy to the consumer before the consumer signs the contract. Such a requirement was rejected very recently in *Diaz v. Joe Rizza Ford, Inc.*, No. 00 C 7082, 2001 WL 1360315 (N.D.Ill. Nov. 2, 2001).

***6** The evidence in *Diaz* established that the defendant car dealer used a three copy-form of the retail installment contract which contained the TILA disclosures. The terms were negotiated, then the form was filled out, and the customer had the opportunity to review the form and sign it. The top copy was then separated from the other copies and given to the customer. The plaintiff argued that this violated TILA and Regulation Z because she was not given a copy of the disclosures in a form she could keep prior to consummation. *Diaz,* 2001 WL 1360315, at *1. The court understood Regulation Z to require the car dealer to give the customer the TILA disclosures in a form she could keep before consummation of the transaction and concluded that Regulation Z was not violated. *Id.* The court said that the overriding purpose of TILA is to promote the informed use of credit and protect consumers from changes in credit terms, and found the plaintiff was informed and protected because she had taken her copy. *Id.* at *2. The court also found: "nothing to suggest that [the plaintiff] could have not taken away all three copies or the top copy ... without executing them, if she had so desired. And, she was in physical possession of all three copies when she signed." *Id.* According to the court, there was no "meaningful distinction between separation of the copies before or after [the plaintiff] signed." *Id.* Summary judgment was granted the defendant. *Id.*

*Diaz* is consistent with an interpretation of *Polk* as requiring that a creditor give a copy of the TILA disclosures to the consumer in a form he or she can keep prior to consummation of the transaction. The consumer had "her" copy of the TILA disclosures before she signed the contract, and she had an opportunity to review the terms before consummating the transaction. And, as the court in *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F.Supp.2d 535 (E.D.Va.2001), explains, *Polk* does not state that the retail installment contract cannot be the document that the consumer may keep. *Id.* at 548-49. Indeed, the Official Staff Commentary to Regulation Z provides that the disclosures may be made on the same document as the credit contract, provided they are segregated from the rest of the document. Official Staff Commentary on Regulation Z, 12 C.F.R. Pt. 226, Supp I, § 226.17 at 390.

Furthermore, the *Nigh* court is correct: *Polk* is directed to the timing of the disclosures rather than the form of the disclosures. *Nigh,* 143 F.Supp.2d at 548 ("The *Polk* court's principal holding was that a(sic) auto dealership (or other creditor) cannot give a buyer/debtor a copy of his credit terms after the consummation of a transaction; the dealer must provide a detailed disclosure of the credit terms in writing *before* consummation of the transaction."). Nothing in *Polk* addresses the meaning of the language "in a form that the consumer may keep" in Regulation Z. *Nigh,* however, does address this issue.

***7** In *Nigh,* the plaintiff-consumer claimed the defendant violated TILA and Regulation Z by failing to make the disclosures before consummation of the transaction. The plaintiff had visited the car dealership on three separate occasions in connection with the purchase of a truck. On the first visit, a representative of the dealer discussed the credit terms with him, then filled in the credit terms on a Retail Installment Sales Contract ("RISC") and had the consumer sign the RISC. The consumer returned on two occasions when the down payment was increased and an erroneous charge was removed from the RISC. The consumer signed the RISC on both occasions. *Nigh,* 143 F.Supp.2d at 539. The plaintiff claimed the defendant violated TILA and Regulation Z because it did not provide him with a copy of the credit terms before he signed the RISCs. *Id.* He also argued that contemporaneous disclosure did not serve TILA's purpose as he could not "shop" around for a better interest rate. *Id.* at 548.

The court held that giving the consumer the disclosures on the RISC before the consumer signs it complies with Regulation Z's timing requirement. *Id.* at 548-49. The court explained that the RISC contained the required disclosures, the plaintiff had the opportunity to read the RISC before signing it, and consummation did not occur until he signed the RISC. *Id.* The court said that the plaintiff could have chosen not to sign the RISC and could have taken it with him to shop for a better interest rate. *Id.* The court also held that providing the disclosures on the RISC complies with Regulation Z's form of disclosure

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

requirement. *Id.* The court rejected the claim that simply showing a consumer the disclosures on the credit contract prior to signature violates TILA and Regulation Z's timing requirements. *Nigh,* 143 F.Supp.2d at 549 & n. 3. It also rejected the argument that a creditor must provide the consumer a separate copy of the TILA disclosures before consummation of the transaction. *Id.*

Thus, *Nigh* holds that a creditor complies with the timing and form requirements of TILA and Regulation Z by providing the consumer with the required disclosures on the contract that he or she is to sign before the consumer signs the contract. *Nigh* has been followed and cited with approval in subsequent decisions. The court in *Tripp v. Charlie Falk Auto,* No. CIV. 3:00CV512, 2001 WL 1105132, at *6 (E.D.Va. Aug. 22, 2001), relied on *Nigh* and held that providing consumers the TILA disclosures on the credit contract and giving them the opportunity to review them before signing satisfies TILA and Regulation Z. The court in *Crowe v. Joliet Dodge & Union Acceptance Corp.,* No. 00 C 8131, 2001 WL 811655, at *3 (N.D.Ill. July 18, 2001), also found *Nigh's* reasoning persuasive. The court, however, denied the defendant's motion to dismiss, citing the different standards of review between the motion to dismiss in that case and the summary judgment motion in *Nigh.*

*8 Plaintiffs cite *Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932 (W.D.Va.2000), for the proposition that disclosure contemporaneous with consummation of the transaction is insufficient under TILA and Regulation Z. *Compton* does not so hold. The evidence established that the buyer signed the credit contract, consummating the transaction, before she signed the form which the car dealer contended contained the required disclosure. *Id.* at 936. In addition, the form contained an inaccurate disclosure in violation of TILA. *Id.* Moreover, the Federal Reserve Board's official commentary to Regulation Z states that the disclosures need not be made by any particular time before consummation. Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp I, § 226.17 at 392. Thus, a disclosure made only a minute before consummation complies with the timing requirements.

This court agrees that Regulation Z requires a creditor to give the consumer the TILA disclosures in a form he or she can keep before consummation of the transaction. However, like the plaintiffs in *Diaz* and *Nigh,* the Collinses have not shown that Ray Skillman failed to comply with this requirement. Ray Skillman provided the Collinses the Contract containing the TILA disclosures for their review before signing. The Contract, indisputably, was in writing, and was in quadruplicate form, with one copy designated as the buyer's copy. Thus, the TILA disclosures were in writing and, unlike Plaintiff's counsel's example at oral argument of a poster on the wall, were in a form capable of being kept or taken away. Furthermore, the Collinses have not come forward with any evidence tending to show that the TILA disclosures were not made in a form that they could keep. [FN2] To state it differently, there is no evidence that they could not have kept or taken away with them a copy of the Contract containing the TILA disclosures before they signed it. In fact, the undisputed evidence is that if they had asked for a copy to take with them or simply attempted to leave with a copy before signing, they could have done so. Because the court agrees that there is no "meaningful distinction" between separation of a consumer's copy from the other copies of a credit contract containing the TILA disclosures before or after signature, Plaintiffs' contention that Ray Skillman was required to provide them with a written copy of the disclosures separate from the copy of the Contract they were to sign prior to their signing is rejected. Moreover, TILA's purpose was fulfilled in this case as the Collinses were informed about available credit elsewhere and able to negotiate an interest rate lower than that initially offered them.

FN2. It is noted that the evidence establishes that the Collinses did not keep a copy of the Contract, but rather gave Ray Skillman their permission to keep their copy pending credit approval and received their copy in the mail a few days later. None of these facts, however, create a genuine issue as to whether the TILA disclosures were in a form that the Collinses could have kept had they chosen to do so.

The court finds that the Collinses cannot establish that Ray Skillman violated the timing and form of disclosure requirements of TILA and Regulation Z. This is another reason why Ray Skillman should be granted summary judgment on the TILA claim.

B. Claim Under CSOA

*9 Because the Collinses are no longer pursuing their claim under the ECOA and Ray Skillman is entitled to summary judgment on their claim under TILA, the court in its discretion declines to exercise

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

supplemental jurisdiction over the claim under the CSOA against Ray Skillman. 28 U.S.C. § 1367(c)(3). The CSOA claim is DISMISSED WITHOUT PREJUDICE to refiling in the appropriate state forum within thirty (30) days of this date.

Conclusion

For the foregoing reasons, Ray Skillman's motion for summary judgment should be GRANTED as to the claim under TILA, Plaintiffs' motion for summary judgment should be DENIED, and the court declines to exercise supplemental jurisdiction over the claim under the CSOA which should be DISMISSED WITHOUT PREJUDICE to refiling in the appropriate state forum within thirty (30) days of this date.

Plaintiffs' Motion For Class Certification is DENIED. Since the Collinses cannot prove that Ray Skillman failed to make the TILA disclosures in a form that they could keep before consummation of the transaction, they cannot establish that they are proper representatives of the class for which certification is sought.

Final judgment shall be entered accordingly.

ALL OF WHICH IS ORDERED this 3rd day of December 2001.

2001 WL 1711466 (S.D.Ind.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Kevin CROWE Plaintiff,
v.
Joliet DODGE and Union Acceptance Corp. Defendants.

No. 00 C 8131.

July 18, 2001.

MEMORANDUM AND OPINION

HIBBLER, District J.

*1 Kevin Crowe ("Plaintiff") filed his Third Amended Complaint against Joliet Dodge ("Defendant Joliet Dodge") and Union Acceptance Corporation ("Defendant UAC") arising out of Plaintiff's purchase of an automobile through a financing contract. Plaintiff alleges violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1602 *et seq.* (Counts I(1) and C) [FN1]; the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.* (Counts II and D); rejection or revocation, 810 ILCS 5/2- 721, 5/ 2-601 *et seq.* (Counts F, G and O); breach of implied warranty of merchantability under the Magnuson-Moss Act, 15 U.S.C § 2310(d) (Count H); violation of the Federal Odometer Act, specifically the disclosure requirements, 49 U.S.C. § 32101 *et seq* . (Counts I(I) and P); violation of the Illinois Odometer Act, 625 ILCS 5/3-112.1(e) (Count J); violation of the Credit Services Organizations Act ("CSOA"), 815 ILCS 605/1 *et seq.* (Count K); common law fraud under Illinois law (Count L); ratification and acceptance of illegal conduct and/or fraud (Count M); and violation of the Illinois Sales Finance Agency Act ("ISFAA"), 205 ILCS 660 *et seq.* (Count N). Further, with his complaint, Plaintiff filed a petition for injunctive relief and declaratory judgment (doc.# 26). Defendants filed the present motion to dismiss all counts and the petition, pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 32). For the reasons noted herein, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's petition is GRANTED in part and DENIED in part.

FN1. The headings for the sixteen causes of action in the Plaintiff's complaint, the third complaint filed in this matter, switch between roman numerals and letters and skip a fifth claim, i.e. what would have been Count V or E. Needless to say, such sloppiness confuses an already poorly drafted complaint.

MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. This Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993). Because Plaintiff's allegations are taken as true, Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Hartford Fire Insurance Co. v. California,* 509 U.S. 764 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994). This Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993). However, this Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago,* 777 F.Supp. 1437, 1440 (N.D.Ill.1991).

*2 In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this court's review is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes. Fed.R.Civ.P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993).

FACTS AND BACKGROUND

On September 6, 2000, Plaintiff purchased a 1997

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Chevrolet Blazer from Defendant Joliet Dodge, pursuant to a financing credit agreement, i.e. the Retail Installment Contract ("RIC"). Defendant Joliet Dodge allegedly told Plaintiff the 14.95% finance rate was the best rate Defendant could obtain for Plaintiff for the vehicle. Plaintiff further alleges Defendant sold a limited warranty to Plaintiff with inconsistent representations and failed to give Plaintiff his written Truth in Lending disclosures in a timely manner. Defendant Joliet Dodge later transferred Plaintiff's consumer credit contract to Defendant UAC, a sales finance agency.

As part of the sale, Defendant Joliet Dodge provided Plaintiff with an odometer statement, which stated the vehicle's mileage. However, Defendant Joliet Dodge allegedly failed to disclose to Plaintiff the vehicle's certificate of title signed by the previous owner and did not ask Plaintiff to sign the odometer statement on the back of the title. Instead, Plaintiff alleges Defendant asked him to sign a power of attorney to complete the sale; later, Defendant Joliet Dodge allegedly obtained a new certificate of title for Plaintiff.

On September 7, Plaintiff discovered the vehicle's mileage figure is allegedly incorrect, with the actual mileage of the car being higher due to a defective odometer. Plaintiff informed Defendant Joliet Dodge of the error and malfunction on September 9 and attempted to reject and revoke acceptance of the vehicle, but Defendant refused to recognize this rejection or revocation. Soon after, Defendant Joliet Dodge allegedly explained to Plaintiff if a General Motors car dealer confirmed the odometer did not spin, then Defendant would honor Plaintiff's rejection or revocation of acceptance. Plaintiff complied with Defendant's offer and confirmed the odometer was broken; however, Defendant allegedly refused to take the car back, to cancel the RIC or to refund Plaintiff all of his money. Plaintiff wrote to Defendant UAC and explained the situation, but Defendant UAC failed to respond and react to Plaintiff's satisfaction. In response, Plaintiff filed the present complaint.

ANALYSIS

Truth-in-Lending Act (Counts I(1) and C)

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Walker v. Wallace Auto Sales Inc.*, 155 F.3d 927, 932 (7th Cir.1998). In keeping with this purpose, TILA requires creditors to clearly disclose finance terms under the credit transaction. *See* 15 U.S.C. § 1638(a). Despite its broad purpose of protecting consumers from being misled about the cost of credit, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir.1997).

*3 Under its authority "to elaborate and expand the legal framework governing commerce in credit" and pursuant to TILA, the Federal Reserve Board implemented governing regulations, commonly known as Regulation Z. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980); 12 C.F.R. § 226 (1999). These regulations mandate the disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the finance charge, the annual percentage rate, total of payments, and total sale price. *See* 12 C.F.R. § 226.17(a), 226.18(b)(d)(e)(g)(j).

In the present case, Plaintiff alleges Defendant Joliet Dodge violated TILA by failing to give Plaintiff proper disclosures in a form Plaintiff could keep prior to consummation of the transaction. Compl. ¶ 10, 24. Defendant responds it fulfilled its obligations under TILA, but even if Plaintiff can establish a technical violation, he cannot establish statutory or actual damages upon which relief may be granted.

Plaintiff's allegation pleads the bare minimum required to state a claim for a TILA violation. 16 U.S.C. § 1638(b)(1)("Form and Timing of Disclosures"); *see Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir.2000); *Polk v. Crown Auto Inc.*, 221 F.3d 691, 692 (4th Cir.2000). Defendant Joliet Dodge cites a recent case from the Eastern District of Virginia to challenge *Polk. Bradley Nigh v. Koons Buick Pontiac GMC, Inc.*, No. Civ. A. 00-1634-A, 2001 WL 432224, at *9-10 (E.D.VA. April 20, 2001). The court in *Nigh* held *Polk* does not state the RIC cannot be the document the purchaser may keep for rate comparison shopping, i.e. the RIC alone may fulfill the TILA requirements. "(G)iving a buyer the credit terms on the form that he is to sign complies with the timing requirements of the Act.... The *Polk* court's goal was to clarify the timing issue of the statute, not to clarify the form of the disclosure (e.g. in the form of the RISC to be signed as opposed to in a separate writing)." *Nigh*, 2001 WL 432224, at *9-10. While

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

this Court finds the reasoning in *Nigh* persuasive, the *Nigh* court had a motion for summary judgment before it and relied in large part upon the plaintiff's deposition testimony and other discovery. Here, the Court has before it a motion to dismiss, with a significantly different standard of review, and the Court cannot say under this limited statement of facts, if proved, that Defendant Joliet Dodge's actions and inactions would not be a violation of TILA. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claim for actual damages.

Concerning actual and statutory damages, to establish a TILA claim, Plaintiff must plead damages. *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir.2000). Defendant asserts the TILA claim should be dismissed because Plaintiff failed to plead actual damages and is ineligible for statutory damages. Plaintiff adequately alleged actual damages. Compl. ¶ 29-31, 32(a)(1), 45-48, 48(a)(1). However, Plaintiff failed to plead statutory damages. 15 U .S.C. § 1640(a)(2).

*4 Although TILA provides for both actual and statutory damages, statutory damages are limited to certain circumstances. Section 1640 contains a provision limiting recovery of statutory damages to certain types of violations. It provides:

> [I]n connection with the disclosures referred to in section 1638 of this title, a creditor shall have limited liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) [which provides for statutory damages] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title....

15 U.S.C. § 1640(a)(4). This provision has been interpreted to mean a TILA plaintiff may recover statutory damages only if the defendant violated Sections 1635, 1638(a)(2), or any other listed subsection of 1638(a). *Grant-Davis v. Toyota on Western Inc.*, No. 95 C 0043, 1995 WL 124128, at *9 (N.D.Ill.1995). The Seventh Circuit made clear the statute confines statutory damages to this closed list and Plaintiff must allege a violation which is eligible for statutory damages in order to recover. *Brown*, 202 F.3d at 991. Further, the Seventh Circuit stated explicitly plaintiffs may not use "back door" theories to wedge their inapplicable facts into § 1640(a). *Id.* "Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a)." *Id.* Here, Plaintiff has alleged a violation of § 1638(b)(1), which is not one of the enumerated statute sections eligible for statutory damages; thus, Plaintiff has not pleaded statutory damages for the TILA violation. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's prayer for statutory relief under TILA. Compl. ¶ 32(b) and ¶ 49(b).

Illinois Consumer Fraud and Deceptive Business Practices Act (Counts II and D)

In the present case, Plaintiff alleges ICFA class action claims against Defendants arising out of the RIC with Defendant Joliet Dodge and an alleged lack of TILA disclosures and individual claims against Defendants based upon these actions as well as the defective odometer.

"Unlike TILA, the ICFA 'does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation." *Greisz v. Household Bank (Illinois)*, 8 F.Supp.2d 1031, 1043 (N.D.Ill.1998) (citing *Lanier v. Associates Finance, Inc.*, 499 N.E.2d 440, 447 (Ill.1986)). To prove a violation of the ICFA, Plaintiff must allege (1) Defendant engaged in a deceptive act or practice; (2) Defendant intended that Plaintiff rely on that deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the act proximately caused damage. *Williams v. Thomas Pontiac, Inc.*, No. 99 C 882, 1999 WL 787488, at * 3 (N.D.Ill. Sept. 24, 1999) (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970-71 (7th Cir.1999)). Because TILA and Regulation Z are laws administered by the Federal Reserve Board, a "defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act." *Lanier*, 499 N.E.2d at 447.

TILA-derived claims (Complaint ¶ 35(a), 51(a))

***5** In Count II, ¶ 35(a), and Count D, ¶ 51(a), Plaintiff alleges Defendant Joliet Dodge's failure to provide him with the requisite TILA disclosures prior to the consummation of the transaction, as stated above, serves as an unfair and deceptive act under ICFA.

Defendant Joliet Dodge argues Plaintiff may not

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

recover under ICFA for an alleged TILA violation that is already addressed by both TILA and MVRISA. Defendant cites a single case to support its theory and that case is inapplicable to the present facts. *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617 (7th Cir.2000).

In *Perez,* the Seventh Circuit held the Illinois odometer fraud statute established the maximum amount that may be awarded for a vehicle's mileage, and the car buyer could not circumvent the statute to obtain a punitive award in excess of the statutory maximum, simply by joining the statutory claim with a common law fraud claim based upon the same deception. *Id.* at 624. Further, the car buyer could recover punitive damages under the common law only if the car dealer made additional misrepresentations not covered by the odometer fraud statute. *Id.* Defendant argues the holding in *Perez* prohibits Plaintiff from alleging causes of action for TILA, MVRISA and ICFA. Defendant is mistaken. The court in *Perez* stated when a statute provides for punitive awards (e.g. tripling of actual damages under the Illinois Odometer Act), a plaintiff may not bypass the legislature's intent by obtaining common law punitive damages. *Id.* "What point would the statutes serve if in the end the common law of fraud were the effective authority to award damages?" *Id.* The present matter concerns the proper pleading of causes of actions, not the correct determination of damage awards per *Perez.* Plaintiff may derive an ICFA claim from the facts surrounding its TILA claim. Thus, Defendant's objections are premature; Plaintiff eventually has to select his remedies, and if that time arrives, the holding in *Perez* will be applicable. Until then, Plaintiff may plead for relief in the alternative. Fed.R.Civ.P. 8(a). Therefore, the Court DENIES Defendants' motion to dismiss the ICFA claims derived from alleged TILA violations. Compl. ¶ 35(a), 51(a).

Defendant UAC argues Defendant Joliet Dodge's failure to show Defendant Joliet Dodge adequately complied with TILA's disclosure requirements does not automatically hold Defendant UAC liable. Under 15 U.S.C. § 1641(a), an assignee is liable for TILA violations only where the violation is apparent on the face of the documents assigned. *See Walker,* 155 F.3d at 936; *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692-93 (7th Cir.1998); *Rivera v. Grossinger Autoplex, Inc.*, No. 00 C 442, 2000 WL 796158, at *4 (N.D.Ill. June 19, 2000). "For the purposes of this section, a violation apparent on the face of the disclosure includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned ..." 15 U.S.C. § 1641(a). Defendant UAC maintains even if Defendant Joliet Dodge violated TILA by not providing Plaintiff a copy of the requisite disclosures, Defendant UAC cannot be liable because the violation was not apparent on the face of the documents Defendant Joliet Dodge assigned to it. Defendant UAC's analysis is correct. The alleged disclosure violation at issue here involves only when the TILA disclosures were made by Defendant Joliet Dodge and are not the type of disclosure violations which are "apparent on the face." *Id.* After the buyer signs a RIC and the seller/initial creditor assigns a fully executed RIC to an assignee, the assignee cannot review the "four corners" of the "document assigned" to determine if the buyer received TILA disclosures preconsummation or ascertain the number of copies of the RIC which were in the buyer's packet. *See Walker,* 155 F.3d at 936; *Taylor,* 150 F.3d at 694. Further, Plaintiff attempts to avoid the limitation on assignee under Section 1641(a) by asserting "on information and belief" that Defendant UAC had "actual knowledge" of certain "facts." From these purported facts, Plaintiff concludes Defendant UAC's knowledge of Plaintiff's alleged failure to receive timely TILA notices from Defendant Joliet Dodge. However, the inquiry under Section 1641(a) is not concerned with the assignee's "knowledge." For the assignee to be subject to ICFA liability here, the purported TILA violation must be apparent from the face of the assigned contract. *Id.; see also Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 199 (3rd Cir.2000). Plaintiff's TILA claim, i.e. the timing of the receipt of TILA disclosures, is not the type of asserted TILA violation that can satisfy this "apparent on the face" standard. Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from alleged TILA violations as they apply to Defendant UAC. Compl. ¶ 35(a), 51(a).

MVRISA-derived claims (Complaint ¶ 35(b)-(c), 51(b)-(c))

*6 In Count II, ¶ 35(b) and (c), and Count D, ¶ 51(b) and (c), Plaintiff alleges Defendants previously and presently violated the Illinois Motor Vehicle Retail Installments Sales Act (MVRISA) and therefore committed misleading and deceptive acts under ICFA. [FN2]

FN2. Plaintiff states ICFA § 2E claims against Defendant Joliet Dodge only, i.e. the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

complaint asserts no claim against Defendant UAC. (Compl.¶ 35(b); Pl.'s Resp. to Def. UAC's Mot. Dismiss at 4, n. 1.)

Section 2E of the ICFA provides that a MVRISA violation also constitutes an ICFA violation when three or more MVRISA violations, "as determined in any civil or criminal proceeding," have been committed by the violator in the same calendar year. 815 ILCS 505/2E. Based solely "on information and belief," Plaintiff alleges Defendant Joliet Dodge has such multiple convictions or violations and should thus be held liable under the fraud statute. However, the mere allegation of the single violation is insufficient.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Seventh Circuit has stated clearly that Rule 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud." *Id.* "Although the states of mind may be pleaded generally the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). Thus, Plaintiff must plead the time, place and content of the allegedly fraudulent misrepresentation, as well as the parties to that communication. *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1050 (7th Cir.1998); *see also Taylor v. Bob O'Connor Ford, Inc.*, No. 97 C 720, 2000 WL 876920, at *2 (N.D.Ill. June 29, 2000). Further, a plaintiff must plead a complaint alleging a violation of the ICFA with the same level of particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 593 (Ill.1996). In the present matter, a review of Plaintiff's third amended complaint reveals it inadequately sets forth a claim for violation of the ICFA based upon a violation of Section 2E. Plaintiff's assertion alone is insufficient to sustain a fraud cause of action; Plaintiff must cite the actual court decisions wherein Defendant was found to have violated the MVRISA. "A single violation of the Retail Installment Sales Act is not per se a violation of the Consumer Fraud Act. If it were, there would be little reason for the limitations imposed by sections 2E and 2F of the Consumer Fraud Act." *Weather-Seal-Nu-Sash, Inc., v. Marx,* 596 N.E.2d 780, 782 (3rd Dist.1992)(referring to *Lanier,* 499 N.E.2d at 448 (Simon, J., concurring)). While the Court is cognizant of the traditional pleading standards, Plaintiff's failure to identify these three prior convictions and/or violations is fatal to his Section 2E fraudulent or deceptive practices claim. Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from alleged unnamed MVRISA violations. Compl. ¶ 35(b), 51(b).

*7 Section 2F of the ICFA provides that "any person who is held in any civil or criminal proceeding to have willfully and materially violated" MVRISA is also guilty of an unlawful act under the ICFA. 815 ILCS 505/2F. Thus, a plaintiff may use a prior MVRISA conviction or violation to support an ICFA cause of action. However, only the Attorney General or the State's Attorney may bring an action for a violation of MVRISA; a private action under the ICFA depends upon the findings of the suit brought under MVRISA. *Tirado v. Z Frank, Inc.,* 522 F.Supp. 405, 408 (N.D.Ill.1981); *Hoover v. May Department Stores Co.,* 395 N.E.2d541, 545-46 (Ill.1979); *McCoy v. MTI Vacations, Inc.*, 650 N.E.2d 605, 607-08 (1st Dist.1995). Thus, a court must have previously held Defendants had "wilfully and materially" violated MVRISA if a plaintiff wishes to plead a ICFA claim under Section 2F. Further, unlike Section 2E, multiple violations of MVRISA are not required. "Under section 2F of the Consumer Fraud Act, a single [MVRISA] violation may constitute a Consumer Fraud Act violation if the [MVRISA] violation was 'willful' and 'material.'" ' *Weather-Seal-Nu- Sash, Inc.* 596 N.E.2d at 782; *see Fidelity Financial Services, Inc. v. Hicks* 574 N.E.2d 15 (Ill.1991). While multiple violations are not necessary under Section 2F, a plaintiff must cite to the prior single MVRISA conviction and/or violation in its pleading when it is filing its ICFA cause of action. *Fidelity Financial Services, Inc.* 574 N.E.2d at 20; *DiLeo,* 901 F.2d at 627; *Taylor,* 2000 WL 876920 at *2. Here, the third amended complaint fails to indicate any court has found Defendants have committed wilful and material violations of MVRISA. Thus, the Court concludes Plaintiff has failed to state a cause of action under the ICFA based upon a purported MVRISA violation. "Mere assertions of wilful and material violations of MVRISA are not adequate to obtain relief under the CFA." *Tirado,* 522 F.Supp. at 408; *see also Smith v. Sears Roebuck & Co.,* 419 N.E.2d 673 (4th Dist.1981). Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from an alleged unnamed MVRISA violation. Compl. ¶ 35(c), 51(c). Consequently, Defendant UAC is dismissed from Count II.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Credit Report and Buyers Guide claims (Complaint ¶ 51 (g) and (i))

In Count D, ¶ 51(g), Plaintiff asserts Defendant Joliet Dodge "and/or" UAC "have caused information pertaining to the delinquency of Mr. Crowe to be placed in the (sic) Mr. Crowe's credit report" and thus performed an unfair and deceptive act under ICFA. In Count D, ¶ 51(i), Plaintiff alleges Defendant Joliet Dodge failed to provide him with the federally-required Buyers Guide. Plaintiff's assertion regarding the credit report does not state a consumer fraud claim. Rather, it merely alleges a breach of contract action and Illinois courts, apparently suspicious of the motives of plaintiffs' attorneys' fees, repeatedly caution against transforming every breach of contract into consumer fraud. *Long v. Wix Auto,* No. 00 C 5842 (N.D.Ill January 4, 2001) (Mot. to Dismiss Op.)(Judge Zagel); *Golembiewski v. Hallberg Ins. Agency,* 635 N.E.2d 452, 460 (1st Dist.1994). "Every individual breach of contract between two parties... does not amount to a cause of action cognizable under the (ICFA)... If the (ICFA) did apply, then common law breach of contract actions 'would be supplemented in every case with an additional and redundant remedy." ' *Golembiewski,* 635 N.E.2d at 121 (quoting *Exchange National Bank v. Farm Bureau Life Ins. Co,* 438 N.E.2d 1247, 1250 (Ill.1982)). However, the complaint adequately pleads an ICFA claim concerning the purported failure to provide a Buyers Guide; further, the claim raises factual issues that should not be decided on a motion to dismiss. *Sorce v. Naperville Jeep Eagle, Inc.,* 722 N.E.2d 227, 232 (2nd Dist.1999). Therefore, the Court GRANTS Defendants' motion to dismiss the credit reporting claim, Compl. ¶ 51(g), and DENIES the motion to dismiss the Buyers Guide claim, Compl. ¶ 51(i).

APR representation (Complaint ¶ 51(j))

*8 In Count D, ¶ 51(j), Plaintiff asserts Defendant Joliet Dodge's finance person "affirmatively represented" to Plaintiff he would try and find the best interest rate, and "acting as Mr. Crowe's agent and fiduciary on this undertaking," he failed to deliver the lowest rate available to Plaintiff. Defendant states correctly it was not required to secure the lowest rate for Plaintiff. However, Plaintiff maintains Defendant offered to secure such a rate and this material misrepresentation offends the ICFA.

The Seventh Circuit recently held a car dealer generally does not act as the customer's agent when arranging financing and, therefore, does not owe a duty to the customer to act in his or her best interest. *Balderos v. City Chevrolet,* 214 F.3d 849, 853 (7th Cir.2000). However, this relationship between buyer and seller must be evaluated on an individual basis.

> (A)n automobile dealer is not its customers' agent, obviously not in selling cars but only a little less obviously in arranging financing. If the buyer pays cash and arranges his own financing, the dealer is not in the picture at all. If the buyer wants to buy on credit, he recognizes that his decision does not change the arms' length nature of his relation to the dealer. He knows, or at least has no reason to doubt, that the dealer seeks a profit on the financing as well as on the underlying sale. This is in general, not in every case; it is a question of fact whether the contract express or implied between a particular dealer and a particular customer constitutes the former an agent for the latter in procuring financing.

*Id.; see also American Ins. Corp. v. Sederes,* 807 F.2d 1402, 1405-06 (7th Cir.1986).

As pleaded, there is no basis to hold Defendant Joliet Dodge as a fiduciary. The complaint fails to suggest Defendant agreed to serve as Plaintiff's agent in dealing with a finance company; instead, Plaintiff concludes Defendant was "in essence, acting as Mr. Crowe's agent and fiduciary in this undertaking." Compl. ¶ 51(j). However, since questions of fact should not be decided on a motion to dismiss, the Court will allow this issue to be pursued during discovery and allow Defendant to raise it again on summary judgment, if it so chooses. *Sorce,* 722 N.E.2d at 232. Therefore, the Court DENIES Defendants' motion to dismiss the claim of misrepresenting the APR. Compl. ¶ 51(j).

Documentary fee representation (Complaint 51(l) and (m))

In Count D, ¶ 51(l) and (m), Plaintiff alleges Defendant Joliet Dodge's RIC form misrepresented the documentary fee would be paid to others when the fee would actually be retained by Defendant, ¶ 51(l), and the documentary fee was pre-printed on the form, ¶ 51(m), and thus violated the ICFA.

The documentary fee is listed under the sub-heading "Amount Paid to Others for You * WE MAY BE RETAINING A PORTION OF THIS AMOUNT". [FN3] Plaintiff maintains this sub-heading is false, i.e. no amount of the documentary fee was paid to others, and thus Defendant deceived him. However,

Plaintiff's theory lacks merit. The sub-heading clearly states a total amount will be paid to third parties and Defendant notes with an asterisk the amount it retains. The documentary fee is so noted with an asterisk and thus the buyer knows the fee is such a retained amount.

FN3. In its response to Defendant Joliet Doge's motion to dismiss, Plaintiff misquotes this sub-heading as "Amounts Paid to Others for You." This mistake is relevant, as the actual heading states a singular amount which reflects a total or collective fund.

*9 Plaintiff relies upon *Pawlikowski v. Toyota Motor Credit Corp.,* 722 N.E.2d 767, 775 (2nd Dist.1999), to support its proposition. However, Plaintiff selectively quotes *Pawlikowski* and twists the Appellate Court's analysis. In that case, the Second District found its facts similar to *Martin v. Heinhold Commodities, Inc.,* 643 N.E.2d 734 (Ill.1994), where the Illinois Supreme Court held the defendant actively misrepresented on a commodities disclosure statement both the purpose and recipient of the charges collected from the plaintiff. *Id.* In the present case, Plaintiff fails to suggest any such active deception; rather, the captions on the RIC identify both the actual purpose and recipient of the fees. Further, the MVRISA authorizes car sellers to collect documentary fees, specifically allowing a seller in a RIC to "add a 'documentary fee' for processing documents and performing services related to closing of a sale." 815 ILCS 375/11.1. Defendant charged $48.82 for the documentary fee; the maximum fee permitted for FY 2000 was $50.48, as set by the Illinois Attorney General.

Plaintiff's allegations concerning the documentary fee are unfounded; the RIC openly and clearly itemizes the fees for licenses, titles, taxes and documentary fees and Plaintiff fails to explain how this is misleading or unfair. Therefore, the Court GRANTS Defendants' motion to dismiss the claims of misrepresenting the documentary fee. Compl. ¶ 51(l) and (m).

Vehicle's mileage representation (Complaint ¶ 51(n))

In Count D, ¶ 51(n), Plaintiff alleges when Defendant Joliet Dodge signed the odometer disclosure statement it misrepresented the actual mileage of the car and deceived Plaintiff. Defendant argues again that the Seventh Circuit's holding in *Perez v. Z Frank* applies. *Perez,* 223 F.3d at 624. However, as stated above, the Court believes *Perez* goes to selecting remedies, not pleading a cause of action, and thus does not apply at the present time. Plaintiff has adequately plead a cause of action based upon deception or fraud. Therefore, the Court DENIES Defendants' motion to dismiss the claim of misrepresenting the car's mileage. Compl. ¶ 51(n).

Rejection or Revocation (Counts F, G and O)

In Counts D (¶ 51(d)), F, G and O, Plaintiff alleges he attempted to reject or revoke acceptance of the defective car, but Defendant Joliet Dodge would not honor Plaintiff's rejection or revocation. Defendant argues the rights of rejection and revocation are not causes of actions, but instead are remedies; thus, Defendant maintains they should be dismissed as claims and instead reserved as prayers for relief.

Defendant correctly categorizes rejection and revocation as buyer's rights upon improper delivery. 810 ILCS 5/2-601 *etal.* However, these rights may convert to legitimate causes of action when a defendant has denied them as remedies earlier, i.e. the dishonor of rejection or revocation creates a separate claim. *Buechin v. Ogden Chrysler-Plymouth, Inc.,* 511 N.E.2d 1330, 1338 (2nd Dist.1987); *Presto Manufacturing Co., Inc., v. Formetal Engineeing Co.,* 360 N.E.2d 510, 513-14 (2nd Dist 1977) [FN4]; *Breitung v. Canzano,* 660 N.Y.S.2d 765, 766 (N.Y.App. Div 1997). Since the timeliness and reasonableness of Plaintiff's rejection and/or revocation are fact questions, the Court will not decide these issues on a motion to dismiss. Further, Plaintiff alleged he wrote Defendant UAC to inform it of Defendant Joliet Dodge's inaction and Defendant UAC similarly refused to honor Plaintiff's rejection and/or revocation. Compl. ¶ 51(o). These claims require factual discovery; Defendant will be permitted to renew its challenges on summary judgment. *Sorce,* 722 N.E.2d at 232. Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's causes of action for rejection and revocation in Counts D (¶ 51(n) and (o)), F, G, and O.

FN4. Plaintiff cites *Presto* for support, but incorrectly states it stands for "approving pleading rejection and revocation of acceptance as counterclaims." Pl.'s Resp. to Def. UAC Mot. To Dismiss at 27. The Appellate Court stated repeatedly rejection and revocation were defenses, rather than counterclaims. *Id.* at 514. The distinction reflects the challenge in understanding these

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

concepts in the present matter.

Breach of Implied Warranty of Merchantability under Magnuson-Moss (Counts D and H)

***10** In Counts D, ¶ 51(h) and (p), and Count H, Plaintiff alleges Defendant Joliet Dodge violated the Magnuson-Moss Act when it attempted to waive the implied warranty of merchantability in the RIC at the same time it sold Plaintiff a service contract (¶ 51(h)) and when Defendant was unable to repair the car pursuant to the warranty (¶ 51(p) and Count H).

Defendant's Buyers Order form plainly disclaims the warranty of merchantability. However, the Magnuson-Moss Act prohibits disclaimers of the implies warranty of merchantability when the supplier inters into a service contract with the purchaser. 15 U.S.C. § 2308(a)(2). Here, Defendant Joliet Dodge sold Plaintiff a service contract and was the party to the service contract. Thus, Plaintiff has sufficiently pleaded a claim as to fulfill its notice pleading requirement. Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's causes of action for breaches of the Magnuson-Moss Act in Counts D (¶ 51(h) and (p)) and H.

Illinois and Federal Odometer Acts (Counts I(I), J and P)

In Counts I(I), J [FN5] and P, Plaintiff alleges Defendant Joliet Dodge provided him with a false odometer statement of the car's mileage and failed to disclose the car's actual, higher mileage, thus violating the federal and Illinois odometer statutes. 49 U.S.C. § 32705; 625 ILCS 5/3-112.1(e). Defendant argues Plaintiff failed to allege Defendant possessed the requisite knowledge component and thus failed to state a claim. Plaintiff alleged Defendant acted "with intent to defraud" and such pleading is sufficient to sustain the odometer statute actions. The parties' factual disputes merit and require discovery. For instance, the origin of the defective odometer and the facts surrounding it are sufficiently in dispute that a motion to dismiss is precluded. *Sorce,* 722 N.E.2d at 232; *See Holley v. Gurnee Volkswagen and Oldsmobile, Inc.*, No. 00 C 5316, 2001 WL 243191, at *3 (N.D.Ill. Jan. 4, 2001). Therefore, this court cannot say under this set of facts, if proved, that Defendant's actions and inactions would not be a violation of the odometer acts. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claims. Therefore, the Court DENIES Defendants' motion to dismiss the claims under the Illinois and federal odometer acts under Counts I(I), J and P.

FN5. Plaintiff withdrew its allegations in ¶ 63(a) and 65(a): "(Defendant Joliet Dodge) altered or caused to be altered the odometer of the car with the intent to change the numbers of miles thereon".

Common Law Fraud under Illinois law (Count L)

In Count L, Plaintiff incorporates the above facts and alleges common law fraud. Defendant argues Plaintiff has failed to state a fraud with the requisite detail. As stated above, while the federal courts require notice pleading, allegations of fraud must be plead further with sufficient particularity. Fed.R.Civ.P. 9(b).

While Plaintiff appears to have simply slapped a cause of action for common law fraud onto the end of his complaint, throughout his complaint he has stated the necessary level of detail required to sustain the claim. *See* ¶ 11, 18, 51(j). For instance, to support the allegations of deception concerning the financing of the vehicle and the best available APR, Plaintiff alleged the name of Defendant's employee, what he said and when he said it. For the allegation of deception concerning the malfunctioning odometer, Plaintiff again stated the employee's name, the content of their conversation and when the conversation occurred. Therefore, the Court DENIES Defendants' motion to dismiss the common law fraud claims under Count L.

Ratification and Acceptance of Illegal Conduct and/or Fraud (Count M)

***11** In Count M, Plaintiff alleges Defendant UAC became aware of Defendant Joliet Dodge's allegedly deceptive conduct when it received Plaintiff's letter; Defendant UAC's inaction ratified this conduct and Defendant accepted the benefits of Defendant Joliet Dodge's illegal conduct and/or fraud. Defendant UAC argues "Ratification and acceptance of illegal conduct and/or fraud" are not causes of action, but rather remedies.

In violation of Rule 53 of the Local Rules of the Seventh Circuit Court of Appeals, Plaintiff cites an unpublished opinion to support his theory. [FN6] *Neece v. John Hancock Mutual Life Ins.* Co., 914 F.2d 260 (7th Cir.1990). In *Neece,* the Seventh Circuit discussed ratification as the law of principal and agent, i.e. the adoption and confirmation by the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

principal of an act or contract performed or entered into by the agent, and similarly discussed retention of benefits. *Id.* However, the court addressed these "claims" as theories of recovery in the contract dispute before it, specifically, as strategies for secondary liability, not an independent cause of action. *Id.; see also Zekman v. Direct American Marketers,* 695 N.E.2d 853, 859 (Ill.1998) ("Knowingly receiving the benefits of another's fraud... more closely resembles a form of secondary liability.") Plaintiff cites a number of cases which define and discuss agency theory, but none of these cases support his assertion there are independent causes of action for "ratification" or "acceptance of the benefits of fraud." Further, the Illinois Supreme Court stated unambiguously the ICFA does not prohibit acceptance of the benefits of fraud.

FN6. In a footnote, Plaintiff states the case is not offered for its "precedential value, but rather for its thorough discussion of Illinois law." If this were true, then Plaintiff simply would have analyzed and applied the cases cited within this unpublished opinion. Further, Plaintiff would not have discussed the facts of the case or quoted from it.

> (T)he plain language of section 2 of the (ICFA) does not include anything that makes it unlawful to knowingly receive the benefits of another's fraud. As this court stated in *Laughlin v. Evanston Hospital,* '(t)he language of the (ICFA) shows that its reach was to be limited to conduct that defrauds or deceives consumers or others.' To allow plaintiff to recover for (defendant) knowingly receiving the benefits of (another defendant's) fraud would require us to read into the statute violations that are not a part of the statutory text.... (W)e cannot extend liability to those who knowingly receive the benefits of another's fraud.

*Zekman,* 695 N.E.2d at 859 (citing *Laughlin v. Evanston Hospital,* 550 N.E.2d 986 (1990)).

"Under *Zekman...* 'knowingly receiving the benefits of another's fraud' does not violate the ICFA. Rather, the statute covers only 'actions directly done by the perpetrator of the fraud." ' *Vance v. National Benefit Assoc.,* No. 99 C 2627, 1999 WL 731764, at *5 (N.D.Ill. Aug. 30, 1999) (quoting *Zekman,* 695 N .E.2d at 859). Here, the complaint fails to allege sufficient direct involvement by Defendant UAC; Defendant UAC's only involvement was that the RIC was assigned to it after Plaintiff entered into the transaction. *Id.* While Plaintiff wrote a letter to Defendant UAC, its nonresponsiveness falls short of direct approval and authorization of the allegedly deceptive activity. *See also Franks v. Rockenbach Chevrolet Sales, Inc.,* No. 95 C 6266, 1998 WL 919714, at *2-5 (N.D.Ill,. Dec. 30, 1998). Therefore, the Court GRANTS Defendants' motion to dismiss the claims for "ratification and acceptance of illegal conduct and/or fraud" under Count M.

Illinois Sales Finance Agency Act (Count N)

***12** In Count N, Plaintiff alleges the RIC violated the SFAA on its face and Defendant UAC purchased this RIC. Defendant states there is no private cause of action and both parties agree that non-liability under TILA is a complete defense. Thus, since Defendant UAC was dismissed from the TILA-derived ICFA claims above for a lack of assignee liability on the face of the relevant document, this claim is dismissed. Further, contrary to Plaintiff's arguments, there is no private cause of action under Section 8.4 of the SFAA, the section upon which Plaintiff relied to support his claim. 205 ILCS 660/8.4. Section 8.4 delineates the criteria for the Illinois Department of Financial Institutions to evaluate applications for a license, requests for a renewal of a license, or efforts to suspend a license. The section does not list prohibited activities which empower a private citizen with a right of action under the SFAA. The Court finds the analysis and conclusion in a recent Northern District of Illinois case illustrative. *Rivera v. Grossinger Autoplex, Inc.,* No. 00 C 442, 2000 WL 796158, at *6 (N.D.Ill. June 19, 2000). In *Rivera,* the court concluded "the cause of action created in § 15.5 (of the SFAA) does not authorize a private cause of action for engaging in conduct described in § 8.4." *Id.* As in the present case, the court in *Rivera* held the plaintiff's argument that a private right of action exists for asserted violations of Section 8.4 "is without support in either the language of the statute or case law." *Id.* Therefore, the Court GRANTS Defendants' motion to dismiss the SFAA claims under Count N.

Plaintiff's motion for injunctive relief and declaratory judgment

In his petition for injunctive relief and declaratory judgment, Count D (¶ 51(e)) and Count K, Plaintiff alleges Defendant Joliet Dodge violated the Credit Services Organizations Act (CSOA). Defendant argues car dealerships are not "credit services organizations" and the provisions of the CSOA do not apply to Defendant.

The Court explained recently why it is presently accepting the proposition the CSOA applies to car dealerships, and thereby, Defendant Joliet Dodge may be held liable for the alleged failure to comply with its requirements as a matter of law. *Harris v. Castle Motor Sales, Inc.*, No. 00 C 5455, 2001 WL 477241 (N.D.Ill May 4, 2001). The Court will repeat its analysis and conclusion below.

When a federal court applies state law, it should attempt to resolve the issue before it as if it were the highest court of the state that provides the state law. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416- 17 (7th Cir.1997); *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997). Thus, this court must attempt to predict how the Illinois Supreme Court would decide the matter. *Id.* (citing *Smith v. Equitable Life Assurance Soc'y*, 67 F.3d 611, 615 (7th Cir.1995)). However, if an Illinois Appellate Court has ruled on this issue, while not automatically binding, the Illinois court decision may control, "unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.; see also Knoblauch v. DEF Express Corp.*, 86 F.3d 684, 687 (7th Cir.1997) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S . Ct. 1776, 1783 (1967)).

***13** The CSOA is an infrequently used and rarely interpreted cause of action, and this court has little direction from Illinois' highest court and certainly no persuasive guidance. While the Illinois Supreme Court has yet to resolve the issue of whether the CSOA is applicable to car dealerships such as Defendant, that Court will soon provide some guidance, as it recently granted leave to appeal the decision of the Illinois Appellate Court, Third District, in *Midstate Siding & Window Co., Inc. v. Rogers*, 309 Ill.App.3d 610, 722 N.E.2d 1156 (Ill.App.Ct.1999); *Midstate Siding Window Co., Inc. v. Rogers*, 189 Ill.2d 661, 731 N.E.2d 765 (Ill.2000). Therefore, this court must exercise its best judgment to determine how the Illinois Supreme Court will rule on this issue.

The Illinois Appellate Court's decision presents plausible authority to hold Defendant liable under the CSOA, and Judge Guzman similarly found that court's logic persuasive in his motion to dismiss opinion in *Jaffi v. Lynch Ford*, No. 99 C 7852 (N.D.Ill Aug. 25, 2000)(minute order). However, this court is also aware of Judge Holderman's motion for summary judgment ruling in *Fogle v. William Chevrolet/GEO*, No. 99 C 5960, 2000 WL 1129983 (N.D.Ill Aug 9, 2000). Since this is a motion to dismiss and the Illinois Supreme Court presumably will hand down its decision soon, this court will not dismiss this count at this time.

Further, while the Court has granted the first two elements of Plaintiff's petition, i.e. the CSOA provides that credit services organizations must include certain disclosures in their contracts and Defendant Joliet Dodge is a credit services organization, the Court will not grant Plaintiff's request, i.e. the Court does not find Defendant failed to provide the required disclosures and thus violated the CSOA. Such factual conclusions merit discovery and the Court cannot and will not say with this bare statement of facts that Defendant's conduct would violate the CSOA. Therefore, the Court DENIES Defendants' motion to dismiss the petition for injunctive relief and declaratory judgment, Counts D (¶ 51(e)) and Count K. Further, the Court GRANTS in part and DENIES in part Plaintiff's petition for injunctive relief and declaratory judgment.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Motion to Dismiss. Plaintiff's petition is GRANTED in part and DENIED in part..

IT IS SO ORDERED.

2001 WL 811655, 2001 WL 811655 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

United States District Court,
N.D. Illinois,
Eastern Division.

Alma DIAZ, individually and on behalf of all others similarly situated,
Plaintiff,
v.
JOE RIZZA FORD, INC., Defendant.

No. 00 C 7082.

Nov. 2, 2001.

Consumer filed action alleging that automobile dealer failed to give timely disclosures required by Truth in Lending Act (TILA) with respect to her purchases of vehicles. On dealer's motion for summary judgment, the District Court, Moran, Senior District Judge, held that dealer's failure to give consumer separate copy of completed retail installment contract before she signed it did not violate TILA.

Motion granted.

West Headnotes

Consumer Credit 🔑51
92Bk51

Automobile dealer's failure to give consumer separate copy of completed retail installment contract before she signed it did not violate disclosure requirements of Truth in Lending Act (TILA), absent showing that consumer could not have taken away all copies of contract, or notes of its terms, without executing them, if she had so desired. Truth in Lending Act, § 128(b), 15 U.S.C.A. § 1638(b); 12 C.F.R. § 226.17.

***959** Michael Jonathan Nachsin, Jonathan Nachsin, P.C., Chicago, IL, for plaintiff.

Hall Adams, III, Martin D. Snyder, Williams, Montgomery & John, Ltd., Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

MORAN, Senior District Judge.

****1** On July 26, 2001, we left for future decision one claim: that defendant did not give plaintiff timely disclosures required by the Truth In Lending Act (TILA) with respect to her purchases of vehicles in March 2000 and May 2000. We directed that the then motion to dismiss that claim be treated as a motion for summary judgment, in hopes that the facts could be made more specific. Plaintiff thereafter filed an affidavit stating that she did not get a copy of either retail installment contract "in a form that I could keep, before I signed the document. I only received a copy after I signed the document." But that does not disclose when she claims she ***960** received the documents and under what circumstances. Plaintiff's counsel has advised that she cannot do better than that--she cannot recall if she received a copy immediately after signing or a day or so later.

At the court's suggestion, defendant then filed an affidavit. That discloses that defendant uses a three-copy form. The top form is filled out after the terms have been negotiated, and the customer, after an opportunity to review it, signs the top form--the imprint of her signature appearing also on the second and third pages. The top copy is then separated from the other two copies and given to the customer, generally immediately, but in all events before the customer leaves the premises.

Plaintiff contends that scenario violates TILA and Regulation Z, 12 C.F.R. § 226.17, because defendant failed to give her a copy of the required disclosures in a form she could keep before consummation of the transaction, and several cases lend support to that view. *See Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir.2000); *Brugger v. Elmhurst Kia*, 2001 WL 845472 (N.D.Ill.2001); *Harris v. Castle Motor Sales, Inc.*, 2001 WL 477241 (N.D.Ill.); *Walters v. First State Bank*, 134 F.Supp.2d 778 (W.D.Va.2001); *Holley v. Gurnee Volkswagen and Oldsmobile, Inc.*, 2001 WL 243191 (N.D.Ill.2001); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321 (W.D.Mich.2000). We do not quarrel with that concept but we do not believe that it aptly describes what happened here.

TILA dictates that required disclosures be made before credit is extended. 15 U.S.C. § 1638(b). Here the form was completed, with all required disclosures, before plaintiff signed. But TILA is amplified by Regulation Z, which provides as follows:

> (a) Form of disclosures.
> (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the

consumer may keep....

(b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction....

Read independently, those provisions require that the disclosures be made before consummation of the transaction and that they be made in a form that the consumer may keep, but they do not necessarily require that the form be furnished to the customer before consummation of the transaction. The court so recognized in *Polk v. Crown Auto, Inc., supra,* but it concluded that the provisions must be read together, with the form being furnished prior to the consummation of the transaction, in order to implement the purpose of TILA. We agree, but not to the extent that we invalidate defendant's procedures here.

****2** The enhancement of the ability to comparison-shop is one purpose of TILA, but not the only one. The overriding purpose is to promote the informed use of credit, and requiring substantially similar and full disclosures in a form that the consumer may keep enhances the ability to custom-shop, reduces the likelihood of uninformed use of credit, and protects the consumer from subsequent changes in the terms. 15 U.S.C. § 1601. Plaintiff here was informed, and was protected because she took away her copy. Further, there is nothing to suggest that she could have not taken away all three copies or the top copy, or notes of the terms, without executing them, if she had so desired. And, she was in physical possession of all three copies when she signed. Presumably plaintiff would agree that defendant was in compliance with Regulation Z if it had removed the top copy at its perforations and handed it to her before she signed. But in any event, it was "her" copy, and ***961** we fail to see any meaningful distinction between separation of the copies before or after she signed. Accordingly, we grant summary judgment for the defendant.

210 F.Supp.2d 959, 2001 WL 1360315 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

C

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

Martin GAVIN, Plaintiff-Appellant,
v.
KOONS BUICK PONTIAC GMC, INCORPORATED, t/a Koons of Fairfax, Defendant-Appellee.

No. 01-1436.

Argued Dec. 4, 2001.
Decided Jan. 14, 2002.

Buyer brought action against vehicle dealership, seeking rescission of contract for sale of used truck, and alleging violations of the Federal Odometer Act, Truth in Lending Act (TILA), multiple violations of the Virginia Consumer Protection Act, breach of contract, and fraud. The United States District Court for the Eastern District of Virginia, Albert V. Bryan Jr., Senior District Judge, granted partial summary judgment in favor of dealership, and dismissed remaining claims after conclusion of buyer's evidence at trial. Buyer appealed. The Court of Appeals held that: (1) buyer received disclosure required by TILA before dealership extended credit to him for purchasing truck; (2) buyer waived for review on appeal claim that dealership was precluded from disclaiming implied warranties; (3) dealership was not liable for immaterial misstatement in odometer disclosure; (4) buyer failed to show a "loss" required by the Virginia Consumer Protection Act; and (5) buyer failed to establish dealership's intent to mislead him, as would support fraud claim.

Affirmed.

West Headnotes

[1] Consumer Credit 🔑52
92Bk52

Buyer received required Annual Percentage Rate (APR) disclosure before vehicle dealership extended credit to him in connection with his purchase of used truck, and thus dealership was not liable to buyer under the Truth in Lending Act (TILA). Truth in Lending Act, § 128(b)(1), 15 U.S.C.A. § 1638(b)(1); 12 C.F.R. § 226.17(b).

[2] Federal Courts 🔑612.1
170Bk612.1

Buyer failed to preserve for review on appeal claim that Magnusson Moss Warranty Act precluded vehicle dealership from disclaiming implied warranties, as would permit buyer to recover on breach of contract theory for dealership's alleged breaches of implied warranties, where buyer failed to raise claim in district court. Magnuson-Moss Warranty--Federal Trade Commission Improvement Act, § 108, 15 U.S.C.A. § 2308.

[3] Consumer Protection 🔑9
92Hk9

[3] Consumer Protection 🔑34
92Hk34

Deviation between used truck's odometer reading and odometer disclosure prepared by vehicle dealership lacked materiality, and thus dealership was not liable to buyer under the Federal Odometer Act, where misstatement of only approximately three miles was insufficient to show intent to defraud. 49 U.S.C.A. § 32710(a).

[4] Consumer Protection 🔑9
92Hk9

[4] Consumer Protection 🔑40
92Hk40

Buyer failed to show a "loss" sufficient to warrant relief under the Virginia Consumer Protection Act concerning his purchase of used truck from vehicle dealership. Va.Code 1950, § 59.1-196 et seq.

[5] Fraud 🔑3
184k3

Fraud requires that a false statement be made with intent to mislead.

[6] Fraud ⚷4
184k4

Buyer failed to establish vehicle dealership's intent to mislead him in connection with its extension of credit to him for purchase of used truck, as would support fraud claim under Virginia law; buyer also failed to produce any evidence of any competing or lower financing terms he could have obtained, and given his ability to seek out alternative financing, he was not damaged by dealership's statement that a previous purchase did not appear on his credit report.

***221** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-00-1241-A).

A. Hugo Blankingship, III, Blankingship & Associates, Alexandria, Virginia, for Appellant. Arthur Mark Schwartzstein, Arthur M. Schwartzstein, P.C., McLean, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and WILLIAMS and GREGORY, Circuit Judges.

OPINION

PER CURIAM.

****1** Appellant Martin Gavin asserts multiple claims against Koons Buick Pontiac GMC, Inc. ("Koons") arising out of the sale of a motor vehicle. Two claims were dismissed on summary judgment. The district court granted judgment as a matter of law on the remaining claims. We affirm.

I

On January 29, 2000, Gavin signed a buyer's order to purchase a used 1995 Mazda B2300 truck. The contract provided for financing of the purchase price. The Koons finance manager had a copy of Gavin's credit history report, and told Gavin that a previous vehicle purchase did not appear on the report. In fact, the previous purchase did appear on the report. Multiple copies of the credit agreement, which included an Annual Percentage Rate ("APR") disclosure statement, were placed in front of Gavin. Gavin reviewed the credit agreement before signing. Before taking possession of the truck, Gavin noticed that the "check engine" light was illuminated and Koons agreed to make any necessary repairs. On February 2, 2000, before taking possession of the truck, Gavin noticed that the "check engine" light was still illuminated and complained that Koons had not repaired the problem as promised. A Koons employee drove the truck off the lot. Approximately one hour later, the employee returned to the lot with the truck. Gavin then took possession of the truck. While driving to work that same day, Gavin noticed that the truck's speedometer was not functioning. Later that day, he noticed that the odometer was not functioning, and was stopped at 70,596 miles. He subsequently learned that the windshield wipers did not function, and that the entire right side of the truck had been repainted. Gavin returned the truck to Koons and demanded recision and return of his down payment of $1,500. Koons refused. Gavin filed suit alleging violations of the Federal Odometer Act ***222** (Count I); Truth in Lending Act (TILA) (Count II); multiple violations of the Virginia Consumer Protection Act (Counts III VI); breach of contract (Count VII); and fraud (Count VIII).

The defendant moved for summary judgment on all counts. The district court granted in part and denied in part the defendant's motion. Gavin appeals that portion of the district court's order granting summary judgment on portions of Count II (TILA) regarding the APR disclosure, and granting summary judgment on Count VII.

Counts I, II, III, IV, VI, and VIII remained after summary judgment, and the case proceeded to trial by jury. At the conclusion of Gavin's evidence, Koons made a motion pursuant to Rule 50 for judgment as a matter of law as to Counts III, IV, VI, and VIII. (JA 476.) Koons did not move for judgment as a matter of law on Counts I and II. The district court dismissed all counts, including Counts I and II *sua sponte*. Gavin's timely appeal followed.

II

The Court reviews a grant of summary judgment *de novo*, viewing all facts and inferences in the light most favorable to the nonmoving party. *See Providence Square Assoc., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir.2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56.

****2** [1][2] After considering the parties' briefs and joint appendix, and having had the benefit of oral

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

argument, we affirm substantially on the reasoning of the district court. We reject Gavin's assertion that the district court committed error by granting summary judgment to Koons on his claim that Koons misstated the APR. The district court held that Gavin received the required APR disclosure "before credit [was] extended." 15 U.S.C. § 1638(b)(1); *see also* 12 C.F.R. § 226.17(b) (requiring disclosure before consummation of the transaction); 12 C.F.R. § 226.2(a)(13) (stating that consummation occurs when the buyer becomes contractually obligated). That is all that is required by the statutory and regulatory provisions cited by Gavin. Whether Gavin became obligated to purchase the truck on January 29 or February 2, he received the required disclosures before the credit was extended. We also reject Gavin's assertion that the district court erred in dismissing his breach of contract claim. This claim was based on alleged breaches of implied warranties. The contract disclaimed all implied warranties. For the first time on appeal, Gavin asserts that the Magnusson Moss Warranty Act, 15 U.S.C. § 2308, prohibited Koons from disclaiming implied warranties. Having failed to raise this argument below, it is waived. *Skipper v. French,* 130 F.3d 603, 610 (4th Cir.1997). Next, we turn to the district court's order granting Koons judgment as a matter of law.

III

The Court reviews a grant of judgment as a matter of law *de novo.* "A district court may grant a motion for judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *GSM Dealer Services, Inc. v. Chrysler Corp.,* 32 F.3d 139, 142 (4th Cir.1994) (internal quotations omitted).

***223** [3] Again, we affirm substantially on the reasoning of the district court. We reject Gavin's assertion that the district court erred in granting judgment as a matter of law on Gavin's Federal Odometer Act, 49 U.S.C. §§ 32701-32711, claim. Gavin's evidence, at most, showed that the odometer disclosure was misstated by only approximately three miles. This deviation lacked materiality and was consequently insufficient to show an "intent to defraud" as required by the statute. 49 U.S.C. § 32710(a).

[4][5][6] Gavin also asserts that the district court erred granting judgment as a matter of law on his Virginia Consumer Protection Act, Va.Code §§ 59.1-196--59.1-207, claims. We agree with the district court that Gavin failed to adequately demonstrate a "loss" as required by the statute. Va.Code § 59.1-204. Next, we agree with the district court that Koons was entitled to judgment as a matter of law on Gavin's common law fraud claims. Like the Federal Odometer Act, fraud requires that a false statement be made with "intent to mislead." *Thompson v. Bacon,* 245 Va. 107, 425 S.E.2d 512, 514 (Va.1993). Gavin failed to establish such intent. In addition, Gavin failed to produce any evidence of any competing or lower financing terms he could have obtained. Given Gavin's ability to seek out alternative financing, he was not damaged by Koons' statement that a previous purchase did not appear on his credit report.

****3** Finally, Gavin argues that the district court erred in granting Koons judgment as a matter of law on Gavin's remaining TILA claims. As stated above, the disclosures were made before credit was extended, as required by the Act. 15 U.S.C. § 1638(b)(1). The regulation that interprets the statutory provision requires disclosures "before consummation of the transaction" and "in a form that the consumer may keep." 12 C.F.R. § 226.17(b). Multiple copies of the form contract, which contained the required disclosures, were placed in front of Gavin before the transaction was finalized, and Gavin reviewed the contract. The district court did not err in granting judgment as a matter of law on this claim.

IV

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

Briefs and Other Related Documents (Back to Top)

.Martin GAVIN, Plaintiff-Appellant, v. KOONS BUICK PONTIAC GMC INCORPORATED, t/a Koons of Fairfax, Defendent-Appellee., 2001 WL 34383527 (Appellate Brief) (C.A.4 June 26, 2001), Brief of Appellant

.Martin GAVIN, Plaintiff-Appellant, v. KOONS BUICK PONTIAC GMC, INCORPORATED, t/a Koons of Fairfax, Defendant-Appellee., 2001 WL 34384379 (Appellate Brief) (C.A.4 August 13, 2001), Brief of Appellee

.Martin GAVIN, Plaintiff-Appellant, v. KOONS BUICK PONTIAC GMC, INCORPORATED, t/a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Koons of Fairfax, Defendant-Appellee., 2001 WL 34383394 (Appellate Brief) (C.A.4 August 30, 2001), Reply Brief of Appellant

28 Fed.Appx. 220, 2002 WL 46759 (4th Cir.(Va.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Elwood LEGUILLOU, Plaintiff,
v.
LYNCH FORD, INC. Defendant.

No. 99 C 3449.

Feb. 14, 2000.

MEMORANDUM ORDER AND OPINION

ANDERSEN, District J.

***1** After failing to find financing for a vehicle purchased by Elwood Leguillou, Lynch Ford repossessed the vehicle. In response, Leguillou filed the instant six Count Complaint. In his Complaint, Leguillou alleges: a violation of the Truth in Lending Act (Count I), a violation of the Equal Credit Opportunity Act (Count II), a violation of the Fair Debt Collection Practices Act (Count III), a violation of the Illinois Commercial Code (Count IV), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), and a violation of the Uniform Deceptive Trade Practices Act (Count VI). Pursuant to Federal Rule of Civil Procedure 12(b)(6) defendant Lynch Ford has brought a Motion to Dismiss Counts I, II, and III of the Complaint. For the reasons set forth below, the motion is granted. Since we decline to exercise jurisdiction over the state law claims in Counts IV, V, and VI, this case is hereby dismissed.

BACKGROUND

For the purposes of this motion the following facts, which come from Leguillou's Complaint, are taken as true. In the beginning of March of 1999, Leguillou saw an advertisement placed by Lynch Auto Group in the Sun Times offering instant credit. The advertisement indicated that "we can help almost any credit situation." On March 12, 1999, Leguillou went to the Lynch Auto Group and inquired about purchasing a Chrysler. After a credit check, the Lynch representative told Leguillou that he did not qualify to purchase a Chrysler due to his poor credit history. The Chrysler representative suggested that Leguillou return later to speak with a Ford salesman.

On March 19, 1999, Leguillou returned to Lynch Auto to speak to Mr. Mayuga, a Ford representative. Mayuga told Leguillou of a Lynch special offer of "0.9% financing or $1,000." Leguillou responded that, because of his poor credit rating, he did not believe he would qualify for 0.9% financing. Mayuga then offered financing at 11.9%. Leguillou then looked for a car and found a 1999 Ford Ranger priced at $15, 565.00. Mayuga told Leguillou that "If we shake, we got a deal." They shook hands, and then Leguillou went to speak with the finance manager at Lynch.

That same day Leguillou signed a retail installment contract which indicated that "by signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." The retail installment contract stated an annual percentage rate of 11.90%, an amount financed of $15, 943.57, and a finance charge of $5,392.43.

Leguillou also signed the vehicle purchase order. The back of the vehicle purchase order contained the following paragraph.

> Failure to Obtain Proposed Financing. Seller and Purchaser intend that the retail installment contract for ordered motor vehicle executed between Seller and Purchaser will be assigned to a sales finance agency of the Seller's choice. If financing cannot be obtained within 5 business days for purchaser according to the proposals in the retail installment contract executed between Seller and Purchaser, either Seller or Purchaser may cancel the agreement shown on the face of this Order and the retail installment contract. In the event of such a cancellation if the vehicle hereunder has been delivered to Purchaser, Purchaser shall, within 2 days of such notice, return the motor vehicle to Seller's place of business and Seller shall return to the purchaser all of the purchaser's deposit less Seller's cost of repairing damages occurring to the vehicle while in the Purchaser's possession and this contract shall then be null and void.

***2** After finishing the paperwork, the finance manager told Leguillou that the deal was completed and the car belonged to him. Leguillou suggested that he leave the truck at Lynch until April 1, 1999, because he would not have a parking space. After much encouragement from Mayuga, Leguillou took the truck with him.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

On March 27, 1999, Leguillou received a letter from Fairlane Credit, LLC dated March 24, 1997. This letter informed Leguillou that financing was not available at 11.9%, but approval could be granted on other terms. Leguillou was instructed to pick up information about a different interest rate at the place where he purchased the vehicle. The letter disclosed that the credit agency could not discriminate against applicants on the basis of race, color, religion, nation origin, sex, marital status, or age. Further, the letter informed Leguillou that he had a right to a written statement of the reasons for Fairlane's decision to deny him credit and informed Leguillou of the credit reporting agencies which it used to get Leguillou's credit history.

Lynch demanded the return of the vehicle. Leguillou refused to return the vehicle, and Lynch Ford repossessed the vehicle from his place of business on April 18, 1999.

Leguillou thereafter filed a six Count Complaint. In Count I he alleges a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a)(4), and Regulation Z, 12 C.F.R. §§ 226.5 and 226.8(b). In Count II he alleges a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 202.9. In Count III Leguillou alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(6)(A). In Count IV he alleges a violation of Section 9-503 of the Illinois Commercial Code, 810 ILCS 5/9-503. In Count V Leguillou alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10, and a violation of the Illinois Constitution. In Count VI he alleges a violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 505/2.

DISCUSSION

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests whether the plaintiff has stated a claim, not whether the plaintiff will prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). In deciding a motion to dismiss, the court must assume all facts in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff. *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 648 (7th Cir.1997). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

I. *Count I: The Alleged Violation of the Truth in Lending Act*

Leguillou alleges that Lynch violated TILA because the original disclosed credit terms were not implemented. Since they were never implemented, Leguillou argues that the terms could not have been accurate.

***3** Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608, 612 (7th Cir.1982). Creditors must clearly and accurately reveal to consumers the cost of credit, including all finance charges. 15 U.S.C. § 1605, 1638, 1632; 12 C.F.R. § 226.18 (1995). The stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold. *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973). The disclosures made prior to the consummation of a credit transaction must accurately reflect the cost of the transaction. 15 U.S.C. §§ 1601, 1638; 12 C.F.R. § 226.17(b); *Jasper v. New Rogers Pontiac, Inc.,* No. 99 C 5195, 1999 WL 1024522 (N.D.Ill. Nov. 5, 1999).

Defendant contends that all of the disclosures were accurate when Leguillou signed the contract. This contention means that we must determine when the parties formed a binding credit transaction. *Quake Const. Inc., v. American Airlines, Inc.,* 141 Ill.2d 281, 288, 565 N.E.2d 990 (1990). Under the facts here, the plaintiff was contractually bound by the price and credit terms stated in the retail installment contract upon signing the retail installment contract. When Leguillou left the dealership with the automobile, he had a right to possession of the automobile. Leguillou would have become the owner when he paid for the car.

The provision of the retail installment contract at issue here allowed either party to void the agreement in the event that financing could not be obtained. That provision is a condition subsequent to the contract. The contract was not conditional on acquiring

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

financing, however, either party had the option of canceling the contract if financing could not be obtained.

Disclosures must be accurate at the time a deal is consummated. *Graves v. Tru-Link Fence Co.,* 905 F.Supp 515, 520 (N.D.Ill.1995). Thus, the required disclosures here must have been accurate when Leguillou signed the retail installment contact. The disclosures were accurate when Leguillou signed the contract. Leguillou does not allege that the disclosures would have been inaccurate if he had been offered credit at 11.9%. Thus, there is no TILA violation.

Plaintiff relies on Judge Holderman's decision in *Williams v. Thomas Pontiac* to show that a factually similar claim has survived a motion to dismiss. *Williams,* No. 99 C 882, 1999 WL 787488 (N.D.Ill.1999). Williams signed an agreement and took possession of an automobile. The dealership was unable to obtain financing, but it had inaccurately informed Williams that her financing had been approved. Further, the provision in Williams' contract indicated that the dealership must notify her of a failure to obtain financing within three days, but the dealership took longer to inform her of the failure to obtain credit. The time lag between when the dealership contractually indicated that it would inform Williams of its failure to obtain financing and when the dealership actually informed Williams was critical to Judge Holderman's determination that sufficient facts were alleged to defeat a motion to dismiss.

*4 The facts alleged in the instant Complaint show that Leguillou was treated differently than Williams. In this case, Fairlane made its decision not to extend Leguillou credit within the contractually mandated period of five business days. Further, Leguillou was well aware of his potential credit difficulties. Based on the facts alleged in the Complaint, no TILA violation occurred.

Plaintiff entered into a fully binding contract with Lynch Ford. A condition subsequent was used to cancel the contract. This set of facts does not undermine the validity of the original TILA disclosures. Accurate disclosures do not become violations because they are rendered inaccurate by subsequent events. "If information disclosed in accordance with [TILA] is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." 15 U.S.C. § 1634. Since the disclosure was accurate when the contract was completed, the lack of available financing at 11.9% does not render the disclosures actionable. Thus, Leguillou fails to state a claim under TILA and this Count is dismissed.

II. *Count II: The Alleged Violation of the Equal Credit Opportunity Act*

Leguillou alleges that Lynch violated ECOA because Lynch never issued a disclosure explaining Fairlane's decision not to extend credit. Under ECOA, every applicant who receives an adverse action on a credit decision is entitled to a statement of the reasons for such action. 15 U.S.C. § 1691(d)(2). Since Fairlane's disclosure satisfied any duty to disclose, this count is dismissed.

Lynch qualifies as a creditor under ECOA, and must comply with some of the mandates. "Any person who regularly arranges for the extension, renewal, or continuation of credit" is charged with issuing a statement to applicants explaining why credit was denied. 15 U.S.C. § 1691a(e). The Official Staff Interpretation to ECOA indicates that "for certain purposes, the term 'creditor' includes persons such as real estate brokers who do not participate in credit decisions but who regularly refer applicants to creditors or who select or offer to select creditor to whom credit requests can be made. These persons must comply with § 202.4, the general rule prohibiting discrimination, and with § 202.5(a), on discouraging applications." 12 C.F.R. pt. 202 Supp. I, Official Staff Interpretations. Lynch Ford regularly refers applicants to creditors and selects creditors to whom credit applications can be made. Thus, Lynch is included in the definition of creditor found in ECOA. However, no provision of ECOA requires a creditor who does not participate in the credit decision to separately report to the applicant.

Further, the ECOA states that "where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed." 15 U.S.C. § 1691(d)(4). This section foresees that multiple entities may be involved, but only requires one notification to the applicant.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

***5** Thus, we hold that if only one credit agency is used, only one notification and one statement of reasons is necessary to satisfy the ECOA reporting requirement. Leguillou was informed of the credit decision by Fairlane. Thus, Lynch's duty was satisfied and Count II is dismissed because it fails to state a claim upon which relief can be granted.

III. *Count III: The Alleged Violation of the Fair Debt Collection Practices Act*

Leguillou alleges that Lynch violated the FDCPA when it repossessed his vehicle without holding a security interest. This claim is dismissed because Lynch did not rely on a security interest. Lynch Ford was the owner and had a contractual right to possess the vehicle after the contract was canceled.

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). The FDCPA sets standards for interactions between debtors and collectors. At issue here is the FDCPA prohibition against repossessing property if "there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

Leguillou alleges that a debt was created by the original contract. Even if no debt was legally created, Leguillou argues that he believed Lynch's representations that a contract was fully formed. Further, Leguillou alleges that the repossession agency is governed by the FDCPA and that Lynch is liable for the actions of the repossession agency under general vicarious liability principles. Plaintiff is unable to cite any precedent applying this novel interpretation of the FDCPA.

According to the contract signed by Leguillou, Lynch could cancel the contract if financing could not be obtained. Leguillou had a contractual obligation to return the vehicle to Lynch within two days of receiving notice of the cancellation. Leguillou does not argue that the contractual provision was invalid. Thus, Lynch's right to the vehicle and its ownership of the vehicle is undisputed.

Leguillou appears to be arguing that Lynch did not have a right to repossess the vehicle because Fairlane's letter indicated that other terms might be available. This does not change the fact that, once the credit application was rejected, Lynch had a contractually derived right to cancel the contract. Leguillou no longer had any legal interest in the vehicle. Lynch was not exercising a creditor's right to repossess a vehicle which secured a debt; Lynch was only repossessing its own vehicle. The FDCPA was meant to protect the rights of debtors. However, since Leguillou never actually owned the car, he never became a "debtor" for FDCPA purposes.

In *Williams*, Judge Holderman considered a similar claim and found that the dealership was not responsible for the "allegedly illegal acts of its debt-collector agent who reposed her automobile. *Williams*, 1999 WL at *4. Leguillou distinguishes Judge Holderman's analysis by citing two cases which he claims support vicarious liability in this situation. The first case, *Simpson v. Merchants Recovery Bureau, Inc.* held that a *sua sponte* summary judgment was improper because the plaintiff did not have notice or an opportunity to respond. *Simpson*, 171 F.2d 546 (7th Cir.1999). Plaintiff argues that this holding means that we should not dismiss his vicarious liability claims without allowing him an opportunity to present evidence supporting the theory. We are not dismissing Leguillou's claim on vicarious liability grounds, however, we are dismissing it because this situation is not governed by the FDCPA.

***6** The second case cited by Leguillou is *Randle v. G.C. Services, L.P.*, 25 F.Supp.2d 849 (N.D.Ill.1998). In *Randle*, Judge Gettleman held that agency principles apply to hold a limited partner of a debt collection agency liable. Neither case cited, nor any precedent this Court was able to find applies the FDCPA in a situation similar to the instant case.

Lynch Ford owned the automobile. Since they were not recovering property serving as a security interest, the FDCPA provides plaintiff no relief. No set of facts could exist which would state a FDCPA claim. Thus, Count III is dismissed.

CONCLUSION

The 12(b)(6) Motion to Dismiss brought by Lynch Ford is granted as to Counts I, II, and III because those Counts fail to state a claim upon which relief can be granted. Because we decline to exercise jurisdiction over the state law claims contained in Counts IV, V and VI, we dismiss those Counts. This case is terminated.

It is so ordered.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Curtis JASPER, Plaintiff,
v.
NEW ROGERS PONTIAC, INC., Defendant.

No. 99 C 5195.

Nov. 5, 1999.

*MEMORANDUM OPINION*

KOCORAS, J.

***1** This matter comes before the Court on Defendant's motion to dismiss Count I of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

BACKGROUND

For purposes of this motion, the following facts, which come from Plaintiff's Amended Complaint are taken as true. On November 28, 1998, Plaintiff Curtis Jasper ("Jasper") purchased a 1996 Buick Riviera from Defendant New Rogers Pontiac. Jasper tendered a down payment of $2,000 and traded in his 1993 Pontiac Grand Am, for which he was credited $9,500. Jasper also signed a retail installment contract (the "Contract"), which included Truth in Lending disclosures and provided for an annual percentage rate of 22.95%. The Contract had a rider, which, in relevant part, made the Contract null and void if New Rogers Pontiac was unable to assign the Contract to a sales financing agency and if New Rogers Pontiac so informed the buyer, Jasper, of its inability.

A few weeks later, a salesperson from New Rogers Pontiac informed Jasper that it was unable to assign Jasper's Contract. The salesperson then asked Jasper to return the car and suggested that New Rogers Pontiac could sell Jasper a cheaper car. On December 27, 1998, New Rogers Pontiac repossessed the vehicle. Jasper was unaware that the car had been repossessed and so, filed a police report for auto theft. After discovering the car had been repossessed, Jasper went to New Rogers Pontiac and demanded that his down payment and trade-in vehicle be returned. New Rogers Pontiac complied, but deducted $300 for the costs of repossession.

Count I of Plaintiff Jasper's Amended Complaint alleges a violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). Also, Jasper, in two other counts, brings two claims based on state law. In this action, Defendant New Rogers Pontiac moves to dismiss Count I for failing to state a claim under TILA. Moreover, because the Court's jurisdiction over this action is predicated on federal subject matter jurisdiction over the TILA claim, Defendant moves the Court to dismiss the entire claim in conjunction with the dismissal of the TILA claim for lack of subject matter jurisdiction.

LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992), *cert. denied,* 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992). With these principles in mind, the Court evaluates Defendant's motion.

DISCUSSION

***2** Plaintiff Jasper asserts in Count I of his Amended Complaint that Defendant New Rogers Pontiac violated TILA and Regulation Z. According to Jasper, the disclosures made under the Contract should have been labeled as "estimates" because they were not actual terms of the contract, but rather terms Jasper could have received under the Contract,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

subject to financing approval of a third-party. New Rogers Pontiac claims that TILA does not require it to label disclosures as estimates simply because a condition subsequent could void the Contract altogether and all the terms and disclosures thereunder. Thus, New Rogers Pontiac argues that Jasper's claim does not allege a violation under TILA.

Jasper misunderstands TILA and Regulation Z, by which TILA is implemented. TILA requires certain disclosures prior to the consummation of a credit transaction. *See* 15 U.S.C. §§ 1601, 1638; 12 C.F.R. § 226.17(b); *Janikowski v. Lynch Ford, Inc.*, No. 98 C 8111, 1999 WL 608714 (N.D.Ill. Aug. 5, 1999). Plaintiff Jasper does not contend that New Rogers Pontiac did not make the appropriate disclosures under TILA. Rather, Jasper claims that the disclosures were estimates and should have so been labeled. Regulation Z provides:

> (c) Basis of disclosures and use of estimates.
>
> (1) The disclosures shall reflect the terms of the legal obligation between the parties.
>
> (2)(i) If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate. 12 C.F.R. § 226.17(c).

Jasper seems to reason that New Rogers Pontiac could not make any accurate disclosures without knowing whether it could ultimately assign the Contract. Thus, according to Jasper, Regulation Z required New Rogers Pontiac to label the disclosures as estimates.

However, New Rogers Pontiac's ability to void the Contract between Jasper and New Rogers Pontiac does not affect the substance of the disclosures but affects the timing of the Contract's consummation. *See Graves v. Tru-link Fence Co.*, 905 F.Supp. 515, 519-20 (N.D.Ill.1995). "Consummation" of a contract occurs when a consumer becomes contractually obligated on a credit transaction. *See* 12 C.F.R. § 226.2(13). If the ability to assign the Contract was a condition precedent, then the Contract was never consummated and a binding obligation never formed. *See id.* at 519. However, if it was a condition subsequent, a binding obligation was created, which could then be discharged upon the failure to assign the Contract. *See id.* at 520.

Thus, New Rogers Pontiac's ability to void the Contract is significant to Jasper as a condition subsequent. With it, Jasper can support his allegation that he consummated the Contract on November 28, 1998 when he signed the Contract, paid the down payment, and traded in his old car, rather than when and if New Rogers Pontiac assigned his Contract. So, New Rogers Pontiac had an obligation to make its disclosures before Jasper signed the Contract on November 28, 1998. 12 C.F.R. § 226.17(b). New Rogers Pontiac did so.

***3** The fact that the entire Contract was later voided upon the occurrence of the condition subsequent does not affect the accuracy of the disclosures made on November 28, 1998. Jasper only takes issue with the voidability of the Contract and nowhere alleges that the disclosures were otherwise inaccurate. However, the voidability of the Contract alone does not make the disclosures inaccurate so as to necessitate their being labeled as estimates. Thus, Jasper has cited no violation of TILA by New Rogers Pontiac and has failed to state a claim in Count I of his Amended Complaint. The Court dismisses Plaintiff Jasper's Count I. The Court also dismisses Plaintiff Jasper's Amended Complaint in its entirety because without the TILA claim the Court lacks jurisdiction over the remaining state law claims.

CONCLUSION

For the reasons set forth above, we grant Defendant New Rogers Pontiac's motion to dismiss Count I and the Amended Complaint in its entirety.

1999 WL 1024522, 1999 WL 1024522 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Nicholas MALCHOW, Plaintiff,
v.
GMI ACQUISITION, INC., d/b/a Car/Truck City, Defendant.

No. Civ.01-1662 RHK/RLE.

Oct. 1, 2002.

Thomas J. Lyons, Thomas Lyons & Associates, Saint Paul, Minnesota, and Thomas J. Lyons, Jr., P.A., Saint Paul, Minnesota, for Plaintiff.

Daniel J. Boivin and Konstandinos Nicklow, Meshbesher & Spence, Ltd., Minneapolis, Minnesota, for Defendant.

MEMORANDUM OPINION AND ORDER

KYLE, J.

Introduction

*1 This action arises out of Plaintiff Nicholas Malchow's purchase of a used truck from Defendant GMI Acquisition, Inc., doing business in the Pine City, Minnesota, area as Car/Truck City. Malchow brought suit in federal court alleging that GMI violated the Truth in Lending Act ("TILA") by (1) failing to deliver the requisite disclosures to him in a form he could keep prior to him signing the documents for the transaction and (2) treating the disclosures in the retail installment sales contract as estimates without marking them as such. Malchow also complains that GMI violated Minnesota's Motor Vehicle Retail Installment Sales Act ("MVRISA"), Minn.Stat. § 168.71(a)(1), by the manner in which it documented the transaction. Malchow further contends that GMI invaded his privacy when it caused employees of a repossession company to be sent to his father's home to locate and repossess the truck after Malchow stopped making payments to GMI.

Before the Court is GMI's Motion for a Judgment on the Pleadings or, Alternatively, for Summary Judgment. For the reasons set forth below, the Court will grant GMI's motion with respect to the TILA claim and will dismiss the pendant state law claims over which the Court has supplemental jurisdiction.

Background

On March 26, 2001, Malchow purchased a truck from GMI, agreeing to finance the purchase through the dealership. Malchow complains that the circumstances under which he signed the documents for the transaction were coercive; the sales agent for GMI held the documents to the table, preventing him from picking them up and reading them. Malchow further asserts that he did not actually receive copies of the vehicle purchase contract and retail installment contract until after he had signed them. In addition, although the sales documents indicated GMI's receipt of a $5,000 down payment that was not included in the purchase price being financed, Malchow complains that the documents failed to reflect his agreement with GMI to pay the $5,000 down payment to GMI in installments. After Malchow signed the financing documents, GMI assigned the loan to Pine City State Bank.

Malchow asserts that the retail installment contract he signed also did not reflect his agreement with GMI regarding a service contract and credit insurance. Malchow claims that GMI told him that these products were necessary to obtain financing for the vehicle but that he could cancel them after thirty days. When he tried to cancel the service contract and credit insurance, however, GMI would not let him do so. Malchow alleges that GMI told him that the bank required him to keep the service contract and insurance. Malchow went to Pine City State Bank to try to cancel the products. The bank's agent told him that it would not include credit insurance and a service contract on a loan unless the borrower (i.e., Malchow) specifically requested them. Malchow contends that the bank instructed and advised him to stop making payments to GMI on the down payment.

*2 After Malchow stopped paying installments to GMI on the down payment, GMI retained a collection agency, First National Repossessor, Inc. ("FNR"), to repossess the truck. Employees of FNR went to the home of Malchow's father. Presenting themselves as agents of the United States Census Bureau, FNR's employees began asking Malchow's father questions about his son. Malchow's father became concerned and threatened to call the sheriff, at which point the FNR employees admitted who they really worked for and why they were there. Among other things, FNR's employees told Malchow's father that Malchow was

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works