delinquent on his payments for the truck.

Analysis

I. Standard of Decision

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings may only be granted if the moving party clearly establishes that no material issue of fact remains to be resolved and the moving party is entitled to judgment as a matter of law. *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir.2001). In determining whether material issues of fact exist, the court must accept all facts pled by the non-moving party as true and draw all reasonable inferences in favor of the non-moving party. *Id.; Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c).

On a motion for summary judgment, the court must view the evidence in the record, including any affidavits submitted in support of and in opposition to summary judgment, together with whatever inferences may be reasonably drawn from that evidence, in the light most favorable to the nonmoving party. *See Graves v. Arkansas Dep't of Fin. & Admin.,* 229 F.3d 721, 723 (8th Cir.2000); *Calvit v. Minneapolis Pub. Schs.,* 122 F.3d 1112, 1116 (8th Cir.1997).

> If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*St. Jude Med. Inc. v. Lifecare Int'l., Inc.,* 250 F.3d 587, 595 (8th Cir.2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). GMI has attacked the legal sufficiency of all three causes of action asserted in Malchow's Amended Complaint. The Court begins with the TILA claim.

II. The TILA Claim

GMI presents two arguments against Malchow's TILA claim. First, GMI asserts that Malchow fails to state an actionable TILA claim because there are no damages for the alleged violations. GMI points out that Malchow has alleged no *actual* injury arising from GMI's alleged violations and seeks no *actual* damages; Malchow has requested only statutory damages, as provided for in § 1640(a)(2)(A)(i) of the TILA. GMI argues that statutory damages are not available for Malchow's claim because the provisions he alleges have been violated are not those for which statutory damages can be awarded.

*3 Second, GMI argues that its conduct toward Malchow complied with the TILA. GMI asserts that it satisfied the statutory disclosure requirements of § 1638(b), as construed in *Vang v. Morrie's Minnetonka Ford,* 2001 WL 1589614 (D.Minn. Dec. 11, 2001) (Frank, J.) and *Peter v. Village Imports Co.,* 2001 WL 1640130 (D.Minn. Oct. 9, 2001) (Doty, J.), because it presented Malchow with the required terms of the transaction before he signed the contract. GMI contends that, if Malchow had wished to, he could have taken the forms away and engaged in comparison shopping for credit terms. As for Malchow's allegation that GMI violated the TILA by treating the disclosures as "estimates" without marking them as such, GMI contends that this Court has already rejected the substance of Malchow's argument in another case. For the reasons set forth below, the Court concludes that GMI's argument regarding statutory damages is dispositive of the TILA claim.

Malchow concedes that he suffered no actual injury and incurred no actual damages as a result of GMI's alleged TILA violations; he acknowledges that he is seeking only the statutory damages described in § 1640(a)(2)(A)(i) for violations of the timing requirements set forth in 15 U.S.C. § 1638(b)(1). (Pl.'s Mem. Opp'n to Summ. J. at 20 .) The civil liability provision of the TILA, § 1640(a), states in pertinent part as follows:

> *Except as otherwise provided in this section,* any creditor who fails to comply with any requirement imposed under [15 U.S.C. §§ 1631-1649], including any requirement under section 1635 of this title, or [15 U.S.C. §§ 1666 to 1666j or §§ 1667 to 1667f] with respect to any person is liable to such person in an amount equal to the sum of-
>
> (1) any actual damage sustained by such person as a result of the failure; [and]
>
> (2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction,....
>
> * * * * *

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

> *... In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title,....*

15 U.S.C. § 1640(a) (emphasis added). Thus, the statutory damages authorized in subparagraph (2)(A)(i) are available for violations of any requirement of 15 U.S.C. §§ 1631-1649, "[e]xcept as otherwise provided in this section." *See Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 990 (7th Cir.), *cert. denied,* 531 U.S. 820 (2000). Malchow argues that "the failure to deliver disclosures in the manner provided by § 1638(b)(1) must be considered a failure to disclose the required terms under § 1638(a)." (Pl.'s Mem. Opp'n to Summ. J. at 21.) Hence, GMI's failure to *timely* disclose the "amount financed," "finance charge," "annual percentage rate," "total of payments," and "number, amount and due dates of payments" before extending credit to Malchow constituted a failure to disclose those terms as required by § 1638(a), triggering GMI's liability for statutory damages.

*4 The Court of Appeals for the Seventh Circuit has considered and rejected the argument Malchow makes here.

> Plaintiffs insist that information has been "disclosed" in compliance with § 1638 only if all of the TILA and all of Regulation Z have been followed. On this understanding, although the lenders informed the borrowers of correctly calculated finance charges and annual percentage rates, and made all other mandatory disclosures, they did not comply with the sections requiring these disclosures, because they did not make the disclosures in the form required by other parts of the statute and regulations. The lenders may have informed borrowers of the statutory items, plaintiffs insist, but they did not "disclose" these items. Thus, according to plaintiffs, any violation of § 1632(a), § 1638(a)(8), or § 1638(b)(1) also violates § 1638(a)(3) (which requires the lender to disclose the finance charge), § 1638(a)(4) (which requires the lender to express the finance charge as an annual percentage rate), and so on. Because § 1638(a)(3) and (a)(4) are on the list of violations eligible for statutory damages, plaintiffs say that they must prevail. Yet accepting this argument would destroy the point of § 1640(a). *What sense would it make to omit § 1632, § 1638(a)(1), (a)(2) (in part), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), and all of § 1638(b), (c), and (d) from the candidates for statutory damages if they came in through the back door on the theory that all formal shortcomings infect the disclosures of the items that are on the list?* Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a).

*Brown,* 202 F.3d at 991 (emphasis added). [FN1] Congress structured § 1638 so that the requirements of *what* a creditor must disclose are separate and distinct from the requirements of *when and how* the creditor must make those disclosures. [FN2] The plain language of § 1640(a) provides that statutory damages are available "*only* for failing to comply with *the requirements of* ... paragraph (2) ... (3), (4), (5), (6), or (9) of section 1638(a)." 15 U.S.C. § 1640(a) (emphasis added). Had Congress intended to allow the recovery of statutory damages for violations of the timing requirements of subsection 1638(b)(1), it would have included that subsection in the sentence enumerating the provisions for which statutory damages are available.

FN1. Malchow urges the Court to follow the reasoning of, *inter alia,* Judges Enslen and Hillman of the United States District Court for the Western District of Michigan, who have disagreed with Judge Easterbrook's analysis in *Brown. See Daenzer v. Wayland Ford, Inc.,* 193 F.Supp.2d 1030 (W.D.Mich.2002) (Enslen, J.); *Lozada v. Dale Baker Oldsmobile, Inc.,* 145 F.Supp.2d 878 (W.D.Mich.2001) (Hillman, J.). The Court does not find their analyses persuasive and observes that, even within the Western District of Michigan, opinion is divided as to whether a violation of § 1638(b) can give rise to a claim for statutory damages. *See Kilbourn v. Candy Ford-Mercury, Inc.,* 209 F.R.D. 121, 125-28 (W.D.Mich.2002) (Quist, J.) (analyzing the reasoning in *Brown* and *Lozada* and holding that statutory damages are not available for violations of the requirements of § 1638(b)).

FN2. Indeed, Malchow acknowledges that "[p]ut simply, 15 U.S.C. § 1638(a) tells the lender *what* has to be disclosed, while 15 U.S.C. § 1638(b) tells the lender *how* to disclose it." (Pl.'s Mem. Opp'n to Summ. J. at 21 (emphasis added).)

Judge Easterbrook noted that Congress added the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

portion of § 1640(a) under consideration to the TILA "in 1980 to curtail damages awards for picky and inconsequential formal errors." *Brown,* 202 F.3d at 991 (citing the Truth in Lending Simplification and Reform Act, Pub.L. 96-221, 94 Stat. 132, 168 (1980)). He observed that "[i]t would hardly be appropriate to undo Congress' decision by reading matters of form into the substantive provisions for which statutory damages are authorized." *Id.* This Court finds Judge Easterbrook's reasoning persuasive. Applying that same analysis to the facts of this case, the Court concludes that statutory damages are not available for the TILA violations Malchow has alleged. Having failed to state a cause of action for which relief can be granted, the Court will dismiss the TILA claim with prejudice.

III. Supplemental Jurisdiction

***5** Pursuant to 28 U.S.C. § 1367(c), a district court may, under certain circumstances, decline to exercise supplemental jurisdiction over state law claims that are otherwise so related to the claim or claims in the action over which the court has original jurisdiction as to form part of the same case or controversy. 28 U.S.C. § 1367(c). The district court's power to exercise jurisdiction under § 1367(a) is ordinarily determined on the pleadings; however, "the court's decision to exercise that jurisdiction 'is one that remains open throughout the litigation." ' *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1287 (8th Cir.1998) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139-40 (1966)). In deciding whether a federal court should exercise supplemental jurisdiction after all federal claims have been resolved, the court must look to the factors set forth in § 1367(c), including whether the pendant claims raise novel or complex issues of state law, and whether they substantially predominate over the federal question claim that has been resolved. *See Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1037 (8th Cir.1999).

After the district court dismisses claims over which it has original jurisdiction, it is within the Court's discretion to dismiss the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). "[W]hen state and federal claims are joined and all federal claims are dismissed ... the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity." *American Civil Liberties Union v. City of Florissant,* 186 F.3d 1095, 1098-99 (8th Cir.1999). In this case, Malchow's claim for "intrusion upon seclusion" raises novel questions of state law with respect to a common law cause of action that is evolving and on which Minnesota's appellate courts have provided little guidance. In addition, Malchow's state statutory MVRISA claim involves issues distinct from those presented by his TILA claim. In light of the foregoing, the Court will decline to exercise supplemental jurisdiction over these claims and will dismiss them without prejudice.

Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, IT IS ORDERED that Defendant GMI Acquisition, Inc.'s Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment (Doc. No. 24) is GRANTED as to Count II of the Amended Complaint, alleging violations of the Truth in Lending Act. That claim is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that, as to Counts I and III of the Amended Complaint, the Court hereby declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, those claims are hereby DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

2002 WL 31185865 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, W.D. Michigan.

Renay MOLENBEEK, Plaintiff,
v.
WEST MICHIGAN AUTO & TRUCK OUTLET, INC., a Michigan corporation, Defendant.

No. 1:00-CV-286.

March 15, 2001.

*OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT*

MILES, Senior J.

*1 In this action, plaintiff Renay Molenbeek has sued defendant West Michigan Auto & Truck Outlet, Inc. ("WM Auto") for violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as well as various state laws, when it sold her a 1997 Jeep Grand Cherokee on March 21, 2000. The matter is currently before the court on cross-motions for summary judgment, namely: (1) Plaintiff's Motion for Partial Summary Judgment (docket no. 11), and (2) Defendant's Motion for Summary Judgment (docket no 12).

For the following reasons, the court (1) grants Molenbeek's motion, to the extent that it seeks a partial summary judgment that WM Auto violated the TILA, (2) denies WM Auto's motion, to the extent that it seeks dismissal of all claims on the merits, and (3) dismisses the state law claims contained in Counts Two through Six of the Complaint without prejudice.

*I*

WM Auto was, at all times relevant to this action, a dealer of used motor vehicles. On March 21, 2000, Renay Molenbeek went to WM Auto's place of business in Muskegon, Michigan and negotiated with the company's president, Patrick Allen, for the purchase of a 1997 Jeep Grand Cherokee. Molenbeek informed Allen that she already had credit approval for the purchase at Huntington Bank.

Molenbeek purchased the vehicle from WM Auto as part of a closed-end credit transaction. At the time she made the purchase, Molenbeek signed a number of documents, one of which was titled "Motor Vehicle Purchase Agreement." The purchase agreement provided for the purchase of the vehicle at price of $ 16,957.10. With the addition of title and license fees and deduction of a $ 500 down payment, the total amount financed for the purchase was $ 18,063.10. The agreement provided for 54 monthly payments of $ 469.55, for a total sale price of $ 25,855.70, including the down payment.

The purchase agreement which Molenbeek signed contained the following TILA disclosures:

| | |
|---|---|
| Annual Percentage Rate | 15.49% |
| Finance Charge | $ 7,292.60 |
| Amount Financed | $18,063.10 |
| Total of Payments | $25,355.70 |
| Total Sale Price | $25,855.70 |

In addition to these TILA disclosures, the purchase agreement contained the following "notice," printed in boldface type on the same page with the TILA disclosures:

> Notice to buyer: Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.

A second page of the agreement also contained the following printed in boldface type:

> Notice to buyer: Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.
> You acknowledge that you have received a copy of this agreement with all blanks filled and that you have read it and understand it.

Molenbeek's signature appears on the agreement in two places: once below the "Notice to buyer" printed

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

on the second page of the agreement, and once below the "acknowledgment" printed on this same page. The agreement was prepared in multiple copies, one of which, intended for the purchaser, was marked "Buyer's Copy."

*2 Before closing the transaction with Molenbeek, Allen reviewed the purchase agreement with her. However, notwithstanding the acknowledgment which Molenbeek signed, Allen failed to provided her with her copy of the purchase agreement, although he did provide her with copies of the other documents which she had signed. In an affidavit filed with the court, Allen states that it was the custom and practice of WM Auto to assemble all documents immediately after the closing of a purchase and sale, and to provide the purchaser with a copy of each document. However, Allen also states that in Molenbeek's case, without intending to do so, he failed to detach the "Buyer's Copy" of the purchase agreement from the multi-page form, and he therefore failed to include it among the documents which he provided to her after the closing.

On March 22, 2000, the day following the purchase, Molenbeek's husband, Matthew Molenbeek, telephoned WM Auto and spoke with Allen. Matthew Molenbeek informed Allen that Renay Molenbeek had not received her copy of the purchase agreement. After checking the company's files, Allen informed Matthew Molenbeek that his wife's copy of the agreement was still in WM Auto's file. Allen also offered to mail the copy to Renay Molenbeek, or otherwise deliver it to her in any manner which she desired. According to Allen, Renay Molenbeek subsequently telephoned him and advised that she would pick up her copy of the purchase agreement when she came to WM Auto for service on the vehicle. She did so on March 29, 2000, eight days after completing the purchase.

On April 21, 2000, Molenbeek filed this action against WM Auto. The first paragraph of her complaint alleges that WM Auto had engaged in "unlawful practices in connection with the sale and finance of a motor vehicle [,]" specifically, by "fail[ing] to provide [Molenbeek] with a copy of the retail installment contract at the time of execution." Complaint at 1, ¶ 1. The complaint asserts that this failure violated the TILA, a violation for which Molenbeek seeks both actual damages and statutory damages, equal to twice the amount of the finance charge, pursuant to 15 U.S.C. § 1640(a). Molenbeek also seeks damages based on WM Auto's alleged violation of various Michigan statutes, namely the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 *et seq.*, the Michigan Motor Vehicle Installment Sales Contracts Act ("MVISCA"), M.C.L. § 556.301 *et seq.*, the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 492.101 *et seq.*, and the Michigan Vehicle Code ("MVC"), M.C.L. § 257.1 *et seq.*

*II*

In her motion, Molenbeek asks the court to enter partial summary judgment on all issues of liability under the TILA, the MVISCA, the MVSFA, and the MCPA, based on WM Auto's failure to provide her with a copy of the purchase agreement "in the time frame required by law[.]" Plaintiff's Motion for Partial Summary Judgment, at 1. In its motion, WM Auto also seeks summary judgment on all issues of liability presented by the Complaint.

*3 Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) also provides that a summary judgment, "interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322-323. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson,* 477 U.S. at 248.

*A*
Truth in Lending Act Claim

In her motion, Molenbeek argues that the court should enter partial summary judgment against WM Auto for violation of the TILA, based on Allen's failure to provide her with a copy of the purchase agreement at the time of execution. For its part, in contrast, WM Auto argues that this fact alone is insufficient to establish liability.

The TILA, 15 U.S.C. § 1638(a), requires the creditor in each consumer credit transaction other than under an open end credit plan to disclose the following items, among others:

(1) the identity of the creditor;
(2) the amount financed;
(3) the finance charge;
(4) the annual percentage rate;
(5) the total of payments;
(6) the number, amount, and due dates or period of payments;
(7) the total sale price;
(8) descriptive explanations of specified terms;
(9) where the credit is secured, a statement that a security interest has been taken.

15 U.S.C. § 1638(a). Regarding the form and timing of the required disclosures, 15 U.S.C. § 1638(b) provides that the disclosures required under subsection (a) "shall be made before credit is extended." Section 1638(b) further provides, in relevant part, that the disclosures "shall be conspicuously segregated from all other items, data, or information provided in connection with a transaction[.]"

*4 Regulation Z, the statute's implementing regulation, further specifies how the required disclosures should be made. This regulation requires the creditor to make the disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a). Regulation Z also requires the creditor to make the disclosures "before consummation of the transaction." 12 C.F.R. § 226.17(b). "Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13).

In a virtually identical case, *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4 th Cir.2000), a Fourth Circuit panel recently reversed a district court's entry of summary judgment in favor of an auto dealer which, like WM Auto, had failed to provide the buyer with the document containing the TILA disclosures until after both parties had already signed the agreement consummating the purchase. Following this authority, the court is constrained to conclude that Molenbeek is correct, and that WM Auto violated § 1638(b)(1) of the TILA and Regulation Z by failing to provide her with the required written disclosures until several days after consummating her purchase.

WM Auto has asserted, as an affirmative defense, that it incurs no liability under the TILA based on the "correction of errors" defense. Under § 1640(b),

> A creditor or assignee has no liability under this section ... for any failure to comply with any requirement imposed under this part ... if within sixty days after discovering an error, ... and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed[.]"

Here, WM Auto undisputedly "corrected its error" of failing to provide Molenbeek with her written copy of the required disclosures by providing them at a later date. However, it is doubtful that the defense provided in § 1640(b) applies where, as here, the error is not a written or calculation error. In any event, WM Auto did not "notif[y] the person concerned of the error"; instead, Matthew Molenbeek notified WM Auto of the error. Under the circumstances, the court concludes that the "correction of errors" defense provided by § 1640(b) does not apply.

WM Auto has also asserted, as another affirmative defense, that it incurs no liability under the TILA based on the "bona fide error" defense. Under § 1640(c),

> A creditor or assignee may not be held liable in any action brought under this section ... for a violation of this subchapter if the creditor or assignee shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

*5 Here, the affidavit of Mr. Allen provides uncontradicted evidence that WM Auto's violation of § 1638(b)(1) and Regulation Z was not intentional. However, what his affidavit does not do is to establish that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

"It has been held that [§ 1640(c) ] requires procedures designed to avoid and prevent errors which might slip through procedures aimed at good faith compliance, 'a safety catch or rechecking mechanism." ' *Gallegos v. Stokes*, 593 F.2d 372, 376 (10 th Cir.1979) (citing *Mirabal v. General Motors*, 537 F.2d 871, 878 (7 th Cir.1976), *overruled on other grounds*, *Brown v. Marquette Savings and Loan Ass'n*, 686 F.2d 608 (7 th Cir.1982)). WM Auto has presented no evidence that it maintained any procedure or preventive mechanism for catching errors. While Allen states that it was WM Auto's custom "to assemble all documents immediately after the closing of a purchase and sale and to provide the purchaser with a copy of each document," this practice does not include a rechecking mechanism, nor does Allen's affidavit specifically indicate "the maintenance of procedures reasonably adapted" to ensuring that the buyer has reviewed the required disclosures "before credit is extended" as contemplated by § 1639(b)(1). Under the circumstances, the "bona fide error" defense is not available to WM Auto.

Although Molenbeek's motion does not raise the issue of damages, WM Auto argues that the facts of this case disclose no injury, or even inconvenience, suffered by Molenbeek. Instead, WM Auto argues, Molenbeek is seeking to obtain a windfall based on a simple, honest error. However, WM Auto need have no fear of Molenbeek obtaining a windfall, for under circumstances such as those presented here Congress has limited a plaintiff's remedy to actual damages.

While § 1640(a)(1) provides for an award of "any actual damage" sustained by the claimant as a result of the creditor's failure to comply with the TILA's disclosure requirements. awards of statutory damages as specified in § 1640(a)(2) are available only for violations of specifically enumerated sections of the statute. In this regard, § 1640(a)(2)(B) provides, in pertinent part, as follows:

In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph 2 only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title.

"Section 1640(a) says that statutory damages are available 'only' for violations of enumerated subsections and rules," and "omission from the list means no statutory damages." *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 991-92 (7 th Cir.2000). [FN1]

FN1. "The TILA receives a hypertechnical reading[.]" *Brown v. Payday Check Advance, Inc.*, 202 F.2d 987, 989 (7 th Cir.2000) (citation omitted).

*6 Statutory damages are therefore available only for the creditor's failure to disclose the amount financed, required by § 1638(a)(2); the finance charge, required by § 1638(a)(3); The annual percentage rate, required by § 1638(a)(4); the total of payments, required by § 1638(a)(5); the number, amount, and due dates or period of payments, required by § 1638(a)(6); or a statement that a security interest has been taken, required by § 1638(a)(9). Each of these violations relates to the substance of the disclosures. However, Molenbeek's sole complaint is not that WM Auto violated any subsection of § 1638(a), but rather that it violated the requirements of 1638(b)(1), which address not the substance of the disclosures but rather their form and timing. *See* Complaint at 4, § 15 (alleging that WM Auto "violated the federal Truth in Lending Act by failing and/or refusing to provide plaintiff with the disclosures required by 15 U.S.C. § 1638, *before credit was extended as required by 15 U.S.C. § 1638(b)(1))* (emphasis supplied). The court has been made aware of no authority which indicates that statutory damages are available to a plaintiff for violation of the form and timing requirements of § 1638(b)(1), where the defendant contends, and the plaintiff has not disputed, that plaintiff reviewed the written disclosures before finalizing the transaction.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

[FN2]

FN2. *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4 th Cir.2000), which supports a finding of liability under circumstances similar to those present here, does not address the issue of damages. The panel in that case simply reversed the district court's order granting summary judgment in favor of the creditor and remanded the case "for entry of judgment in favor of the plaintiff and for a determination of appropriate relief." 221 F.3d at 692.

In her Complaint, Molenbeek has requested, as part of her claim for relief, that she be awarded both actual damages pursuant to § 1640(a)(1) as well as statutory damages equal to "twice the amount of any finance charge in connection with the transaction." or $ 14,585.20, pursuant to § 1640(a)(2)(A)(1). WM Auto has argued that the facts of this case disclose no injury, or even inconvenience, suffered by Molenbeek. Molenbeek has made no reply to this argument. While this is not fatal to her TILA case for purposes of this motion, the court is troubled by Molenbeek's apparent assumption that she is a candidate for statutory damages. She is not. [FN3] Her actual damages, if any, are an issue to be addressed at a later date.

FN3. Although Molenbeek at one point nominally states that the issue of damages is not a part of her present motion, she includes in her supporting brief a footnote in which she argues that "[e]ven 'technical' violations of the TILA result in mandatory civil liability[,]" and that a TILA plaintiff "need not prove that he or she has suffered actual monetary damages in order to recovery the statutory damages and attorney's fees." Brief in Support of Plaintiff's Motion for Partial Summary Judgment, at 12, n. 1 (citing *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 799-801 (6 th Cir.1996)). However, it is simply not true that all TILA violations result in awards of statutory damages imposed by 15 U.S.C. § 1640(a)(2).

*B*

State Law Claims

Molenbeek's six-count complaint includes only one federal claim, the TILA claim, but a total of five claims asserted under Michigan law. Although 28 U.S.C. § 1367(a) provides the court with supplemental jurisdiction over these state law claims, subsection (c) of § 1367 provides that a district court may decline to exercise supplemental jurisdiction over a state law claim, even where the federal claim has not been dismissed, if the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). [FN4]

FN4. The parties have not addressed the issue of supplemental jurisdiction in their motions. However, subject matter jurisdiction is an issue that may be raised at any time, even sua sponte by the court itself. *E.g., In re Millers Cove Energy Co.*, 128 F.3d 449, 450 (6 th Cir.1997).

Here, Molenbeek has greatly expanded what would have been a simple, straightforward federal action by asserting a kitchen-sink variety of state law claims, in an obvious attempt to assure some sort of financial recovery. At this point, it is still not even clear what, if any, damages Molenbeek suffered as a result of WM Auto's federal violation. While the court certainly cannot fault Molenbeek's strategy, the court believes that the bulk of her difficulties with WM Auto should be resolved in a state court, where they could originally have been brought and could presumably still be brought. [FN4] Because Molenbeek's state law claims overwhelmingly predominate over her federal claim, a claim for which her right to any damages at all is in question, the court declines to exercise supplemental jurisdiction over Molenbeek's state law claims asserted in Counts Two through Six of the Complaint.

FN4. Under 15 U.S.C. § 1640(e), Molenbeek could have filed her TILA claim as well as her multiple state law claims in a Michigan court. *See id.* ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction"). A dismissal under § 1367 tolls the period of limitations for any of Molenbeek's state law claims while they are pending in this court and for a period of 30 days after dismissal, unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d).

*CONCLUSION*

*7 The court grants Molenbeek's motion for partial summary judgment, to the extent that it seeks a judgment that WM Auto violated the TILA. The court denies WM Auto's motion for summary judgment, to the extent that it seeks summary judgment in its favor on the TILA claim asserted in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Count One of the Complaint. The court denies both parties' motions to the extent that they seek determinations on the merits of the state law claims asserted in Counts Two through Six of the Complaint. The court declines to exercise supplemental jurisdiction over Counts Two through Six, which are hereby dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(2).

2001 WL 1602654 (W.D.Mich.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Dean Hermann PETER, on behalf of himself and all other similarly situated
Plaintiff,
v.
VILLAGE IMPORTS COMPANY, a Minnesota corporation, Defendants.

No. 01-12 DSD/JMM.

Oct. 9, 2001.

Eric L. Crandall, Esq., Crandall Law Office, Stillwater, counsel for plaintiff.

Gregory J. Johnson, Esq. and Johnson & van Vliet, St. Paul, counsel for defendants.

ORDER

DOTY, J.

*1 This matter is before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Based on a review of the file, record, and proceedings herein, the court denies plaintiff's motion and grants defendant's motion.

BACKGROUND

On March 29, 2000, David Hermann Peter ("Peter") visited Wayzata Mitsubishi and expressed an interest in purchasing a 2000 Mitsubishi Eclipse GT automobile. (Belisle Aff. ¶ 3; *see also* Johnson Aff. ¶ 3). Peter wanted to trade in his 1998 Ford Explorer to purchase an Eclipse. (Belisle Aff. ¶ 3). Peter agreed to purchase an Eclipse for $23,452 and agreed to accept a trade-in allowance of $16,252 on his Explorer. (*Id.*) As a result, the total taxable sale was $7,200. (*Id.*) The total amount due on delivery, adding together the total taxable sale ($7,200), applicable sales tax ($648), fees ($323), and the outstanding lien on Peter's Explorer ($11,700) was $19, 691. (*Id.*) Peter executed a purchase contract setting forth the terms of the purchase. [FN1]

FN1. Peter's memorandum in opposition to defendant's motion for summary judgment mentions that only he signed the purchase contract. While no one at the dealership signed the agreement when Peter bought the Eclipse, there is no dispute that Village Imports performed its part of the bargain and that Peter left the dealership with the Eclipse.

After Peter executed the purchase contract and filled out a credit application, he met with the finance manager in Wayzata Mitsubishi's business department. (*Id.* ¶ 4). Peter agreed to make a purchase down payment of $7,991 to reduce the amount financed from $19,691 to $11,700. (*Id.*) Wayzata Mitsubishi arranged financing for the purchase. (*Id.*) The purchase contract stated: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." (Johnson Aff. Ex. 1).

After the parties discussed financing, Peter was presented with an installment contract for his review. (Belisle Aff. ¶ 4). Financing was arranged through Mitsubishi Motors Credit of America ("MMCA") over a 36-month period at 0.00 percent annual percentage rate ("APR") with no payments for the first 90 days. (Johnson Aff. Ex. 2). The installment contract that was presented to Peter contained a segregated truth-in-lending disclosure box entitled, "DISCLOSURES PURSUANT TO TRUTH IN LENDING ACT," which also identified in bold, the "ANNUAL PERCENTAGE RATE" (0.00%), "AMOUNT FINANCED" ($11,700.00), "FINANCE CHARGE" ($0.00) "TOTAL OF PAYMENTS" ($11,700.00) and the "TOTAL SALE PRICE" of $24,243.00. (*Id.*)

Peter reviewed the installment contract, including the Truth in Lending Act (TILA) disclosures, and signed the contract. (Belisle Aff. ¶ 4.) Immediately above Peter's signature is a provision stating, in bold "NOTICE TO THE BUYER: 1. Do Not Sign This Contract Before You Read It OR If It Contains Any Blank Spaces. 2. You Are Entitled To An Exact Copy Of The Contract Before You Sign." (Johnson Aff. Ex. B). After signing, Peter handed the installment contract back to the Finance Manager. (Belisle Aff. ¶ 4). The Finance Manager then tore off the carbon copy marked "Borrower" on the bottom and gave Peter that copy. [FN2] (*Id.*) Peter then took delivery of the vehicle (Belisle Aff. ¶ 4).

FN2. In response to Wayzata Mitsubishi's request of admission, Peter acknowledged

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works