that he reviewed all of the terms of the installment contract, including the TILA disclosures, before he executed the contract and that he received a copy of the installment contract. (Johnson Aff. Ex. A).

*2 Peter filed this action against Village Imports alleging that Village Imports had engaged in unlawful practices in connection with the sale and finance of the motor vehicle, specifically, by failing to provide Peter with a copy of the retail installment contract prior to the time of execution. Village Imports now brings this motion for summary judgment, and Peter brings a motion for partial summary judgment. For the reason stated, defendant's motion is granted and plaintiff's motion is denied.

DISCUSSION

To prevail on a motion for summary judgment, the moving party must demonstrate to the court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed.R.Civ.P. 56(c). For purposes of summary judgment, a fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for the nonmoving party. *Id.* No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. However, if a plaintiff cannot support each element of its claim, summary judgment must be granted, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23. With this standard at hand, the court considers the parties' cross motions for summary judgment.

A. No TILA Violation Has Occurred.

Peter argues that the court should enter partial summary judgment against Village Imports for violation of TILA based on Village Imports' failure to provide Peter with a "timely" copy of the finance agreement prior to the time of execution. Village Imports argues that it did provide a copy of the finance agreement in accordance with TILA.

TILA, 15 U.S.C. § 1601 *et seq.* (1994), as implemented by Regulation Z, 12 C.F.R. pt. 226 (2000), was enacted by Congress as a tool "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ... and to protect the consumer against inaccurate and unfair credit billing ... practices." [FN3] 15 U.S.C. § 1601(a); *see also First Nat'l Bank v. Office of the Comptroller,* 956 F.2d 1456, 1461 (8th Cir.1992). To meet this end, TILA mandates that creditors make specific disclosures when extending credit to consumers. *See* 15 U.S.C. § 1638(a). These disclosures include the identity of the creditor, the amount financed, the finance charge and the total number of payments. *Id.* TILA also requires that before consummation of the deal, consumers be given a copy of the credit term that they can keep to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available." 15 U.S.C. § 1601(a). Because TILA is to be broadly construed to provide protection for the consumer, any failure to disclose information as required by TILA or Regulation Z results in a technical violation. *Riggs v. Gov't Emp. Financial Corp.,* 623 F.2d 68 (9th Cir.1980).

FN3. In his memorandum of law in support of his motion for partial summary judgment Peter raises an allegation that the terms of the contract are not those that were orally negotiated by the parties. Since this claim was never pleaded in the underlying complaint the court will not address it. The court further notes that TILA is concerned with disclosures concerning the cost of credit. Peter's challenge to the bargain reached by the parties does not fall under the purview of TILA. TILA "is not intended as a vehicle for pursuing contract actions" whereby the purchaser can challenge the terms of the bargain. *Paull v. Chrysler Credit Corp.,* 544 F.Supp. 848, 851 (N.D.Ill.1982), *aff'd* 705 F.2d 944. Thus, Peter's claim concerning the oral agreements will not be considered by the court in determining the propriety of summary judgment.

*3 Village Imports is a creditor as defined by 15 U.S.C. § 1602(f). Peter is a consumer as defined by 15 U.S.C. § 1602(h). The deal that took place on March 29, 2000, between Peter and Village Imports was a credit sale under 15 U.S.C. § 1602(g). *See also*

*12 C.F.R. § 226 .2(a)(16)* (defining "credit sale" as "a sale in which the seller is a creditor").

Peter argues that the disclosure of the credit terms contemporaneous with his obligation to sign the sales contract failed to provide him with an opportunity to "shop" for a better interest rate. [FN4] While the Eighth Circuit has never directly addressed this issue, the court believes that giving a buyer the credit terms on a form that he is to sign complies with the timing requirements of TILA. The retail installment contract given to Peter contained all of the credit and financing terms of the transaction. Peter was given the opportunity to read the contract before he signed it. Peter did not become obligated on the credit transaction until he signed the contract. If Peter did not like the terms, he could have chosen not to sign at the time and taken the agreement with him to "shop" for a better rate. Peter made the choice to sign immediately and did not shop around. Village Imports cannot be held liable for Peter's decision.

FN4. The court finds this argument peculiar since Peter obtained an interest-free loan from Village Imports through MMCA. It is difficult to conclude that there may be a creditor willing to give a lower rate of interest than 0.00 percent.

Peter cites *Polk v. Crown Auto, Inc.* for the proposition that providing a buyer a retail installment contract itself for the buyer to sign does not satisfy the mandate and policy of TILA. 221 F.3d 691 (4th Cir.2000). The court disagrees. The principal holding in *Polk* is that an auto dealership cannot give a buyer a copy of his credit terms after the consummation of a transaction. *Id.* The dealer must provide a detailed disclosure of the credit terms in writing before consummation of the transaction. *Id.* at 692. Furthermore, *Polk* is distinguishable because in that case the dealer explained the credit terms orally, had the buyer sign forms and then gave the buyer the full written disclosures in a form that he could keep. *Id.* at 691. Here, Peter was given an unsigned copy of the retail installment contract (which contained the TILA disclosures), he reviewed it and then signed it. The court finds that Village Imports satisfied TILA when it gave Peter the unsigned contract containing the TILA disclosures and Peter had the opportunity to defer signing it if he found the terms unacceptable.

B. No Actual or Statutory Damages

Even if the court adopted Peter's overly broad interpretation of TILA, Village Imports would still be entitled to summary judgment since Peter cannot demonstrate either statutory or actual damages. Statutory damages are only available for violations of 15 U.S.C. § 1638(a)(2), (3), (4), (5), (6) and (9). Otherwise, an individual is limited to suing for actual damages. 15 U.S.C. § 1640(a)(4). Village Imports's alleged failure to provide timely disclosures is a purported violation of 15 U.S.C. 1638(b) for which *only* actual damages are available. *Id.* And Peter cannot assert any actual damages here since he received an interest rate of 0.00 percent. In other words, the court does not believe that Peter can reasonably contend that he suffered any actual damages on the basis of his alleged inability to shop around for a better rate since the one he received in the retail installment contract he signed with Village Imports was 0.00 percent. In sum, even if TILA were applicable, Peter would not be entitled to recover any statutory or actual damages.

CONCLUSION

*4 Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment is granted;

2. Plaintiff's motion for partial summary judgment is denied; and

3. Plaintiff's complaint is dismissed with prejudice

LET THE JUDGMENT BE ENTERED ACCORDINGLY.

2001 WL 1640130 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.

Cheritylee Ann STEVENS and David Matthew Stevens, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
BROOKDALE DODGE, INC., Defendant.

No. Civ. 00-2632 JELJGL.

Dec. 27, 2002.

ORDER

LANCASTER, J.

*1 Defendant Brookdale Dodge, Inc. extended credit to Plaintiffs Cheritylee Ann Stevens and David Matthew Stevens in connection with their purchase of a used car from Defendant's lot. Plaintiffs now seek to recover statutory damages under the Truth in Lending Act, 15 U.S.C. §§ 601-1667f (2000) (TILA), claiming that Defendant violated the timing requirements of the TILA and Regulation Z, 12 C.F.R. pt. 226 (2001), by failing to make required disclosures in a written form that Plaintiffs could keep before the transaction was consummated. [FN1] The parties' cross-motions for summary judgment were referred to the Honorable Susan R. Nelson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) (2000), and D. Minn. R. 72.1(c)(1). In a Report and Recommendation issued August 27, 2002, the Magistrate Judge recommended that Plaintiffs' motion be granted, and that Defendant's motion be denied. Defendant objected to the Report and Recommendation as permitted by 28 U.S.C. § 636(b)(1), and D. Minn. R. 72.1(c)(2). For the reasons given below, the Court declines to adopt the Magistrate Judge's recommendations.

FN1. In an Amended Complaint filed after the cross-motions for summary judgment, Plaintiffs added a claim that Defendant violated Regulation Z, 12 C.F.R. § 226.17(c)(2)(i), by failing to label its disclosures as estimates. The Magistrate Judge declined to rule on this claim because (1) neither party formally moved for summary judgment on the claim; (2) the claim was not discussed "in any detail until the parties' reply memoranda"; and (3) "the parties made almost no mention of [the] claim during oral argument." The Court agrees that it would be inappropriate to rule on Plaintiffs estimate claim at this time.

I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2000), and 15 U.S.C. § 1640(e)
.

II. BACKGROUND

Defendant is an automobile dealership located in Brooklyn Center, Minnesota. (Martinez Aff. ¶ 2.) On January 11, 2000, Plaintiffs visited Defendant's lot and agreed to purchase a 1999 Dodge Stratus. (*Id.* ¶ 3; Stevens Aff. ¶ 2.) Plaintiffs executed a vehicle purchase contract, which stated in part: "If DEALER [Defendant] is arranging credit for you [Plaintiffs], this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you [Plaintiffs] have accepted the credit extended." (Martinez Aff. ¶ 3; *Id.*, Ex. A.) Plaintiffs agreed to have Defendant arrange credit for them. (*Id.* ¶ 4.)

Defendant's finance and insurance manager, Michael Martinez, filled out a retail installment contract (RIC) and printed a packet comprising the original RIC and several carbon copies. (*See id.*; *Id.*, Ex. C; Stevens Aff. ¶ 5.) The parties agree that Martinez "presented" the RIC to Plaintiffs for their signature. (Martinez Aff. ¶ 4; Stevens Aff. ¶¶ 4-5.) According to Plaintiffs, however, Martinez did not "give" them the RIC; rather, he held it "firmly" to his desk with his hand as he stood before them and explained the financing terms. (Stevens Aff. ¶¶ 6-10.) For his part, Martinez claims that he sat behind his desk, and that he did not hold the RIC to his desk with his hand. (Martinez Supp. Aff. ¶ 2.)

Displayed on the front of the first page of the RIC was a box labeled "DISCLOSURE STATEMENT." (Martinez Aff., Ex. C.) The information provided in the box included the "Amount Financed," the "FINANCE CHARGE," the "ANNUAL PERCENTAGE RATE," the "Total of Payments," the "Number of Payments," "Amount of Payments," information related to "When Payments Are Due," and a statement indicating that "I [Plaintiffs] give you [Defendant] a security interest in the goods or property being purchased." (*Id.*) The RIC also disclosed additional terms, among them: "I

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

[Plaintiffs] have the right and opportunity to obtain financing for the vehicle from any source that I [Plaintiffs] choose, and I [Plaintiffs] have chosen to obtain such financing through the Seller [Defendant]." (*Id.*)

*2 Plaintiffs signed the RIC directly below the following acknowledgement: "I [Plaintiffs] have read this contract and received a complete copy." (*Id.; Id.* ¶ 5; Stevens ¶ 9.) After Plaintiffs executed the RIC, Martinez removed one of the carbon copies from the packet and gave it to them. (Martinez Aff. ¶ 5; Stevens ¶ 9.)

III. DISCUSSION

A. Standard of Decision

When, as here, a party objects to a magistrate judge's report and recommendation on a motion for summary judgment, a district court must "make a de novo determination of those portions [of the report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); D. Minn. R. 72.1(c)(2). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, courts must view the evidence in the record and the inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

B. Timing Claim

The purpose of the TILA is to "assure a meaningful disclosure of credit terms so that ... consumer[s] will be able to compare more readily the various credit terms available to [them] and avoid the uninformed use of credit, and to protect ... consumer[s] against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Accordingly, the TILA requires creditors to disclose certain credit terms to consumers. The list of required disclosures for the type of credit transaction at issue in this case is found at 15 U.S.C. § 1638(a). Requirements as to the timing and form of the disclosures are set forth in 15 U.S.C. § 1638(b)(1), which provides that the disclosures must "be made before the credit is extended," and must be "conspicuously segregated from all other terms, data, or information provided in connection with [the] transaction." Regulation Z, 12 C.F.R. pt. 226, promulgated by the Federal Reserve System's Board of Governors pursuant to rulemaking authority granted in the TILA, also addresses the timing and form of the disclosures. Regulation Z provides in part that the disclosures must be made "clearly and conspicuously in writing, in a form that the consumer may keep," *id.* § 226.17(a)(1), "before consummation of the transaction," *id.* § 226.17(b).

*3 In this case, Plaintiffs concede that the RIC contained all of the disclosures required by 15 U.S.C. § 1638(a), but they claim that Defendant failed to provide them with a copy of the RIC in a written form they could keep before the transaction was consummated, in violation of 15 U.S.C. § 1638(b)(1), and 12 C.F.R. § 226.17(a)-(b). Assuming that Defendant *did* violate the TILA's timing requirement, an issue the Court does not decide, Defendant is nevertheless entitled to summary judgment on this claim because Plaintiffs have failed to establish that they are entitled to damages.

Plaintiffs admit that they have not suffered any actual damages. They contend, however, that a creditor who violates the TILA's timing requirements is liable for statutory damages pursuant to 15 U .S.C. § 1640(a)(2). Section 1640(a) begins with the general rule that creditors who violate the TILA are liable for statutory damages "[e]xcept as otherwise provided in this section." It then goes on to provide several exceptions to this rule. Of relevance here is the exception for violations "[i]n connection with the disclosures referred to in section 1638," which states:

> In connection with the disclosures referred to in section 1638 of this title, a creditor shall [be liable for statutory damages] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law for any term which the Board has

> determined to be substantially the same in meaning ... as any of the terms referred to in any of those paragraphs of section 1638(a) of this title.

15 U.S.C. § 1640(a). For simplicity's sake, the Court will refer to the language just quoted as "the Section 1638 Exception."

There are two lines of authority on the question whether section 1640(a) authorizes statutory damages for a violation of section 1638(b)(1). The leading case holding in the negative is *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir.2000). In *Brown*, the Seventh Circuit reasoned that, because a violation of section 1638(b)(1) is a violation "[i]n connection with the disclosures referred to in section 1638," the Section 1638 Exception applies. *Brown*, 202 F.3d at 991. Under the Section 1638 Exception, a creditor is liable for statutory damages *"only* for failing to comply with" section 1635, various subsections of section 1638(a), or certain state law requirements. *Brown*, 202 F.3d at 991. Because section 1638(b)(1) does not appear on this "closed list," a creditor who violates section 1638(b)(1) is not liable for statutory damages. *Brown*, 202 F.3d at 991. Several cases, including three cases from district courts in the Eighth Circuit, have reached the same conclusion. *See, e.g., Wojcik v. Courtesy Auto Sales, Inc.*, No. 8:01CV506, 2002 WL 31663298, at *5 (D.Neb. Nov. 25, 2002); *Malchow v. GMI Acquisition, Inc.*, Civ. No. 01-1662, 2002 WL 31185865, at *3-5 (D.Minn. Oct. 1, 2002) (Rosenbaum, C.J.); *Kilbourn v. Candy Ford-Mercury, Inc.*, 209 F.R.D. 121, 125-28 (W.D.Mich.2002); *Collins v. Ray Skillman Olds-GMC Truck Inc.*, No. IP 00-1281-C-T/K, 2001 WL 1711466, at *3-4 (S.D.Ind. Dec. 3, 2001); *Peter v. Village Imports Co.*, Civ. No. 01- 12, 2001 WL 1640130, at *3 (D.Minn. Oct. 9, 2001) (Doty, J.); *Crowe v. Joliet Dodge*, No. 00-C-8131, 2001 WL 811655, at *4 (N.D.Ill. July 18, 2001); *Nigh v. Koons Buick Pontiac GMC Inc.*, 143 F.Supp.2d 535, 549 (E.D.Va.2001).

*4 The leading case holding that statutory damages *are* available for a creditor's violation of section 1638(b)(1) is *Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F.Supp.2d 878 (W.D.Mich.2001). *Lozada* based its holding on a narrow interpretation of the Section 1638 Exception's introductory phrase, which limits the exception to violations "[i]n connection with the disclosures referred to in section 1638." *Lozada*, 145 F.Supp.2d at 888. *Lozada* reasoned that "[t]he only 'disclosures referred to in section 1638' are contained in section 1638(a)." *Lozada*, 145 F.Supp.2d at 888. The remaining subsections of section 1638, including section 1638(b)(1), merely address the form and timing of those disclosures, rather than the disclosures themselves. *Lozada*. 145 F.Supp.2d at 888. As a result, the Section 1638 Exception does not apply to violations of section 1638(b)(1); instead such violations fall within the general rule that a creditor who violates the TILA is liable for statutory damages. *Lozada*, 145 F.Supp.2d at 888. Other cases reaching the same conclusion include *Daenzer v. Wayland Ford, Inc.*, 193 F.Supp.2d 1030, 1035-37 (W.D.Mich.2002), and *Walters v. First State Bank*, 134 F.Supp.2d 778, 782 (W.D.Va.2001).

In essence, *Lozada* holds that the Section 1638 Exception applies only when a creditor violates section 1638(a). It is evident from the statutory language, however, that the exception is not so narrow. Again, the Section 1638 Exception provides that, "[i]n connection with the disclosures referred to in section 1638 of this title, a creditor shall [be liable for statutory damages] only for failing to comply with the requirements of," among other things, *"section 1635 of this title."* (Emphasis added.) This reference to section 1635 demonstrates that the scope of the Section 1638 Exception extends beyond violations of section 1638(a). The connection between section 1635 and the "disclosures referred to in section 1638" is rather tenuous. Section 1635 addresses a consumer's right to rescind certain credit transactions; it does not even cross-reference section 1638. Thus, given that a violation of section 1635 is a violation "[i]n connection with the disclosures referred to in section 1638," the Court concludes that a violation of section 1638(b)(1), which sets forth requirements as to the timing and form of the disclosures referred to in section 1638(a), also falls within the Section 1638 Exception. The Court concludes further that, under the terms of that exception, a creditor who violates section 1638(b)(1) is not liable for statutory damages. *See Brown*, 202 F.3d at 991; *Wojcik*, 2002 WL 31663298, at *5; *Malchow*, 2002 WL 31185865, at *3-5; *Kilbourn*, 209 F.R.D. at 125-28; *Collins*, 2001 WL 1711466, at *3-4; *Peter*, 2001 WL 1640130, at *3; *Crowe*, 2001 WL 811655, at *4; *Nigh*, 143 F.Supp.2d at 549.

Plaintiffs next argument is that Defendant's alleged violation of section 1638(b)(1) must be treated as a violation of section 1638(a)(3)-(6). They insist that a creditor does not "disclose" a credit term for purposes of section 1638(a)(3)-(6) unless the disclosure occurs at the time specified in section 1638(b)(1). The

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Seventh Circuit considered a similar argument in *Brown*:

> *5 [A]ccording to plaintiffs, any violation of ... § 1638(b)(1) *also* violates § 1638(a)(3) (which requires the lender to disclose the finance charge), § 1638(a)(4) (which requires the lender to express the finance charge as an annual percentage rate), and so on. Because § 1638(a)(3) and (a)(4) are on the list of violations eligible for statutory damages, plaintiffs say that they must prevail. Yet accepting this argument would destroy the point of § 1640(a)(2). What sense would it make to omit ... § 1638(a)(1), (a)(2) (in part), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), and all of § 1638(b) ... from the candidates for statutory damages if they came in through the back door on the theory that all formal shortcomings infect the disclosures of the items that *are* on the list? Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a).

*Brown*, 202 F.3d at 991; *see also Malchow*, 2002 WL 31185865, at *4; *Kilbourn*, 209 F.R.D. at 126-27; *but see Lozada*, 145 F.Supp.2d at 889 ("Since § 1638(b)(1) expressly provides the form and time in which disclosures under § 1638(a) must be made, § 1638(a) disclosures may not be said to be made unless and until they are made in compliance with § 1638(b)(1)."). The Court finds *Brown* persuasive on this point, and it therefore rejects Plaintiffs argument that a violation of section 1638(b)(1) necessarily results in a violation of section 1638(a)(3)-(6).

Because Plaintiffs concede that they have not suffered any actual damages as a result of Defendant's alleged violation of section 1638(b)(1), and because Plaintiffs cannot recover statutory damages for such a violation, the Court grants Defendant's Motion for Summary Judgment with respect to Plaintiffs' timing claim.

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 17] is GRANTED.
2. Plaintiffs' Cross-Motion for Summary Judgment [Docket No. 21] is DENIED.

2002 WL 31941158 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, E.D. Virginia.

Arthur TRIPP, et al. Plaintiff.
v.
CHARLIE FALK AUTO, et al. Defendant.

No. CIV. 3:00CV512.

Aug. 22, 2001.

MEMORANDUM OPINION

SPENCER, District J.

*1 This matter is before the Court on the Parties' Motions for Summary Judgment. For the reasons discussed below, the Defendants' Motion is GRANTED and the Plaintiffs' Motion is DENIED.

Procedural History

On August 8, 2000, a Complaint filed with the Clerk's Office named Arthur and Meldredth Tripp as the Plaintiffs. On September 29, 2000, Plaintiffs filed an Amended Complaint adding Timothy Shepherd, Christie Shepherd and others similarly situated as Plaintiffs. The Amended Complaint sets forth five causes of action: Violations of the Truth in Lending Act; Violations of the Federal Odometer Act; Conversion; Violations of the Virginia Consumer Protection Act; and Violation of Va.Code § 8.9-507 (UCC). Charlie Falk's Auto Wholesale, Inc. (CFAW) is named in all five claims. Future Finance Company, Inc. (Future) is named in two claims. The Individual Defendants, Charlie Falk, Sr., Katherine Falk, and Fred Hailey, are only named in one claim.

On November 7, 2000, this Court issued an order denying the Defendants' Emergency Motion for Temporary Sealing and granting their Motion to Stay Litigation for Thirty Days. During that thirty-day period, the Defendants filed Motions to Dismiss in addition to Motions (1) to Quash, (2) for Protective Order, (3) to Transfer Case, (4) to Stay, and (5) for a Limit of Discovery to Class Discovery. On January 3, 2001, this Court issued an Order granting the Defendants' Motion to Stay All Discovery Pending Resolution of Dispositive Motions, and Limit of Discovery to Class Discovery, and for Protective Order.

This Court granted the motion to dismiss the Individual Defendants and denied CFAW's and Future Finances' motions to dismiss. This Court has also taken under advisement the outstanding discovery motions of the Parties pending the conclusion of Phase I discovery and the disposition of Phase I summary judgment motion. Phase I issues are limited to those specifically applicable to and arising specifically from the Tripp transaction on August 7, 1999. The summary judgment motions now before this Court are those focused on Phase I issues alone.

Undisputed Facts

Plaintiffs negotiated a deal at the Broad Street location of Charlie Falk's Auto Wholesale (CFAW) on August 7, 1999, for the purchase of a 1994 Ford Taurus. The Tripps intended to finance the purchase. After the Plaintiffs had selected the vehicle and negotiated the basic terms of the deal, a CFAW employee placed several documents before them, highlighting and explaining important clauses in each. Among these documents were a Buyer's Order; a Motor Vehicle Installment Sales Contract, Truth-in-Lending Disclosures, Promissory Note and Security Agreement; an Application for Certificate of Title and Registration; a Re-Assignment of Title by Virginia Motor Vehicle Dealer form; a document titled Important Notice; and a Future Finance Company GAP Waiver.

The Buyer's Order contains an odometer disclosure of 67,154 miles and includes a paragraph titled "Seller's Right to Cancel" which articulates the buyer's understanding and agreement that the sale is "contingent upon Future Finance Company, Inc.... approving and purchasing the [retail installment sale] contract from [CFAW]." Buyer's Order, Paragraph 10. This Paragraph also contains the buyer's understanding and agreement that "in the event the contract is not purchased from [CFAW] for whatever reason, the contract shall be voidable at the option of [CFAW]." *Id.* In the event of a voided contract under this Paragraph the "Buyer shall receive Buyer's cash downpayment and other payments Buyer may have made to Seller... Buyer understands and agrees that Buyer will be responsible for an amount of money equal to one-half (1/2) the allowable Internal Revenue Service rate per mile for the number of miles Buyer placed on the vehicle and that this amount, along with any charges for physical damage or expenses to recover the vehicle, if applicable, will be deducted from the money Buyer is to receive." *Id.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*2 The Motor Vehicle Installment Sale Contract, Truth-in-Lending Disclosures, Promissory Note and Security Agreement (Credit Contract), contains both the TILA disclosures and a clause under the heading "Agreement to Return Vehicle if Financing is not Approved" which is identical to Paragraph 10 in the Buyer's Order. The Credit Contract also reflects the inclusion of a $395.00 processing fee in the amount financed. The Important Notice contains the language of Buyer's Order Paragraph 10 in addition to an affirmation above the signature line which reads: "All buyers and co-buyers are requested to read this notice carefully and sign below acknowledging complete understanding of the content."

The Re-Assignment of Title by Virginia Motor Vehicle Dealer (Re-Assignment Form) and Application for Certificate of Title and Registration (title Application) forms contain odometer disclosure showing the mileage on the Taurus as 67,154 on the date of purchase, August 7, 1999. The Re-Assignment Form and the GAP Waiver identify Future Finance as the lienholder. CFAW required the Plaintiff to have them process the title documents for the Taurus with the DMV. The articulated purpose of this requirement is to ensure that the lienholder's interest is properly recorded. The Plaintiffs were also required to procure insurance naming Future Finance as the payee.

Mr. and Mrs. Tripp signed each of the documents placed before them thereby consummating the deal and contractually binding themselves. The deal, as negotiated on August 7, 1999, required the Tripps to make a $1,000 downpayment. On August 7, 1999, before driving the Taurus off the lot, Mr. and Mrs. Tripp made a payment of $500. The balance was paid in two installments on August 18, and 24, 1999.

At some later date, CFAW represented to the Tripps that Future Finance did not approve the deal as negotiated but would reconsider it if they were willing to add $500 to their downpayment. The Tripps refused. CFAW repossessed the Taurus on or about August 24, 1999. Mr. Tripp went to the Broad Street location of CFAW on or about August 25, 1999, and requested the immediate return of his downpayment. He was told that he could only receive a refund that day if he went to the Norfolk dealership. Mr. and Mrs. Tripp traveled to Norfolk and spoke with Bradley Furman. Mr. Furman again informed the Tripps of the option to purchase the vehicle with an increased downpayment. The Tripps again rejected this offer, and requested a refund of their downpayment. Mr. Furman told them they were entitled to $656.80 after the contractual mileage charge was deducted and that they would be required to sign a Release in order to receive the refund that day. The Tripps signed the Release and accepted their refund.

This Release bars "any and all actions, causes of action, suits, debts, obligations, sums of money, accounts, covenants, contracts, agreements, promises or any claims, demands or rights of any kind whatsoever, in law or equity, which Tripp ever had,, [sic] now has or hereafter may, shall or may have by reason of any matter, cause or thing pertaining to the purchase and/or financing of one automobile from CFAW." *See* Release.

*3 There is agreement that the Plaintiffs were presented with the copies that they signed as those documents were explained by a CFAW employee. Thus, the pivotal questions are whether the Tripps were (1) given the opportunity to review the documents; (2) able to take the unexecuted documents with them to think about and shop with; and (3) whether they should have been made specifically aware of this option.

## Issues Presented

### *The Release*

The pivotal and potentially dispositive issue in this case is the validity of the Release signed by the Plaintiffs on August 25, 1999. If the Release is valid and binding then the Plaintiffs are barred from asserting any of their claims against CFAW. In the alternative, if the Release is invalid, this Court must decide whether CFAW's actions in the August 7, 1999, transaction with Mr. and Mrs. Tripp were violative of either or both the Federal Odometer Act and the Truth-in-Lending Act (TILA).

### *Federal Odometer Act Violations*

This Court must determine whether CFAW's actions during the August 7, 1999, transaction violated the placement requirement of the Odometer Act. If a violation is found, this Court must further decide what type of damages are warranted. Determining the existence of an Odometer Act violation on these facts requires deciding (1) whether the Act allows for the use of a Re- Assignment Form by a Dealer where space remains on the title: (2) whether the Act requires the Plaintiffs to prove CFAW's intent to defraud; and (3) whether CFAW ever transferred

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ownership of the Taurus to Mr. and Mrs. Tripp.

*Truth-in-Lending Violations*

The questions here are whether the Truth-in-Lending Act's pre-consummation requirement was satisfied by CFAW's employee's explanation and presentation of a single set of the disclosures contemporaneously with his request that the Tripps sign the documents in order to memorialize the deal. Whether the financing information was properly disclosed and labeled on the Credit Contract?

Discussion

*The Release*

Virginia has consistently followed the "plain meaning" rule when construing written agreements. More precisely, "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.... This is so because the writing is the repository of the final agreement of the parties." *See Berry v. Klinger,* 225 Va. 201, 208, 300 S.E.2d 792 (1983) (internal quotations omitted). Virginia has also long recognized that a party may enter into an agreement in which he waives a significant right. *See Gordonsville Energy, LP v. Virginia Electric and Power Co.,* 257 Va. 344, 355, 512 S.E.2d 811 (1999) ; *Blue Cross of Southwestern Va. v. McDevitt & Street Co.,* 234 Va. 191, 196-97, 360 S.E.2d 825,(1987) (waiver of right to claim damages); *Flintkote Co. v. W.W. Wilkinson, Inc.,* 220 Va. 564, 570, 260 S.E.2d 229 (1979) (waiver of right to jury trial on amount of attorney's fees); *VNB Mortgage Corp. v. Lone Star Indus., Inc.,* 215 Va. 366, 369, 209 S.E.2d 909, 912 (1974) (waiver of right to file mechanic's lien). Thus, generally, a party may waive by contract any right conferred by law or contract if that party had knowledge of the right and intended to waive it. *See Gordonsville,* 257 Va. at 356, 512 S.E.2d 811 (citing *Roenke v. Virginia Farm Bureau Mut. Ins. Co.,* 209 Va. 128, 135, 161 S.E.2d 704 (1968); *Woodmen of the World Life Ins. Soc. v. Grant,* 185 Va. 288, 299, 38 S.E.2d 450, (1946)).

*4 The first question then is whether the Release signed by the Tripps is a valid contract. The creation of a valid contract requires an offer, acceptance and the exchange of valuable consideration. The Tripps only received from CFAW that which they were already entitled to, their money back. Therefore the Release is not supported by adequate consideration and it is not a valid contract. Because the Release is unenforceable this Court must reach the Odometer and Truth-in-Lending Act claims.

*Federal Odometer Act Violations*

Virginia is a strict title state in which ownership does not pass until title passes. *See Thomas v. Mullins,* 153 Va. 383, 149 S.E. 494 (1929); *Rawl's Auto Auction v. Dick Herman Ford, Inc.* 690 F.2d 422, 426-27 (4th Cir.1982) (citing *Thomas v. Mullins* ). If, a buyer contracts for the seller to deliver title to the DMV for the completion of vehicle registration and tag work, the seller need not deliver the title to the buyer [at the time of sale]. *See* Va.Code § 46.2-628. 49 U.S.C. § 32705(a)(1) requires a transferor to either disclose the mileage registered on the odometer or certify his knowledge that the mileage registered is incorrect. Under 49 U.S .C. § 32702 transferring ownership means changing ownership by sale, gift, or any other means. 49 C.F.R. § 580.5 interprets the Federal Odometer Act's provisions to allow the disclosure of mileage by a transferor on either or both the title and other reassignment documents. Specifically, 49 C.F.R. § 580.5(a) addresses itself to the situation where ownership is transferred prior to the issuance of title. Section 580.5(b) addresses the content requirements of the documents used to reassign title. It requires the inclusion of space to make the required disclosures as of the time of transfer of ownership. Subsection (c) articulates the transferor's ability to choose between making the requisite disclosures on the title or the documents used to reassign title. The exception to Subsection (c)'s choice allowance is the circumstance where a vehicle is titled in the name of the transferor. In that situation disclosures must be made on the title. *See* 49 C.F.R. § 580.5(c).

49 U.S.C. § 32710 creates a private right of action for a violation of the Odometer Act and provides for the recovery of either three times actual damages or $1,500, whichever is greater. Nonetheless, the Odometer Act is not a strict liability statue. Under 49 U.S.C. § 32710, a dealer is only liable to a private person if that dealer violates the Acts's requirements with the intent to defraud. *See Nigh v. Koons Buick Pontiac GMC, Inc. et al,* C.A. 00-1634-A (E.D.Va.2001) (pending publication) (May 1, 2001 Order); *Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932, 941-42 (W.D.Va.2000) ("even if [plaintiff] can show that an Odometer Act violation occurred, she cannot avoid summary judgment unless she can provide evidence sufficient to show that [the dealer] committed the violation with an intent to defraud."). The Plaintiff must also demonstrate

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works