ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Lieske,

Plaintiff,

Court File No.: C0-2658 JMR/FLN

**AFFIDAVIT OF ALEX GREINER**

Morrie's Brooklyn Park Daewoo, d/b/a Morrie's Brooklyn Park Used Car & Truck Center, and Todd Perry, individually,

Defendant.

STATE OF MINNESOTA )
) ss.
COUNTY OF RAMSEY )

ALEX GREINER, being duly sworn upon oath, states and alleges as follows:

1. I am the Finance Manager at Morrie's Brooklyn Park Daewoo d/b/d/ Morrie's Used Car & Truck Center ("Morrie's Brooklyn Park"), and I have personal knowledge of the financing of Brian Lieske's August 2000 purchase of a 1997 Ford Taurus automobile from the dealership.

2. Morrie's Brooklyn Park is engaged in the business of selling used motor vehicles and is located at 8100 Lakeland Avenue in Brooklyn Park Minnesota. Morrie's Brooklyn Park, does not extend credit to customers to finance the purchase of motor vehicles. Rather, Morrie's Brooklyn Park has business relationships with lending institutions which extend financing to customers and purchase installment sale contracts. Upon the customer's request, Morrie's Brooklyn Park will attempt to arrange financing with a lending institution to enable its customers to purchase motor vehicles. The installment sale contract forms, which contain



SCANNED
JUN 01 2004
U.S. DISTRICT COURT ST. PAUL

the financing terms, are supplied to the dealership by the lending institutions. Some of the lending institutions publish their own installment sale contract forms while others subscribe to companies such as Bankers Systems, Inc., which publish forms for them. Although Morrie's Brooklyn Park completes the installment sale contract forms provided by these lenders, it ultimately assigns the installment sale contract to a lending institution.

3. On August 23, 2000, Plaintiff Brian Lieske ("Lieske") visited Morrie's Brooklyn Park and executed a credit application for the dealership to attempt to arrange financing of the purchase of the Ford Taurus. He also paid a $500.00 deposit, executed a rental agreement and took possession of the Ford Taurus.

4. On August 26, 2000, Lieske returned to the dealership and agreed to purchase the Ford Taurus for $9,995.00 with a $1,500.00 down payment. He executed a vehicle purchase contract setting forth the terms of the purchase and the "amount due on delivery" of $9,184.68. The purchase contract stated: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." A true and correct copy of the purchase contract is attached hereto as Exhibit A and incorporated herein by reference.

5. Lieske had agreed to have Morrie's Brooklyn Park attempt to arrange financing for the purchase of the Ford Taurus. Lieske had a poor credit history as identified on his credit report, and was aware that his credit history would limit his financing options. I advised Lieske that the dealership had submitted his credit application to Fairlane Credit, a sub-prime lender. Subprime lenders extend financing to consumers with poor credit histories, but at higher rates. After Lieske executed the vehicle purchase contract, I completed the retail installment sale contract and presented it to Lieske for his review and, if acceptable,

signature. The installment sale contract that was presented to Lieske for review contained a segregated truth-in-lending disclosure box entitled, "**TRUTH IN LENDING DISCLOSURES**" which also identified in bold, the "**ANNUAL PERCENTAGE RATE**" (19.75%), "**FINANCE CHARGE**" ($4,575.88), "**AMOUNT FINANCED**" ($9,842.36), "**TOTAL OF PAYMENTS**" ($14,418.24), and the "**TOTAL SALE PRICE**" ($15,918.24). I reviewed all of these terms with Lieske before he signed the contract. A true and correct copy of the installment sales contract is attached hereto as Exhibit B and incorporated herein by reference.

6. Lieske reviewed the installment sale contract and signed it. He signed the installment sale contract immediately above a provision stating, in bold: "**NOTICE TO BUYER: (1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. (4) IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS. BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**" Thereafter, I tore off the goldenrod colored copy on the bottom and gave Lieske that copy. Lieske did not request a copy of the installment sale contract before he signed the installment sale contract.

7. If Lieske did not like the terms of the installment sales contract he signed, he could have chosen not to sign it on August 26, 2000 and taken a copy of the installment contract with him to shop around for better rates. If he obtained a better rate elsewhere, he would obtain

a check from that lender and pay the dealership the amount due on delivery as reflected on the vehicle purchase contract. If he could not have obtained a better rate and still wanted to purchase the vehicle, he would have needed to return to Morrie's Brooklyn Park to sign the original installment sales contract. A customer can also search for a better rate after he signs an installment sales contract. An installment contract can be pre-paid at any time without penalty. Lieske's installment sales contract, for example, contains a paragraph entitled, "Prepayment" which stated: "If you pay off this contract early, you will not have to pay a penalty." Customers can, if they so desire, look elsewhere for credit and, if successful, use the proceeds of the alternate financing to pay off the amount owed under the installment contract they signed.

8. After executing the above-referenced documents, Lieske took delivery of the Ford Taurus on August 26, 2000.

**FURTHER YOUR AFFIANT SAITH NAUGHT.**

Dated: 8/8/01

Alex Greiner

Alex Greiner

Subscribed and sworn to before me
this 8th day of August, 2001.

Joan R. Erdman

Notary Public

JOAN R. ERDMAN
Notary Public
Minnesota
My Commission Expires Jan 31, 2005

8100 Lakeland Avenue
Brooklyn Park, MN 55445

**MORRIE'S**
BROOKLYN PARK
USED CAR & TRUCK CENTER
DAEWOO

Phone: (763) 543-7400
FAX (763) 543-7491
www.morries.com

Stock #: D157A Date: 08/26/00 Salesperson: TODD A. PERRI

Buyer Name: (Last) LIESKE (First) BRIAN (Middle) WILLIAM

Co-Buyer Name: (Last) ____ (First) ____ (Middle) ____

Address: 5315 DUPONT AVE N City: BROOKLYN CENTER State: MN County: HENNEPIN Zip: 55430

Home Phone: (612)585-1267 Bus. Phone: (612)930-4800 Buyer DOB: 03/09/64 Co-Buyer DOB: ____

Buyer D.L. #: L-200-098-887-182 Co-Buyer D.L.#: ____

Buyers Insurance Co.: ____ Policy #: ____

PLEASE ENTER MY ORDER FOR: New ☐ Used X Demo ☐ Lienholder FAIRLANE CREDIT, LLC Address PO BOX 36902 COLORADO SPRINGS CO 80949-3

| YEAR | MAKE | MODEL | BODY | TRANSMISSION | COLOR | INTERIOR |
|---|---|---|---|---|---|---|
| 1997 | FORD | TAURUS | 4 DOOR SEDAN | A | GOLD | |

| VIN # | | TAG EXP. DATE | STATE | MILEAGE | DELIVERED ON OR ABOUT |
|---|---|---|---|---|---|
| 1FALP52UXVG252283 | AAT208 | | | 56656 | 08/26/00 |

| | |
|---|---|
| CASH PRICE OF VEHICLE | 9995.00 |
| FREIGHT | |
| DEALER INSTALLED OPTIONS | |
| | N/A |
| TOTAL | 9995.00 |
| LESS TRADE-IN ALLOWANCE FOR USED VEHICLE | N/A |
| TRADE DIFFERENCE | 9995.00 |

**TRADE-IN DATA**

| YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|
| | | | |

VIN #:
LIEN HOLDER'S NAME:
ADDRESS:
LICENSE PLATE #: LICENSE STATE: EXP. DATE:
MILEAGE NOW: TRANSMISSION:
DOES YOUR TRADE-IN HAVE A BRANDED TITLE OR INSURANCE SALVAGE HISTORY? YES ☐ NO ☐

| | | | |
|---|---|---|---|
| LICENSE PLATE | N/A | STATE & LOCAL TAXES | 649.68 |
| TITLE & TRANSFER FEES | 11.00 | FEDERAL LUXURY TAX | N/A |
| LIEN RECORDING FEE | 4.00 | DOCUMENT ADMINISTRATIVE FEE | 25.00 |
| | N/A | SERVICE CONTRACT | N/A |
| TOTAL LICENSE & FEES | | | 15.00 |
| CASH SUBMITTED WITH ORDER | 1500.00 | SUBTOTAL | 10684.68 |
| LESS BALANCE OWING TO LIENHOLDER ON TRADE-IN | N/A | | |
| TOTAL DOWN PAYMENT | | | 1500.00 |
| **TOTAL AMOUNT DUE ON DELIVERY** | | | 9184.68 |

**POLLUTION CONTROL SYSTEM DISCLOSURE (TRADE-IN VEHICLE)**

In order to comply with Minnesota Statutes, Section [illegible] may transfer a motor vehicle without providing a written disclosure to the transferee (buyer) certifying the condition of the pollution control system.
Transferor (seller) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle, being traded in, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

Seller's Signature ⊗ ____

**DEALER'S DISCLAIMER OF WARRANTY**

The Dealer expressly disclaims all warranties, either express or implied on the vehicle sold, except any warranties offered and explained in Paragraphs 10 through 13 on the back of this contract. Buyer acknowledges receiving this information before the sale and further acknowledges having read and understood the provisions on the back of this contract.

Buyer's Signature ⊗ [signature]

**DEALER'S POLLUTION CONTROL SYSTEM DISCLOSURE (VEHICLE BEING SOLD)**

Transferor (Dealer) hereby certifies, to the best of his/her knowledge, that the pollution control system on this vehicle being sold, including the restricted gasoline pipe, has not been removed, altered, or rendered inoperative.

The front and back of this CONTRACT comprise the entire CONTRACT affecting this purchase. The DEALER will not recognize any verbal agreement, or any other agreement or understanding of any nature. You certify that no credit has been extended by dealer for the purchase of this motor VEHICLE. You certify that you are 18 years of age or older, and acknowledge receiving a copy of this contract.

**The terms of this CONTRACT were agreed upon and the CONTRACT signed in the dealership on the date noted at top of this form. If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended.**

NOTICE OF SALESPERSON'S LIMITED AUTHORITY. This contract is not valid unless signed and accepted by Sales Manager or Officer of Dealership.

Accepted ⊗ [signature]

**IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.**

⊗ [signature]
Buyer's Signature Accepting Terms of Contract

**This ODOMETER DISCLOSURE STATEMENT and ASSIGNMENT Refers to Vehicle Being Sold**

Federal and State law require that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I (we), MORRIES BROOKLYN PARK USED CAR & TRUCK CENTER (Transferor's Name, Print) the owner(s) of the vehicle described below, certify the vehicle is free of all security interests, warrant title, assign the vehicle and taxes paid to the person(s) named below and state that the odometer now reads 56656 (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.

**WARNING — ODOMETER DISCREPANCY** if box (1) or (2) is checked.

| YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|
| 1997 | FORD | TAURUS | 4 DOOR SEDAN |

VIN NO: 1FALP52UXVG252283 LICENSE NO.: AAT208 LIC. EXP. DATE: ____

TRANSFEREE'S NAME (BUYER) PRINT: BRIAN WILLIAM LIESKE
TRANSFEROR'S (SELLER) STREET ADDRESS: 8100 LAKELAND AVE
STREET ADDRESS: 5315 DUPONT AVE N
CITY: BROOKLYN PARK MN 55445 STATE ZIP
CITY: BROOKLYN CENTER MN 55430 STATE ZIP
TRANSFEROR'S (SELLER) SIGNATURE (PRINT SIGNER'S NAME ALSO) ⊗ [signature]
TRANSFEREE'S (BUYER) SIGNATURE (PRINT SIGNER'S NAME ALSO) [signature]
STATEMENT DATE

**EXHIBIT A**

| | | |
|---|---|---|
| **RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT**<br>No.<br>Date AUGUST 26th, 2000 | Seller MORRIES BROOKLYN PARK USED CAR & TRUCK CENTER<br>8100 LAKELAND AVE<br>BROOKLYN PARK MN 55445<br>"We" and "us" mean the Seller above, its successors and assigns. | Buyer<br>BRIAN WILLIAM LIESKE<br>5315 DUPONT AVE N<br>BROOKLYN CENTER MN 55430<br>"You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, over time, the Motor Vehicle (Vehicle) and services described below. Your purchase is subject to the terms and conditions of this contract and security agreement (Contract). The Vehicle is sold in its present condition, together with the usual accessories and attachments.

Description of Motor Vehicle Purchased — Year 1997 Make FORD Model TAURUS — VIN 1FALP52UXVG252283 Lic. No./Year AAT208 ☐ New ☒ Used — Other:

Description of Trade-In

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 9842.36, plus finance charges accruing on the unpaid balance at the rate of 19.75 % per year from today's date until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **LOAN ADMINISTRATION FEE:** You agree to pay an additional, nonrefundable loan administration fee of $25.00 that will be ☐ paid in cash. ☐ paid pro rata over the contract term. ☐ withheld from the proceeds (if this fee is withheld from the proceeds, the amount is included in the principal sum).

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $ 1500.00 |
|---|---|---|---|---|
| 19.75 % | $ 4575.88 | $ 9842.36 | $ 14418.24 | $ 15918.24 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | 300.38 | MONTHLY, BEGINNING: OCTOBER 10th, 2000 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

☒ **Late Charge:** If a payment is more than 10 days late, you will be charged 5% OF MONTHLY PAYMENT OR $5.72, WHICHEVER IS GREATER. ☒ This amount may increase so as to always be the highest amount allowed by law under Minn. Stat. § 47.59.

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.

☐ If you pay off this Contract early, you will not be entitled to a refund of part of the loan administration fee.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured BRIAN WILLIAM LIESKE
☒ Single ☐ Joint Prem. $ 181.88 Term 48

Credit Disability: Insured BRIAN WILLIAM LIESKE
☒ Single ☐ Joint Prem. $ 475.80 Term 48

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

[signature] 03/09/64
Buyer _ d/o/b _ Buyer _ d/o/b

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Coverage $ N/A
☐ $ N/A Deductible, Comprehensive Cov. $ N/A
☐ Fire-Theft and Combined Additional Coverage $ N/A
☐ $ N/A

**Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.**

☐ **MOTOR VEHICLE SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Motor Vehicle Service Contract to cover N/A

This Service Contract will be in effect for N/A

**ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---|
| Vehicle Price (incl. sales tax of $ 649.68) | $ 10644.68 |
| Service Contract, Paid to: * | $ N/A |
| Cash Price | $ 10644.68 |
| Manufacturer's Rebate $ N/A | |
| Cash Down Payment $ 1500.00 | |
| Deferred Down Payment $ N/A | |
| a. Total Cash/Rebate Down $ 1500.00 | |
| b. Trade-In Allowance $ N/A | |
| c. Less: Amount owing $ N/A Paid to: | |
| d. Net Trade-In (b. minus c.) $ N/A | |
| e. Net Cash/Trade-In (a. plus d.) $ 1500.00 | |
| Down Payment (e.; disclose as $0 if negative) | $ 1500.00 |
| Unpaid Balance of Cash Price | $ 9144.68 |
| Paid to Public Officials - Filing Fees | $ 15.00 |
| Insurance Premiums* | $ 657.68 |
| Amount to Finance line e. (if e. is negative) | $ N/A |
| To: | $ N/A |
| To: MORRIES BROOKLYN PARK USED CAR | $ 25.00 |
| To: | $ N/A |
| To: | $ N/A |
| Total Other Charges/Amounts Pd. to Others | $ 697.68 |
| Less: Prepaid Finance Charges | $ N/A |
| Amount Financed | $ 9842.36 |

*We may retain or receive a portion of this amount.

**NOTICE TO BUYER**

**(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. (4) IMPORTANT: THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.**

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

**ASSIGNMENT:** This Contract and Security Agreement is assigned to FAIRLANE CREDIT, LLC the Assignee, phone (800)603-0441. This assignment is made ☐ under the terms of a separate agreement. ☒ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.
Seller: By [signature] Date 08/26/2000

Buyer: [signature] 08/26/2000
Signature BRIAN WILLIAM LIESKE Date

Signature _ Date

Seller: By [signature]

**EXHIBIT B**

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, you have a right to a refund of the excess charge. If you agree, or if you do not make a timely request for a refund, we will apply the refund amount first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance, but no refund will be paid if the amount of the refund would be less than $5.00.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

A. You fail to perform any obligation that you have undertaken in this Contract.
B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract. If this Contract is subject to Minn. Stat. § 168.71, the amount of our attorneys' fees you must pay will not exceed 15% of the amount due and payable under this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:

A. We may require you to immediately pay us, less any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the interest rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**RETURN CHECK CHARGE:** You agree to pay a service charge for each returned check or returned automatic payment request. The amount of the service charge will generally be $20.00, but if we use a law enforcement agency to collect payment and the service charge is used to reimburse the law enforcement agency, the amount of the service charge will be $25.00.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. (Generally, loss payee is the one to be paid the policy benefits in case of loss or damage to the property.) In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. If the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. We will notify you if we do so. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the interest rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WAIVER: To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; (3) give notice that we intend to make, or are making, this Contract immediately due; or, (4) obtain official certification of nonpayment.**

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

Signature          Date

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

## ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.